1  RANDALL T. GARTEISER – SBN 231821
rgarteiser@ghiplaw.com
2  CHRISTOPHER A. HONEA – SBN 232473
chonea@ghiplaw.com
3  IAN N. RAMAGE – SBN224881
iramage@ghiplaw.com
4  GARTEISER HONEA, P.C.
119 W. Ferguson St.
5  Tyler, Texas 75702
Tel/Fax: (888) 908-4400
6
*Attorneys for Plaintiff Blue Spike, LLC*
7
ADRIAN M. PRUETZ – State Bar No. 118215
8  apruetz@glaserweil.com
REX HWANG – State Bar No. 221079
9  rhwang@glaserweil.com
GLASER WEIL FINK HOWARD
10    AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
11  Los Angeles, California 90067
Telephone:  (310) 553-3000
12  Facsimile:   (310) 556-2920

13  *Attorneys for Defendant VIZIO, Inc.*
      [Additional counsel on signature page]
14
                UNITED STATES DISTRICT COURT
15               CENTRAL DISTRICT OF CALIFORNIA
                      SOUTHERN DIVISION
16

| | |
|---|---|
| 17  Blue Spike, LLC, | CASE NO.: 8:17-cv-1172-DOC-KES |
| 18                              Plaintiff, | Hon. David O. Carter |
| 19  v. | **JOINT STIPULATION PURSUANT TO L.R. 37-2 REGARDING DEFENDANT'S REFUSAL TO PRODUCE DOCUMENTS FOR INSPECTION** |
| 20  VIZIO, Inc., | |
| 21                              Defendant. | |
| 22 | DISCOVERY MATTER |
| 23 | Hearing Date:  May 22, 2018<br>Time: 10:00 A.M.<br>Location: Santa Ana, 6D |
| 24 | **Disc. Cut-Off:** Nov. 1, 2018 |
| 25 | **Final Pre-Trial:** Apr. 15, 2019<br>**Trial:** Apr. 30, 2019 |
| 26 | |
| 27 | **PUBLIC VERSION – REDACTED AT PG. 29** |

28

_____

1489671

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

*Attorneys for Plaintiff Blue Spike, LLC* ...................................................................i

4

TABLE OF CONTENTS ......................................................................................ii

JOINT DISCOVERY SUBMISSION ....................................................................1

5

INTRODUCTION ...................................................................................................1

6

       A.    Blue Spike's Introductory Statement...........................................1

       B.    VIZIO's Introductory Statement. ...............................................2

7

PLAINTIFF BLUE SPIKE'S POSITION .............................................................4

8

    I.     NATURE OF THE DISPUTE. ...................................................4

9

    II.    THE REQUESTED SOURCE CODE IS ESSENTIAL TO DEFENDANT'S CONTENTIONS AND FOR THE

10

            DEVELOPMENT OF PLAINTIFF'S CASE. ............................8

11

       A.    VIZIO Has Disingenuously Evaded Blue Spike's Requests....10

       B.    VIZIO's Lack of Good Faith Effort and Uncooperative

12

            Strategy Has Been Noted in This Case and by Other Courts...14

13

    III.   CONCLUSION TO PLAINTIFF BLUE SPIKE'S POSITION.........16

DEFENDANT VIZIO'S POSITION ....................................................................17

14

    IV.   CASE BACKGROUND ...........................................................17

15

    V.    DISCOVERY IN DISPUTE .....................................................18

DOCUMENT REQUEST NO. 16: ......................................................................18

16

RESPONSE TO DOCUMENT REQUEST NO. 16:.............................................18

17

DOCUMENT REQUEST NO. 28 ........................................................................20

RESPONSE TO DOCUMENT REQUEST NO. 28 ..............................................20

18

DOCUMENT REQUEST NO. 29 ........................................................................21

19

RESPONSE TO DOCUMENT REQUEST NO. 29 ..............................................21

DOCUMENT REQUEST NO. 30 ........................................................................22

20

RESPONSE TO DOCUMENT REQUEST NO. 30 ..............................................22

21

DOCUMENT REQUEST NO. 31 ........................................................................23

RESPONSE TO DOCUMENT REQUEST NO. 31 ..............................................24

22

DOCUMENT REQUEST NO. 32 ........................................................................25

23

RESPONSE TO DOCUMENT REQUEST NO. 32 ..............................................25

DOCUMENT REQUEST NO. 33 ........................................................................26

24

RESPONSE TO DOCUMENT REQUEST NO. 33 ..............................................26

25

    VI.   COURTS CAREFULLY SCRUTINIZE SOURCE CODE

26

           REQUESTS...............................................................................28

27

    VII.  VIZIO DOES NOT HAVE THE RELEVANT SOURCE CODE .....29

28

    VIII. BLUE SPIKE HAS FAILED TO SHOW THAT ANY OTHER

ii

1489671

SOURCE CODE IS RELEVANT OR NECESSARY ......................29

IX.   VIZIO HAS REPEATEDLY ADVISED BLUE SPIKE THAT
      THE RELEVANT SOURCE CODE IS CONTROLLED BY
      THIRD PARTIES ...............................................................................31

X.    BLUE SPIKE'S ASSERTIONS THAT VIZIO HAS ACTED
      IMPROPERLY ARE UNFOUNDED ................................................32

XI.   CONCLUSION TO VIZIO'S POSITION ..........................................34

iii

1489671

**JOINT DISCOVERY SUBMISSION**

Pursuant to Rule 37(a) of the Federal Rules, and Local Rule 37.2, Plaintiff Blue Spike LLC ("Blue Spike"), and Defendant VIZIO Inc. ("VIZIO"), submit this Joint Submission regarding Blue Spike's Motion to Compel production of Defendant's source code for inspection. *See* F. R. Civ. P. 37(a); C.D. Cal., L.R. 37-2.

**INTRODUCTION**

**A.    Blue Spike's Introductory Statement.**

Under L.R. 37-1, the parties met and conferred on April 20, 2018.[1] Since the beginning of this case, Blue Spike has requested VIZIO's source code for the Accused Products.[2] VIZIO avoided the subject, saying in its Rule 26 statement, a source code production deadline was not necessary. Then, in April 2018, after months for trying to meet and confer, VIZIO finally indicated it was taken the position that it would not produce its source code for its Accused Products until Blue Spike better identified the accused products.  Blue Spike now moves to compel production of the source code for the accused products.

Specifically, Blue Spike requests an Order from the Court for VIZIO to produce documents, including source code, responsive to Blue Spike's Requests for Production Nos. 16 and 22-33. *See* Request for Production, Ex. 7.

VIZIO seems committed to a strategy of working against a meaningful trial on the merits.[3] During the Rule 16 and Rule 26 Conference joint submission, Blue Spike

---

[1] VIZIO had attorneys Steve Basileo and Thomas Burke participate on the meet and confer with attorneys Chris Honea and Randall Garteiser for Blue Spike.

[2] Blue Spike's Request for Production Defines "Accused Products" to mean Vizio's Smart Televisions and Tablets cable of streaming secured content such as Netflix, YouTube, GooglePlay, HBO Go, Fox Now and other such services." Ex. 7, 3 (pdf p.4).  In its initial disclosures Blue Spike further limited this request to include only VIZIO's Smart Televisions and Tablet running an Android Operating System 4.0 or higher.  Blue Spike's infringement position is consistently stated also in Blue Spike's Operative Complaint that VIZIO attacked at the pleading stage on various grounds.

[3] *See* Order, Dkt. 29; Fed. Cir. 2018, Order Denying VIZIO's Writ of Mandamus, Case 18-116.

proposed a date of February 1, 2018, for the production of source code in possession of VIZIO. VIZIO countered with "[n]o date needed." *See* Rule 26(f) Report, Ex. 9, at 11. VIZIO's response did not clarify it was not going to provide any source code. *Id.* Moreover, such a response is less than constructive and does nothing to move this case towards resolution.

Blue Spike continued its request for the inspection of VIZIO's Accused Product source code. As an example used in the Complaint, VIZIO's smart television remote has a button that allows access to Netflix for instant streaming of content. *See* Complaint, Dkt. 1. The parties have exchanged interrogatories and requests for production starting in early February. *See* Request for Production, Ex. 7; *see generally,* Declaration of Randall Garteiser In Support of Blue Spike's Motion to Compel. Throughout this process, Blue Spike has attempted to gain cooperation with VIZIO in the production of the essential source code. Blue Spike has produced voluminous amounts of information requested by VIZIO in response to its over 100 document requests. However, VIZIO refuses production of any of its source code for its Accused Products, which is essential to this case as VIZIO also asserts a counterclaim of non-infringement. *See* Ex. 9, at 3 (pdf p.7).

In sum, while Blue Spike has given a good faith attempt to provide information to, and collect essential information from VIZIO, VIZIO has not reciprocated. Respectfully, Blue Spike requests an order from the Court requiring production of documents, including source code, responsive to Blue Spike's Request for Production, Nos. 16 and 28-33. *See* Dkt. 7.

## B.   VIZIO's Introductory Statement.

Blue Spike's true goal in this Motion is not to obtain source code, as is evidenced by its complete failure to even try and obtain relevant source code from the third parties that actually possess this source code, but solely to cast aspersions on VIZIO. Consistent with this goal, Blue Spike's Motion is a lengthy and irrelevant diatribe that is designed to obscure the following dispositive facts:

2

1489671

- VIZIO does *not* manufacture the products at issue in this case.
- VIZIO does *not* have relevant source code – *i.e.*, source code relating to the allegedly infringing features of the Accused Products.
- VIZIO has repeatedly advised Blue Spike that relevant source code is in the possession of *third parties*.

Because VIZIO lacks source code that relates to the allegedly infringing functionality, the only relief Blue Spike can obtain with this motion is to force VIZIO to produce *irrelevant* source code unrelated to the accused functionality of the Accused Products, or this case.  However, nowhere in its Motion does Blue Spike even attempt to explain how such source code could be relevant, why it needs such source code, or how its purported need for production of such source code outweighs the risks and burdens associated with its production.

Blue Spike merely asserts, without explanation, that it needs to inspect all of VIZIO's source code "in order to respond to the non-infringement and invalidity claims that VIZIO has asserted" and "to fairly develop its claims past the plausible (yet publicly available) level that Plaintiff has already demonstrated."  Nowhere does Blue Spike actually explain how source code *unrelated to the accused functionality* could possibly be relevant or necessary to either task, or to this case.

These omissions are fatal to Blue Spike's Motion. To state the obvious, proprietary source code is commercially sensitive, and courts carefully scrutinize source code requests.  Thus, a party that seeks to inspect computer source code must prove that the source code in question is relevant to issues in dispute, *and* that the need for production outweighs not just the burdens but the *risks* associated with its production.  *Drone Tech., Inc. v. Parrot S.A.*, 838 F.3d 1283 (Fed. Cir. 2016) (vacating an order requiring production of source code when Plaintiff failed to show relevance and necessity).  Blue Spike does not even attempt to meet its burden.

Instead, Blue Spike's Motion is a harassing litigation tactic, rife with baseless and nonsensical accusations regarding VIZIO's purported discovery misconduct. For

1489671

1  example, Blue Spike complains that VIZIO did not produce documents in response to
2  *informal* document requests Blue Spike made early in this case, but VIZIO has no
3  obligation to do so.  Blue Spike also notes that VIZIO will not agree to forgo the use
4  of any third-party source code at trial or in a summary judgment motion.  Yet, VIZIO
5  has no obligation to agree to such a proposal.  Indeed, this third-party source code is
6  the best available evidence for infringement and noninfringement issues.  Blue Spike
7  further contends that it is now facing time pressure with regard to discovery, but any
8  purported time pressure was caused by Blue Spike's own decision to wait until the
9  11th week of the discovery period to serve its first set of formal discovery demands, as
10  well as its decision to conduct no third-party discovery in this lawsuit.

11       Blue Spike also argues that VIZIO delayed meeting and conferring with respect
12  to the document demand at issue here.  Yet, the record shows that the opposite is true.
13  After receiving VIZIO's timely written responses, Blue Spike sent VIZIO a meet and
14  confer request that failed to comply with Local Rule 37-2.   VIZIO nonetheless
15  proposed multiple meet and confer dates, but Blue Spike counsel ignored these
16  proposals, later claiming they were "distracted" by another case in which they are not
17  representing any of the parties:

18         My apologies Steve, I was distracted the last few days by the billion
19         dollar Virnetix[sic] case against Apple. They found infringement and the
       last few days are involved with willfulness, which seems like a sure thing
20         from your fellow members of the bar here in Texas.

21  *See* Declaration of Steve Basileo ("Basileo Decl."), Ex. A at 1.  It is not VIZIO's fault
22  if this case is a low priority for Blue Spike's counsel.

23       In sum, Blue Spike's Motion is bereft of evidence or argument addressing the
24  applicable standard, and was filed for an improper purpose. Blue Spike's Motion
25  should be denied in its entirety, and VIZIO should be awarded its fees and costs.

26                  **PLAINTIFF BLUE SPIKE'S POSITION**
27  **I.**     **NATURE OF THE DISPUTE.**
28       Blue Spike has requested that VIZIO timely produce its source code since the

1   very early stages of this case. *See, e.g.*, Randall Garteiser Declaration; Joint Rule
2   26(f) Report, Ex. 9, at 4. Blue Spike has been very clear that this source code
3   inspection would benefit this case immensely in terms of reducing the time and effort
4   the Court will need to put into this action. It will also simplify the patent infringement
5   claims themselves—including any ambiguities that VIZIO sees in the patent
6   infringement counts brought against it. *See, e.g.*, Ex. 9, at 4; *see also,* Fed. R. Civ. P.
7   1.

8        Instead of simply providing the limited, narrowly tailored, discovery
9   requested—*i.e.,* source code for the Accused Products—VIZIO has entrenched this
10  case in over a year's worth of pleading motion practice. *See, e.g.*, Initial Disclosures,
11  Ex. 8 (limiting Accused Products to a certain subset of VIZIO smart televisions, and
12  tablets that employ Android 4.0 operating system, and higher.  This is not indicative
13  of the vast production for an ambiguously large group of products—as the Defendant
14  continues to assert). Furthermore, it is not Blue Spike's fault that practically all of
15  VIZIO's imports infringe.  VIZIO is known infringer that practices what's been called
16  efficient infringement.  A practice whereby a company waits to see if a patent holder
17  will risk litigation to enforce its intellectual property rights.  Most, if not all, of
18  VIZIO's TV and tablet products have the ability stream secure content, and that forms
19  the basis of infringement for five (5) of the asserted patents.

20       In good faith, Blue Spike has revised and updated its Complaint throughout this
21  process thinking that eventually its claims would have a fair and full opportunity to be
22  heard. Blue Spike used the most accurate and publicly available information that it
23  has been able to obtain to revise its Interrogatory Response No. 1, whereby Blue
24  Spike provided VIZIO with detailed infringement charts for the very narrow set of
25  claims being asserted.  Ex. 15. To date, it has done this without VIZIO's cooperation
26  in delivering the nonpublic information within its control. Moreover, it has done this
27  in spite of VIZIO's continuous efforts to halt all progress in this case. VIZIO's
28  current approach is to delay discovery until the discovery deadline runs out.  Blue

1  Spike remains committed to resolving this case on the merits.    This requires
2  inspection of VIZIO's source code, and thus this current motion.

3      Blue Spike's Complaint accurately underscores the accused products in this
4  case, within the control of VIZIO, accused of infringement. *See* Complaint, Dkt. 1. It
5  also accurately indicates where the source code for these VIZIO products can be
6  located—this along with many discussions, and formal discovery requests, that also
7  address VIZIO's alleged confusion. *See generally,* Randall Garteiser Declaration. Yet
8  Defendant refuses to even attempt production of any source code, or related
9  information, within the reasonable scope of what has been asked for by Blue Spike.
10 While Blue Spike has made all reasonable efforts to provide VIZIO with good faith
11 responses, and information, in the discovery process, VIZIO refuses to cooperate with
12 Blue Spike's most fundamental request entirely.

13     Admittedly, Blue Spike will need the source code utilized in the VIZIO
14 controlled products at issue in this case to develop its complaint beyond the
15 information that is now publicly available to it.[4] *See* Fed. R. Civ. P 26(b)(1) (the
16 information requested is nonprivileged, is highly relevant to Blue Spike's claim or
17 VIZIO's noninfringement defenses, and sits squarely within scope of discovery). This
18 would be true of all such plaintiffs in the same position as Blue Spike. Moreover, the
19 need for VIZIO to produce the requested source code is even more pronounced in a

20

21 [4]VIZIO appears to be using Blue Spike's infringement contentions as a pretext not to
   cooperate with Plaintiff's discovery request. These claims are, as is customary prior to
22 production of nonpublic information, demonstrated through publicly available
   information in claim charts developed by experts. Here, VIZIO is requiring a more
23 particularized form of pleading than is required by the law in order for it to make a
   good faith effort at producing the needed source code that is at issue in this case. *See*
24 *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008)
   (finding that where a cognizable theory or sufficient facts are presented, Rule 8
25 requirement is met); *McAfee Enters., Inc. v. Yamaha Corp. of America,* 2:16-2562,
   2016 WL 6920675 at *2 (C.D. Cal. June 24, 2016) ("The patent holder is not required
26 to provide every detail of its claim within the initial pleading. [citation omitted].
   Rather, the complaint must merely provide a defendant with fair notice and a basis for
27 asserting the claim. [citation omitted]."); *Soteria Encryption, LLC v. Lenovo United
   States, Inc.,* 16-7958, 2017 WL 3449058, at *1 (C.D. Cal. Feb. 27, 2017).

28

6

1489671

1   case that has been seen in two separate Districts, and has been needlessly stalled by

2   multiple pleading motions brought by VIZIO for more than a year. In terms of

3   expediting this claim so that a full-trial on the merits can finally convene, time is of

4   the essence now more than ever.

5       Blue Spike's request of a discovery referee, with a loser pay provision in place,

6   to oversee the discovery process is indicative of Plaintiff's desire to work with VIZIO

7   in good faith, and to bring this case to a just and speedy resolution. *See* Rule 26(f)

8   Report, Ex. 9, at 4-5, n. 1. Moreover, prior to the parties' meet and confer held on

9   April 20, 2018, a Protection Order that should have resolved VIZIO's purported issue

10  with disclosure of confidential information, including the source code (*see* Ex. 13, at

11  24; Ex. 6, at 5), was in place. *See* Protective Order, Ex. 14. Yet VIZIO again refused

12  to cooperate with Blue Spike's request when the parties met on April 20, 2018,

13  without any further explanation or constructive resolutions to producing the essential

14  discovery information. *See* Randall Garteiser Declaration.

15      Blue Spike has taken steps to ensure that its discovery collaboration with

16  VIZIO is both fair and efficient. However, in order for this to occur VIZIO must at

17  least make a reasonable attempt to produce source code for the Accused Products.

18  This is central to the claims in Blue Spike's Complaint, and VIZIO's refusal will only

19  continue to inhibit any meaningful ability for this action to move forward. *See* Fed. R.

20  Civ. P. 26(b)(1). Blue Spike's ability to develop its claim to the particularized level

21  that VIZIO now insists Blue Spike must, as well as VIZIO's non-infringement

22  contentions themselves,[5] require that VIZIO cooperate in good faith with Plaintiff to

23  produce the source code that is at issue in this action.[6]

---

24  [5] The Court cannot rely on simply VIZIO's self-interested proclamation that it has not
25  infringed, and Blue Spike must have this information to fairly defend against such
    contentions. *See Wi-Lan,* 1:15-cv-00788, Dkt. 204.

26  [6] Despite VIZIO's allegations that Blue Spike is requesting way too much source code,
    the amount produced is almost always limited by the parties reaching agreements.  For
27  example, for purposes of infringement analysis and damages calculations VIZIO
    accused products made in 2016 until present operate the same way as the source code
28

1  VIZIO acts in opposition to any and all such attempts.

2  **II.   THE REQUESTED SOURCE CODE IS ESSENTIAL TO**
3  **DEFENDANT'S CONTENTIONS AND FOR THE DEVELOPMENT OF PLAINTIFF'S CASE.**

4  Blue Spike will need to inspect the source code that is at issue in this case in
5  order to respond to the non-infringement and invalidity claims that VIZIO has
6  asserted it will raise in this case. *See* Rule 26(f) Report, Ex. 9, at 7 (§D.2.). Moreover,
7  Blue Spike will also need to see such nonpublic information in order to fairly develop
8  its claims past the plausible (yet publicly available) level that Plaintiff has already
9  demonstrated in this claim. *Id.* at 4.

10  These are concerns VIZIO shares, at least as to its self-interested position that
11  instead of cooperating with Plaintiff it will, yet again, move to dismiss Blue Spike's
12  Complaint. *See, e.g., Id.* at 7; *see also* VIZIO Letter, Apr. 17, 2018, Ex. 5. The
13  Defendant's letter, for example, outlines VIZIO's issues with Blue Spike's use of
14  publicly available information to plead a plausible Complaint. *See* Ex. 5. Yet the
15  particularized—and generally unrequired prior to discovery production and trial—
16  standard that VIZIO insists upon before it will cooperate with Blue Spike is the very
17  reason that the Defendant must produce the requested nonpublic information.[7] *Id.*
18  Without it, it is understood that Plaintiff would be prejudiced in the development of
19  its Complaint to such a particularized level in the first place. *See Wi-Lan Inc. v.*
20  *VIZIO, Inc.*, 1:15-cv-00788, Dkt. 204 (D. Del. Apr. 13, 2018); Fed. R. Civ. P.
21  26(b)(1).

22

23  provided to Blue Spike for inspection.  Another example, the source code for VIZIO's
accused products running Android 4.0.0 and higher have the same functionality.  And
24  VIZIO can agree via stipulation that the source code for the remote and to stream is the
same for a model of accused products regardless of the TV or tablet screen size.  So
25  VIZIO's argument about proportionality is moot. The decision as to how much or how
little to produce is in the hands of VIZIO via stipulations as to the various versions of
26  the source code.

[7] So as to not be confused, VIZIO continues to argue Blue Spike's operative
27  complaint is not sufficient in April of 2018, after VIZIO waived that right by filing an
Answer months ago.

28

8

JOINT STIPULATION

1489671

1    This is understandable due to the current absence of the nonpublic information

2    held by VIZIO, which Blue Spike continues to request. VIZIO will need to produce

3    this information to resolve the Catch-22 that it currently has created for the Plaintiff.

4    On the one hand, it requests a deeper level of information than that required by Rule

5    8. *See, supra,* fn3. On the other, it refuses to provide Blue Spike with the information

6    needed for Plaintiff to comply. VIZIO also asserts that it will move to dismiss, yet

7    again, without providing Blue Spike the information essential to defend against such

8    non-infringement contentions. *See* Rule 26(f) Report, Ex. 9, at 7 (§ D. 2.); *Baron*

9    *Servs., Inc. v. Media Weather Innovations LLC,* 717 F.3d 907, 913, n. 9 (Fed. Cir.

10   2013) ("The opportunity for the reasonable chance to disprove [defendant]'s position

11   on noninfringement was relevant and essential to [plaintiff]'s opposition of

12   [defendant]'s motion for summary judgment.") (alterations added).

13   Not only has Blue Spike supplied VIZIO with a discovery request that is very

14   clearly narrowed to a specific subset of VIZIO products (*see, e.g.*, Initial Disclosures,

15   Ex. 8), but it has repeatedly explained to VIZIO the relevance of the code to this

16   case—where initial source code production for the Accused Products within

17   Defendants control is a central issue to the infringement contentions. *See Baron,* 717

18   F.3d at 913, n. 9 (holding that finding non-infringement without requiring defendant

19   to produce source code was an abuse of discretion) (plaintiffs burden under Rule

20   26(b)(1) is only "to show that the source code is relevant and likely to lead to

21   admissible evidence" and under "the agreed protective order, [where defendant] can

22   require that only [plaintiff's] attorney's have access to the code. There is no basis to

23   further withhold discovery of the source code.") (alterations added).

24   Instead of producing the source code at issue in this Complaint, VIZIO dodges

25   its obligation in this case by asserting that, because there are potential third-party

26   source code discovery issues, VIZIO has no obligation to produce the source code

27   under its control. *See, supra,* at 4, 5; *infra,* at 16-17. This on the bare bones assertion

28   that the source code in VIZIO Accused Products does not infringe, and that third

9

1  parties (and not VIZIO itself) have sole control over the source code at issue (though

2  the Accused Products are VIZIO name-brand). *Id.* While VIZIO might like Blue

3  Spike to focus on third-party products and not the VIZIO Accused Products in this

4  case, the well-known axiom that Plaintiff is the master of its complaint surely applies.

5  And in this instance, Blue Spike is asking VIZIO to produce source code that is

6  relevant to its products, and not third-party products. Blue Spike is going to start with

7  VIZIO's source code, determine if third party discovery is warranted, and then, only

8  if necessary, bother third parties about VIZIO's infringement. It's VIZIO's Smart

9  Televisions and Tablet, that are the Accused Products, not a third parties.

10      **A.    VIZIO Has Disingenuously Evaded Blue Spike's Requests.**

11          ***i.    Email Correspondence.***

12      Furthermore, Blue Spike reminded VIZIO of its obligation to produce source

13  code through consistent and frequent correspondence with VIZIO that spans from the

14  early stages of Defendant's discovery obligations, until the present. *See, e.g.*, Ex. 1

15  (email dated Feb. 23, 2018); Ex. 2 (email dated Mar. 26, 2018); Ex. 3 (email dated

16  Apr. 3, 2018); Ex. 4 (email dated Apr. 19, 2018). Not only has this correspondence

17  clarified the need for the source code at issue in this complaint, but it reflects that

18  Blue Spike has also attempted to alleviate VIZIO's alleged issues with Blue Spike's

19  request. *See, e.g.*, Ex. 1. And admittedly, it does indicate a sense of frustration by

20  Blue Spike with VIZIO's continued lack of cooperation. *See, e.g.*, Ex. 4.

21      In February, Counsel for Blue Spike elaborated on the source code needed, and

22  noted ways that the pressure of document production could be alleviated if the scope

23  of this case could be limited through an initial "start with the source code review."

24  *See* Ex. 1. Blue Spike "explained that it is the source code related to streaming audio

25  and/or video" in the VIZIO Accused Products. *Id.* Moreover, Blue Spike reiterated

26  that VIZIO's continued position "that it is not going to make its entire source code for

27  the accused products" or "even make the source code related to the streaming

28  functionality available" was untenable and had held up progress in the case for

10

JOINT STIPULATION

months. *Id.* Plaintiff also requested a "meet and confer no later than March 6, 2018 with respect to inspection of source code" to as to "relieve the pressure of document production on VIZIO." *Id.* "However, it appears that Vizio is not going to make its source code available without motion practice as it has not indicated any dates for such review since the Rule 26 conference. As such, Blue Spike must proceed with its document requests in tandem with the review of the source code." *Id.* (showing attached requests for production).

In March, Blue Spike noted that it had "asked for a date to meet and confer on Vizio not providing a date for source code inspection." *See* Ex. 2 (noting that VIZIO's correspondence indicated "a transparent attempt to spin" its refusal to meet and confer, and offering meet and confer times "anytime today, tomorrow or Thursday" of that week). The correspondence also noted VIZIO's "disingenuous" evasion of Blue Spike's requests, and that Plaintiff would have to "move first," if needed, to address VIZIO's failure with this Court. *Id.* (Mar. 8, 2018). Correspondence between the parties underscores VIZIO's strategy of again ignoring Blue Spike's repeated requests for an initial source code review entirely while, at the same time, requiring that Blue Spike go above and beyond in clarifying responses that it had already given in good faith. *Id.* (Mar. 22, 2018) Indeed, VIZIO's lack of cooperation, or constructive responses as to how a meet and confer would address Blue Spike's issues, was a serious hindrance to scheduling a meet and confer. *Id.* Yet even as Blue Spike worked with VIZIO, and made concessions to supplement its responses (this in spite of zero concessions on behalf of VIZIO, *see* Ex. 2, VIZIO Counsel's Mar. 22 reply to Blue Spike Counsel Mar. 8 correspondence), VIZIO continues to make obstacles to a resolution of this case.[8]

---

[8] This even in the aftermath of two decisions in the present case that found VIZIO's use of such a strategy impermissible (*see* Order, Dkt. 29; Fed. Cir. Order, Case 18-116), and in spite of the "multiple documented times Blue Spike has attempted to meet and confer" (*see, e.g.*, Ex. 4).

1    In early April, Blue Spike again made efforts "to meet and confer about Vizio's
2    source code review and lack of production." *See* Ex. 3. Blue Spike noted that it had
3    "mentioned we wanted to meet and confer about 3 times on the source code and
4    you've ignored our requests. So in another effort to meet and confer, please let us
5    know a date this week that works for Vizio." *Id.* (noting Blue Spike's times and
6    accommodation it could make to meet). The correspondence noted that "[t]he call
7    pertains to a future date for source code inspection, Vizio's lack of production." *Id.*

8    In late April, Blue Spike had to, once more, reassert its request for source code
9    inspection, which it reiterated had been instrumental in holding up the process for an
10   attempted "meet and confer with Vizio for about 3 weeks." *See* Ex. 4. Blue Spike also
11   repeated the importance of time in this case, as the "short discovery window" (ending
12   on the 1st of Nov. 2018) made VIZIO's continued refusal to meet and confer, and its
13   continuous strategy in failing to "provide a reason for its denial of financial
14   information related to the accused products and its source code" a dangerous tactic.
15   This tactic has left Blue Spike in the position of being prejudiced in the assertion of
16   its property rights absent the assistance of this Court in the resolution of this issue.

17   ## ii.    Formal Discovery Correspondence.

18   Blue Spike served VIZIO with its First Request for Production of Documents
19   on February 23, 2018. *See* Ex. 7, at ¶¶ 16, 22-33. In its Request, Blue Spike clarified
20   the need for the source code at issue in VIZIO's Accused Products, and narrowed the
21   Request to a very specific subset of VIZIO name-branded televisions and tablets. *Id.*
22   Furthermore, Plaintiff narrowed the Accused Products to those "capable of streaming
23   secured content such as Netflix, Youtube, Google Play, HBO Go, Fox Now, and other
24   such services." *See id.*; *see also,* First Interrogatories, Ex. 11, at 7-8 (further clarifying
25   the VIZIO Accused Products by allowing Defendant to narrow its focus through the
26   memory systems, and operating systems, employed by such products); 30(b)(6)
27   Noticed Deposition, Ex. 12, at 1, 5 (further clarifying that the source code at issue is
28   that which is "implementing the patented inventions. The deponent needs to be able to

12

1489671

1   access the root tree for this deposition on a laptop consistent with the save [sic.]

2   guards of the Protective Order.").

3       As a first point, VIZIO pivots from its initial issue with the production of

4   source code. *See* Objections to Request, Ex. 13, at 24; *see also,* Objection to

5   Interrogatories, Ex. 6, at 5. In March, VIZIO's response to Blue Spike's request for

6   source code production stated that "VIZIO will agree to produce its confidential

7   documents once the Court enters a protective order in this case." *See* Obj. to Request,

8   Ex. 13, at 24. Now a protective order has been entered in this case. *See* Protective

9   Order, Ex. 14, at 3, § 2.8, ensuring that source code be treated as "HIGHLY

10  CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE"). This

11  protective order was in place prior to Blue Spike and VIZIO's meet and confer, where

12  the Defendant again was again non-responsive to Blue Spike's requests. Moreover,

13  VIZIO can require that only Blue Spike attorneys have access to this code. *See Baron,*

14  717 F.3d at 913, n. 9. With this protection in place, "[t]here is no basis to further

15  withhold discovery of the source code." *Id.*

16      Additionally, VIZIO disingenuously represented the clear scope of what Blue

17  Spike had asked for in its Objections. *See* Obj. to Request, Ex. 13, at 24.[9] As an

18  example, it denies that Blue Spike's source code request is relevant "to any claim or

19  defense or proportional needs of the case," while at the same time asserting that it will

20  raise a non-infringement contention. *See* Rule 26(f) Report, Ex. 9, at 7 (§ D. 2.).

21

22  _____

[9] For example, in its Objection VIZIO states that "VIZIO will not produce those types of 'documents or things,'" where Blue Spike made no such requests. *See* Ex. 13, at 23
23  (where VIZIO quotes Blue Spike's request verbatim, and it is absent of any such request for "documents and things."). Defendant then feigns a lack of understanding
24  to what "data in electronic form" means in Blue Spike's Request. *Id.* at 24. As VIZIO places Blue Spike's Document Request just prior to this cherry-picked term, it clearly
25  refers to "documents, correspondence, email or *data in electronic form*, referring or related to the structure, operation, function or performance of the Accused Product
26  and/or its components, including all source code, user guides, reference manual, product manuals, product descriptions, technician's guides, installation guides,
27  technical manuals, software manuals, screen shots, and datasheets." *Id.* at 23 (emphasis added). Thus, VIZIO surely understands the context of the term.

28

1489671

1   Certainly, Blue Spike will need the requested production in order to fairly defend

2   itself. *See Baron*, 717 F.3d at 913, n. 9. Moreover, VIZIO well knows that the source

3   code at issue is that in the Accused VIZIO name-branded Products, as Blue Spike has

4   made that abundantly clear from the initial filing of its Complaint, and throughout the

5   discovery process. *See, supra,* at 12. The disingenuous lack of cooperation with Blue

6   Spike's Requests can be seen throughout VIZIO's Objections to Plaintiff's most

7   fundamental Requests that are at issue in this Motion to Compel. *See, e.g.*, Ex. 13, at

8   Obj. to No.'s 16, 22-33.

9         **B.**    **VIZIO's Lack of Good Faith Effort and Uncooperative Strategy Has**

10               **Been Noted in This Case and by Other Courts.**

11       Already in this case, two separate courts, consisting of not less than four

12  separate judges, have found in favor of Blue Spike when VIZIO's litigation tactics

13  (which involved an abuse of the parties' good faith efforts through the dismissal

14  process) have been reviewed. Both this Court and the Federal Circuit found that, in

15  working to forestall Blue Spike's patent infringement claims after Plaintiff moved the

16  action to VIZIO's preferred District, Defendant did not act in good faith or with clean

17  hands. *See* Order, Dkt. 29; Fed. Cir., Order, Case 18-116.

18       This is not the first, or last, time a Federal Court has found misconduct in

19  VIZIO's litigation strategy. In fact, just this month the District Court of Delaware

20  found VIZIO's litigation tactics in discovery "would be unfairly prejudicial to

21  Plaintiff and disrupt the Court's management of the case." *See Wi-Lan,* 1:15-cv-

22  00788, Dkt. 204. Chief Judge Leonard P. Stark found that "Plaintiff has the right to

23  obtain the factual basis for each of Vizio's affirmative defenses beyond the bare

24  assertions of them in Vizio's responsive pleading." *Id.* The Judge also found the

25  interrogatories "necessary to advance the orderly pretrial development of the case."

26  *Id.*

27       In Judge Stark's Order, as here, production by VIZIO of the requested source

28  code is necessary to advance the pretrial development of this case. *Id.* Moreover,

14

1489671

1    VIZIO intends to use absence of this non-public information in Blue Spike's
2    Complaint as the basis for affirmative, and other defenses. *See* Ex. 9, at 7. Without
3    allowing Blue Spike or this Court to inspect the source code by producing it, these
4    defenses will be nothing more than bare assertions. *See Wi-Lan,* 1:15-cv-00788, Dkt.
5    204. This is an indefensible position by VIZIO. *See Baron,* 717 F.3d at 913, n. 9.

6           Thus, for one, if VIZIO does "believe[ ] that its defenses of non-infringement
7    and/or invalidity are likely to be determined by a motion for summary judgment,"
8    then Blue Spike and this Court will need the source code in order to understand,
9    beyond assertions, that there is a factual basis for Defendant's defenses. *See* Rule
10   26(f) Report, Ex. 9,  at 7 (§ D. 2.) (alteration added). For two, if VIZIO actually does
11   want Blue Spike to prepare for, and potentially streamline, this case by clarifying its
12   infringement contentions deeper than the plausibility standard required by Rule 8,
13   then Blue Spike will need to see the source code: because it is a central item of
14   information needed to do that in this case. Lastly, dismissing infringement counts (as
15   the source code sometimes calls for in cases such as these) would, again, need
16   cooperation by VIZIO with Blue Spike's request, as the source code may "indicate a
17   flaw with the publicly available information supporting Blue Spike's allegation of
18   Vizio's patent infringement." *See* Rule 26(f) Report, Ex. 9, at 4.

19          In short, it seems that VIZIO has tied Blue Spike's hands. Essentially, VIZIO
20   requires an unreasonable level of specificity in order to make a good faith attempt to
21   provide Blue Spike with the very information required to comply with such a request.
22   VIZIO then, again, ties Blue Spike's hands by asserting that it will file non-
23   infringement defenses against Plaintiff that rely upon the nonpublic information
24   requested by Blue Spike. *Id.* at 7 (§ D. 2.). With nothing more than Defendant's
25   contention, absent the source code to support this defense, Defendant's defense that
26   noninfringement applies to the present case leaves Plaintiff prejudiced. *See Wi-Lan,*
27   1:15-cv-00788, Dkt. 204; *Baron,* 717 F.3d at 913, n. 9. VIZIO then asserts that Blue
28   Spike, and not the Catch-22 it has created, is the underlying reason for delay.  This is

15

1489671

1  illogical.

2      With the discovery deadline fast approaching, Blue Spike is left with no choice

3  but to file the current motion after meeting and conferring with counsel on April 20,

4  2018. VIZIO took the repeated position that it didn't understand Blue Spike's

5  infringement contentions—contentions which have been in Defendant's possession

6  for over two months. As has been an issue since the beginning of this process, VIZIO

7  also made no good faith attempts to provide any of the requested source code; though

8  Blue Spike has made it clear from the very beginning of discovery requests that an

9  initial good faith effort as to some of the source code would have been sufficient to

10 help move the process forward. *See* Ex. 1. VIZIO's alleged lack of understanding

11 coincides precisely with Blue Spike's renewed request for a date to inspect VIZIO's

12 accused product source code.[10]

13 **III.    CONCLUSION TO PLAINTIFF BLUE SPIKE'S POSITION.**

14      Production of the source code requested by Blue Spike, and withheld by

15 VIZIO, is essential to Blue Spike's development of this case. *See* Fed. R. Civ. P.

16 26(b)(1). Defendant is protected from prejudice by a protection order outlining the

17 care of confidential information, Blue Spike's efforts to set-up a discovery process

18 with a neutral referee and loser pay provision, and Blue Spike's transparent efforts to

19 work with Defendant in the production of discovery at issue in this proceeding.

20      Pursuant to Federal Rule 37(a), and Local Rule 37, Plaintiff requests for the

21 Court to issue an Order to Compel Defendant to produce source code for the Accused

22 Products as Blue Spike requested in its Requests for Production Nos. 16, 22-33.

23 Defendant is welcome to make available a representative Accused Product's source

24

25 [10] VIZIO also attempted through attorney argument to say that third parties had the
   source code not VIZIO.  But VIZIO would not stipulate to not using any source code

26 to show non-infringement.  As such, even if third parties possess some source code,
   the Smart TVs produced by VIZIO are the accused products for this case and that

27 source code is necessary to show how this hardware works with the operating system
   of VIZIO to run particular steaming applications, among others, from third parties.

28

1489671

1  code, e.g. a 2016 VIZIO Smart TV, whereby Blue Spike will stipulate that the other

2  Accused Products stream, protect against hackers and have a similar remote control.

3  Without an order from this Court compelling production, VIZIO has already

4  demonstrated it will continue to practice "efficient infringement" forcing an

5  independent inventor, who's debt from a failed start-up are these patent rights, in

6  patent's that he created, to bring forward this litigation just to obtain a reasonable

7  royalty.

8  **DEFENDANT VIZIO'S POSITION[11]**

9  **IV.   CASE BACKGROUND**

10      Blue Spike alleges that VIZIO infringes seven patents, which can be

11  categorized into three groups: U.S. Patent Nos. 5,745,569, and 8,930,719 (collectively

12  "ASLR Patents"); U.S. Patent Nos. 7,475,246, 8,171,561, and 8,739,295 (collectively

13  "Secure Server Patents"); and U.S. Patent Nos. 7,159,116 and 8,538,011 (collectively

14  "Trusted Transactions Patents") (all patents collectively the "patents-in-suit").

15      Blue Spike does not contend that the patents-in-suit read on the Accused

16  Devices (*i.e.*, TVs and tablets) in their entirety.  Instead, as Blue Spike concedes, the

17  patents-in suit concern very limited aspects of the Accused Products.  According to

18  Blue Spike, the Secure Server Patents and the Trusted Transactions Patents relate to

19  the use of Microsoft's PlayReady functionality in certain VIZIO TVs and home

20  theater displays, and the ASLR Patents relate to the alleged use of data protection

21  based on memory shuffling in certain VIZIO remote control tablets.  Basileo Decl.,

22  Ex. D at 5-6; *id.*, Ex. E, at 7-10.

23

24  [11] The draft joint stipulation that Blue Spike sent to VIZIO, *see* Basileo Decl., Ex. B,

25  failed to include an initial introductory statement section from each party, or a
    verbatim statement of the relevant Request and Response.  L.R. 37-2.1. VIZIO asked

26  Blue Spike to revise the joint stipulation to conform to the Local Rules, but Blue

27  Spike refused, stating, "We thought the intro complies as is.  But you are welcome to
    separate it into section."  Basileo Decl., Ex. C.

28

1489671

**V.    DISCOVERY IN DISPUTE**

According to Blue Spike's heavily revised portion of this joint stipulation, Document Requests No. 16 and 28-33 are purportedly at issue here. Those requests are set forth below along with VIZIO's Responses.

**DOCUMENT REQUEST NO. 16:**

Please produce all documents, including correspondence, email or data in electronic form, referring or related to the structure, operation, function or performance of the Accused Product and/or its components, including all source code, user guides, reference manuals, product manuals, product descriptions, technician's guides, installation guides, technical manuals, software manuals, screen shots and datasheets.

**RESPONSE TO DOCUMENT REQUEST NO. 16:**

VIZIO incorporates its General Objections as if fully set forth herein.

VIZIO further objects to this Request to the extent it calls for disclosure of documents protected by a Privilege.

VIZIO further objects to this Request to the extent it requires disclosure of confidential information before a protective order is entered in this case. VIZIO will agree to produce its confidential documents once the Court enters a protective order in this case.

VIZIO further objects to this Request as vague and ambiguous as to the term "Accused Product." To date, Blue Spike has failed to specifically identify the products accused of infringement, including the model numbers of those accused products, and that information is needed before VIZIO can reasonably respond to this Request. Moreover, this lawsuit has nothing to do with vehicle tracking systems. VIZIO will not produce documents relating to vehicle tracking systems.

VIZIO further objects to this Request as to the phrase "data in

18

1489671

1   electronic form." It is uncertain what that data would include, aside from

2   emails, and VIZIO will not produce those types of "documents or

3   things" absent further clarification.

4         VIZIO further objects to this Request to the extent it seeks

5   information not relevant to any claim or defense or proportional to the

6   needs of the case. This particular Request is objectionable because the

7   proposed discovery is not important in resolving the issues in this action,

8   and the burden or expense of the proposed discovery outweighs its likely

9   benefit. For example, this Request seeks information about the structure

10  and function of VIZIO's televisions as a whole. But that is well beyond

11  the scope of this lawsuit. Additionally, this Request seeks discovery into

12  emails, and email discovery is not proportional to the needs of this case.

13  Based on the Complaint, this lawsuit appears to relate to applications

14  and instrumentalities developed by third parties. Thus, VIZIO's

15  documents, and particularly its emails, will not be relevant to any claim

16  or defense in this case. Accordingly, VIZIO will not agree to produce

17  any emails unless and until Blue Spike explains with specificity what

18  emails are being sought, and why those emails are relevant to this matter

19  and also proportional to the needs of this case.

20        VIZIO objects to this Request to the extent that it seeks

21  information that is not within VIZIO's possession, custody, or control.

22        VIZIO further objects to this Request to the extent it seeks

23  disclosure of Third Party Confidential Information.

24        VIZIO is willing to meet and confer to better understand the scope

25  and relevance of this Request.  VIZIO reserves the right to make further

26  objections to this Request.  It is also noted that based on VIZIO's current

27  understanding of Blue Spike's infringement allegations, Blue Spike's

28  infringement theories are directed to applications and functionalities

1    developed and maintained by third parties.  Thus, documents responsive

2    to this Request are likely in the possession of third parties, not VIZIO.

3    **DOCUMENT REQUEST NO. 28**

4         Source code related to all Vizio's Smart Televisions imported into

5    the U.S. since January 1, 2018.

6    **RESPONSE TO DOCUMENT REQUEST NO. 28**

7         VIZIO incorporates its General Objections as if fully set forth

8    herein.

9         VIZIO further objects to this Request to the extent it seeks

10   information not relevant to any claim or defense or proportional to the

11   needs of the case. This particular Request is objectionable because the

12   proposed discovery is not important in resolving the issues in this action,

13   and the burden or expense of the proposed discovery outweighs its likely

14   benefit. For example, this Request is not reasonably limited to any

15   accused products, the functionality or features that are accused of

16   infringement, or limited to the technology claimed in the asserted

17   patents.

18        VIZIO further objects to this Request to the extent it is vague and

19   ambiguous as to the phrase "Source code related to all Vizio's Smart

20   Televisions." It is entirely unclear what source code is being requested

21   here.

22        VIZIO further objects to this Request to the extent it requires

23   disclosure of confidential information before a protective order is

24   entered in this case. VIZIO will agree to produce its confidential

25   documents once the Court enters a protective order in this case.

26        VIZIO objects to this Request to the extent that it seeks

27   information that is not within VIZIO's possession, custody, or control.

28   Most of the source code in VIZIO's televisions is controlled by various

20

JOINT STIPULATION

1  third parties, not VIZIO.

2  VIZIO further objects to this Request to the extent it seeks

3  disclosure of Third Party Confidential Information.

4  VIZIO is willing to meet and confer to better understand the scope

5  and relevance of this Request. VIZIO reserves the right to make further

6  objections to this Request. It is also noted that based on VIZIO's current

7  understanding of Blue Spike's infringement allegations, Blue Spike's

8  infringement theories are directed to applications and functionalities

9  developed and maintained by third parties. Thus, documents responsive

10  to this Request are likely in the possession of third parties, not VIZIO.

11  **DOCUMENT REQUEST NO. 29**

12  Source code related to Vizio's Tablets streaming of audio and/or

13  video content since January 1, 2018.

14  **RESPONSE TO DOCUMENT REQUEST NO. 29**

15  VIZIO incorporates its General Objections as if fully set forth

16  herein.

17  VIZIO further objects to this Request to the extent it seeks

18  information not relevant to any claim or defense or proportional to the

19  needs of the case. This particular Request is objectionable because the

20  proposed discovery is not important in resolving the issues in this action,

21  and the burden or expense of the proposed discovery outweighs its likely

22  benefit. For example, this Request is not reasonably limited to any

23  accused products, the functionality or features that are accused of

24  infringement, or limited to the technology claimed in the asserted

25  patents.

26  VIZIO further objects to this Request to the extent it is vague and

27  ambiguous as to the phrase "Source code related to all Vizio's Tablets."

28  It is entirely unclear what source code is being requested here.

21

1489671

1      VIZIO further objects to this Request to the extent it requires

2  disclosure of confidential information before a protective order is

3  entered in this case. VIZIO will agree to produce its confidential

4  documents once the Court enters a protective order in this case.

5      VIZIO objects to this Request to the extent that it seeks

6  information that is not within VIZIO's possession, custody, or control.

7  Most of the source code in VIZIO's televisions is controlled by various

8  third parties, not VIZIO.

9      VIZIO further objects to this Request to the extent it seeks

10  disclosure of Third Party Confidential Information.

11      VIZIO is willing to meet and confer to better understand the scope

12  and relevance of this Request. VIZIO reserves the right to make further

13  objections to this Request. It is also noted that based on VIZIO's current

14  understanding of Blue Spike's infringement allegations, Blue Spike's

15  infringement theories are directed to applications and functionalities

16  developed and maintained by third parties. Thus, documents responsive

17  to this Request are likely in the possession of third parties, not VIZIO.

18  **DOCUMENT REQUEST NO. 30**

19      Source code related to Vizio's Smart Televisions and Tablets

20  streaming functionality of audio and/or video content.

21  **RESPONSE TO DOCUMENT REQUEST NO. 30**

22      VIZIO incorporates its General Objections as if fully set forth

23  herein.

24      VIZIO further objects to this Request to the extent it seeks

25  information not relevant to any claim or defense or proportional to the

26  needs of the case. This particular Request is objectionable because the

27  proposed discovery is not important in resolving the issues in this action,

28  and the burden or expense of the proposed discovery outweighs its likely

1    benefit. For example, this Request is not reasonably limited to any

2    accused products, the functionality or features that are accused of

3    infringement, or limited to the technology claimed in the asserted

4    patents.

5          VIZIO further objects to this Request to the extent it is vague and

6    ambiguous as to the phrase "Source code related to all Vizio's Smart

7    Televisions and Tablets." It is entirely unclear what source code is being

8    requested here.

9          VIZIO further objects to this Request to the extent it requires

10    disclosure of confidential information before a protective order is

11    entered in this case. VIZIO will agree to produce its confidential

12    documents once the Court enters a protective order in this case.

13          VIZIO objects to this Request to the extent that it seeks

14    information that is not within VIZIO's possession, custody, or control.

15    Most of the source code in VIZIO's televisions is controlled by various

16    third parties, not VIZIO.

17          VIZIO further objects to this Request to the extent it seeks

18    disclosure of Third Party Confidential Information.

19          VIZIO is willing to meet and confer to better understand the scope

20    and relevance of this Request. VIZIO reserves the right to make further

21    objections to this Request. It is also noted that based on VIZIO's current

22    understanding of Blue Spike's infringement allegations, Blue Spike's

23    infringement theories are directed to applications and functionalities

24    developed and maintained by third parties. Thus, documents responsive

25    to this Request are likely in the possession of third parties, not VIZIO.

26    **DOCUMENT REQUEST NO. 31**

27          All notes related to revisions to the source code related to the

28    streaming functionality since January 1, 2016 for Vizio's Smart

1    Televisions and Tablets.

2    **RESPONSE TO DOCUMENT REQUEST NO. 31**

3        VIZIO incorporates its General Objections as if fully set forth
4    herein.

5        VIZIO further objects to this Request to the extent it seeks
6    information not relevant to any claim or defense or proportional to the
7    needs of the case. This particular Request is objectionable because the
8    proposed discovery is not important in resolving the issues in this action,
9    and the burden or expense of the proposed discovery outweighs its likely
10   benefit. For example, this Request is not reasonably limited to any
11   accused products, the functionality or features that are accused of
12   infringement, or limited to the technology claimed in the asserted
13   patents.

14       VIZIO further objects to this Request to the extent it is vague and
15   ambiguous as to the phrase "source code related to the streaming
16   functionality since January 1, 2016 for Vizio's Smart Televisions and
17   Tablets." It is entirely unclear what source code is being requested here.

18       VIZIO further objects to this Request to the extent it requires
19   disclosure of confidential information before a protective order is
20   entered in this case. VIZIO will agree to produce its confidential
21   documents once the Court enters a protective order in this case.

22       VIZIO objects to this Request to the extent that it seeks
23   information that is not within VIZIO's possession, custody, or control.
24   Most of the source code in VIZIO's televisions is controlled by various
25   third parties, not VIZIO.

26       VIZIO further objects to this Request to the extent it seeks
27   disclosure of Third Party Confidential Information.

28       VIZIO is willing to meet and confer to better understand the scope

24

JOINT STIPULATION

1489671

1  and relevance of this Request. VIZIO reserves the right to make further

2  objections to this Request. It is also noted that based on VIZIO's current

3  understanding of Blue Spike's infringement allegations, Blue Spike's

4  infringement theories are directed to applications and functionalities

5  developed and maintained by third parties. Thus, documents responsive

6  to this Request are likely in the possession of third parties, not VIZIO.

7  **DOCUMENT REQUEST NO. 32**

8  Documents explaining the differences in the versions of the

9  source code and/or

10  programming code for Vizio's Smart Televisions and Tablets since

11  January 1, 2016.

12  **RESPONSE TO DOCUMENT REQUEST NO. 32**

13  VIZIO incorporates its General Objections as if fully set forth

14  herein.

15  VIZIO further objects to this Request to the extent it seeks

16  information not relevant to any claim or defense or proportional to the

17  needs of the case. This particular Request is objectionable because the

18  proposed discovery is not important in resolving the issues in this action,

19  and the burden or expense of the proposed discovery outweighs its likely

20  benefit. For example, this Request is not reasonably limited to any

21  accused products, the functionality or features that are accused of

22  infringement, or limited to the technology claimed in the asserted

23  patents.

24  VIZIO further objects to this Request to the extent it is vague and

25  ambiguous as to the phrase "Documents explaining the differences in the

26  versions of the source code and/or programming code for Vizio's Smart

27  Televisions and Tablets since January 1, 2016." It is entirely unclear

28  what differences are being discussed here, and if those differences are

within the scope of this action.

VIZIO further objects to this Request to the extent it requires disclosure of confidential information before a protective order is entered in this case. VIZIO will agree to produce its confidential documents once the Court enters a protective order in this case.

VIZIO objects to this Request to the extent that it seeks information that is not within VIZIO's possession, custody, or control. Most of the source code in VIZIO's televisions is controlled by various third parties, not VIZIO.

VIZIO further objects to this Request to the extent it seeks disclosure of Third Party Confidential Information.

VIZIO is willing to meet and confer to better understand the scope and relevance of this Request. VIZIO reserves the right to make further objections to this Request. It is also noted that based on VIZIO's current understanding of Blue Spike's infringement allegations, Blue Spike's infringement theories are directed to applications and functionalities developed and maintained by third parties. Thus, documents responsive to this Request are likely in the possession of third parties, not VIZIO.

**DOCUMENT REQUEST NO. 33**

Documents listing the versions of the source code and/or programming code for Vizio's Smart Televisions and Tablets since January 1, 2016.

**RESPONSE TO DOCUMENT REQUEST NO. 33**

VIZIO incorporates its and General Objections as if fully set forth herein.

VIZIO further objects to this Request to the extent it seeks information not relevant to any claim or defense or proportional to the needs of the case. This particular Request is objectionable because the

26

proposed discovery is not important in resolving the issues in this action, and the burden or expense of the proposed discovery outweighs its likely benefit. For example, this Request is not reasonably limited to any accused products, the functionality or features that are accused of infringement, or limited to the technology claimed in the asserted patents.

VIZIO further objects to this Request to the extent it is vague and ambiguous as to the phrase "Documents listing the versions of the source code and/or programming code for Vizio's Smart Televisions and Tablets since January 1, 2016." It is unclear what source code is being referenced here.

VIZIO further objects to this Request to the extent it requires disclosure of confidential information before a protective order is entered in this case. VIZIO will agree to produce its confidential documents once the Court enters a protective order in this case.

VIZIO objects to this Request to the extent that it seeks information that is not within VIZIO's possession, custody, or control. Most of the source code in VIZIO's televisions is controlled by various third parties, not VIZIO.

VIZIO further objects to this Request to the extent it seeks disclosure of Third Party Confidential Information.

VIZIO is willing to meet and confer to better understand the scope and relevance of this Request. VIZIO reserves the right to make further objections to this Request. It is also noted that based on VIZIO's current understanding of Blue Spike's infringement allegations, Blue Spike's infringement theories are directed to applications and functionalities developed and maintained by third parties. Thus, documents responsive to this Request are likely in the possession of third parties, not VIZIO.

27

JOINT STIPULATION

## VI. COURTS CAREFULLY SCRUTINIZE SOURCE CODE REQUESTS

Proprietary source code is commercially sensitive, and thus courts carefully scrutinize source code requests. *Drone Tech.*, 838 F.3d at 1299-30. Thus, a party (such as Blue Spike) seeking source code must prove that the source code in question is relevant to issues in dispute, and that the need for production outweighs the risks and burdens associated with its production. *Id.* at 1300 (vacating an order requiring production of source code because moving party "failed to show its relevance or establish any need for the code as it relates to the operation of the accused products"). Mere speculation will not suffice. *In re Apple and AT & TM Antitrust Litig.*, 2010 WL 1240295, at *3 (N.D. Cal. Mar. 26, 2010) ("Based on the above, plaintiffs have not met their burden and have not established that the additional source code sought is relevant and necessary. Plaintiffs only speculate that the additional source code may be relevant. At this juncture, some (if not all) of plaintiffs' assertions appear to be based on mere 'belief.'") (citations omitted).

Courts also recognize that requests (such as the one at issue here) that seek all source code regardless of its relevance are overbroad, and only source code that relates to the accused functionality should be made available for inspection. *See, e.g., Uniloc USA, Inc. v. Apple, Inc.*, 2018 WL 2002979, at *2-3 (N.D. Cal. Apr. 30, 2018) (denying request to inspect all iPhone operating system software as overbroad, citing "the requirement under the Federal Rules that discovery be relevant and proportional"); *Rensselaer Polytechnic Inst. v. Apple Inc.*, 2014 WL 1871866, at *4-5 (N.D.N.Y. May 8, 2014) (limiting production to source code relating to accused functionality); *Nazomi Comm's, Inc. v. Samsung Telecomms., Inc.*, 2012 WL 1980807, at *3 (N.D. Cal. June 1, 2007) (limiting production to source code relating to accused functionality, and denying plaintiff's request for a "complete copy of the source code compiled onto each [defendant] device" so as to help plaintiff "fully understand the operation of [defendant's] products and to determine whether relevant source code is in the exclusive possession of one or more third parties.").

# VII.   VIZIO DOES NOT HAVE THE RELEVANT SOURCE CODE

As discussed above, the accused functionality in this case falls into two categories: 1) Microsoft's PlayReady functionality in certain VIZIO TVs, and 2) the alleged use of data protection based on memory shuffling in certain VIZIO remote control tablets.  VIZIO does not possess the source code relating to either of these accused functionalities.

As explained in the Declaration of Eric Loes, VIZIO's Senior Director of Software Engineering, VIZIO does not manufacture the TVs or home theater displays that it sells.  Declaration of Eric Loes ("Loes Decl."), ¶ 3. ████████████████

████████████████████████████████████████████████████████

████████  These TVs currently include system-on-a-chip processors ("SoCs") from different third-party manufacturers.  *Id*.  VIZIO does not possess the source code relating to Microsoft's PlayReady functionality in VIZIO's TVs.  *Id*. at ¶ 4.[12]

In addition, VIZIO does not manufacture the Android-based remote control tablets that shipped with certain models of its TVs and home theater displays.  *Id*. at ¶ 6.  Those remote control tablets were manufactured by a third party manufacturer.  *Id*. at ¶ 6.  VIZIO does not possess the source code relating to data protection through memory shuffling on VIZIO's Android-based remote control tablets.  *Id*. at ¶ 7.

In sum, VIZIO does not have the relevant source code, and Blue Spike's motion should be  denied on this basis.

# VIII.   BLUE SPIKE HAS FAILED TO SHOW THAT ANY OTHER SOURCE CODE IS RELEVANT OR NECESSARY

As discussed above, a party (such as Blue Spike) that seeks the production of

---

[12] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████

1489671

1  computer source code must prove that the source code in question is relevant to issues

2  in dispute, and that the need for production outweighs the risks and burdens

3  associated with its production. *Drone Tech.*, 838 F.3d at 1300-1301. Blue Spike does

4  not come close to meeting its burden.

5      Blue Spike asserts that it needs to inspect all of VIZIO's source code "in order

6  to respond to the non-infringement and invalidity claims that VIZIO has asserted" and

7  "to fairly develop its claims past the plausible (yet publicly available) level that

8  Plaintiff has already demonstrated." *But source code unrelated to the accused*

9  *functionality is not relevant or necessary to either task.* For that reason it is not

10  discoverable. *See, e.g.*, *Rensselaer Polytechnic Inst.*, 2014 WL 1871866 (limiting

11  production to source code relating to accused functionality).

12      Blue Spike also argues that it "has repeatedly explained to VIZIO the relevance

13  of the code to this case – where initial source code production for the Accused

14  Products within Defendants control is a central issue to the infringement contentions."

15  But it is not enough to merely assert that source code is "a central issue to the

16  infringement contentions." Blue Spike must explain *why* VIZIO source code

17  unrelated to the accused functionality is relevant to its contentions. Blue Spike has

18  not even attempted to do so.[13]

19      Blue Spike also argues that source code is discoverable if it relates to an

20  accused product identified in its pleading, regardless of whether it relates to the

21  accused functionality. *See* Mot. at 6, fn. 4. None of the cases cited by Blue Spike

22  support this proposition. Each involves the question of whether the allegations in a

23  complaint are sufficient to survive a motion to dismiss, and do not concern the scope

24

25  ─────────────────────
[13] Blue Spike also cites *Baron Services,* 717 F.3d at 913, n. 9, for the proposition that

26  "finding non-infringement without requiring a defendant to produce source code [is] an abuse of discretion." But the court in *Baron* expressly held that the source code in

27  question was "relevant and likely to lead to admissible evidence." *Id.* Blue Spike has made no such showing here.

28

1    of permissible discovery.[14]  In fact, as discussed above, courts routinely reject the

2    notion that all source code related to an accused product is discoverable, and limit

3    discovery to source code that relates to the accused functionality. *See, e.g., Nazomi*,

4    2012 WL 1980807, at *3 (limiting production to source code relating to accused

5    functionality, and denying plaintiff's request for a "complete copy of the source code

6    compiled onto each [defendant] device").

7          Finally, Blue Spike argues that the proportionality requirement of Fed. R. Civ.

8    P. 26(b)(1) is not an impediment to the relief it seeks because the parties could agree

9    that (1) VIZIO products operate the same way as any source code provided; and (2)

10   the source code is same for any model of accused products.  This argument is a red

11   herring. VIZIO does not possess source code for the accused functionalities; that

12   source code is in the hands of third parties.  And Blue Spike has not shown that any

13   other source code that VIZIO might possess is relevant or necessary.  Thus, Blue

14   Spike has not made the threshold showing required to support a source code

15   inspection in the first place, and thus proportionality (which is a further limit on

16   discovery, once relevance has been established) is entirely beside the point.

17   **IX.    VIZIO HAS REPEATEDLY ADVISED BLUE SPIKE THAT THE**

18          **RELEVANT SOURCE CODE IS CONTROLLED BY THIRD PARTIES**

19          VIZIO has made no secret of the fact that the source code relevant to this

20   dispute is third party source code.  For example, in its March 26, 2018, Response to

21   the request at issue here, VIZIO advised Blue Spike that it should seek source code

22   from third parties.

23   _____

24   [14] *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (finding that where a cognizable theory or sufficient facts are presented, Rule 8

25   requirement is met); *McAfee Enters., Inc. v. Yamaha Corp. of America*, 2:16-2562, 2016 WL 6920675 at *2 (C.D. Cal. June 24, 2016) ("The patent holder is not required

26   to provide every detail of its claim within the initial pleading. [citation omitted]. Rather, the complaint must merely provide a defendant with fair notice and a basis for

27   asserting the claim. [citation omitted]."); *Soteria Encryption, LLC v. Lenovo United States, Inc.*, 16-7958, 2017 WL 3449058, at *1 (C.D. Cal. Feb. 27, 2017).

28

1489671

> It is also noted that based on VIZIO's current understanding of Blue Spike's infringement allegations, Blue Spike's infringement theories are directed to applications and functionalities developed and maintained by third parties.  Thus, documents responsive to this Request are likely in the possession of *third parties*, not VIZIO.

Basileo Decl., Ex. F at 25 (emphasis added).  In an April 10, 2018, email regarding meet and confer times, VIZIO counsel reiterated this warning:

> Additionally, we reiterate that, based on our current understanding, the source code you are really seeking is in the possession of *third parties*, but we can discuss that on our phone call as well.

*Id*., Ex. A at 3 (emphasis added).  And during the April 20, 2018, meet and confer teleconference VIZIO counsel again advised Blue Spike that Blue Spike should seek such source code from third parties.  *Id*., ¶ 14.

## X.   BLUE SPIKE'S ASSERTIONS THAT VIZIO HAS ACTED IMPROPERLY ARE UNFOUNDED

Blue Spike's Motion is replete with baseless accusations regarding VIZIO's purported discovery misconduct.  For example, Blue Spike complains about the fact that it has had to assert its claims in two different venues.  But there is nothing improper about VIZIO's refusal to litigate this action in an improper forum (the Eastern District of Texas).  *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514, 1520-21 (2017) (venue in a patent case is improper if the Defendant is neither incorporated nor maintains a regular and established place of business in the forum).

Blue Spike also complains that VIZIO did not produce its source code when counsel for Blue Spike "asked for it" early in this case.  But this complaint is baseless.  Among other things, VIZIO had no obligation to respond to Blue Spike's counsel's informal requests.  And while Blue Spike appears to be operating under the false assumption that this case is actually pending in the Eastern District of Texas (which has different initial disclosure obligations), *see, e.g.,* Basileo Decl., Ex. G at 7, 15, 21, and 22 (citing the Local Rules of the Eastern District of Texas), this is simply not the

32

1489671

1   case.  Moreover, no production of source code could have taken place in the absence
2   of a protective order, which was only recently approved by this Court.  And it was for
3   this same reason that VIZIO proposed no deadline for source code production in the
4   parties' Joint Rule 26(f).  This was not done to avoid the obligation to provide source
5   code, if any, as Blue Spike contends.  Finally, as set forth above, VIZIO does not
6   possess source code relating to the accused functionalities.

7       As for Blue Spike's complaint that it is now facing time pressure with regard to
8   discovery, Blue Spike has no one to blame but itself.  The parties conducted their
9   Rule 26(f) initial conference on December 15, 2017.  Basileo Decl., Ex. H at 1.  Blue
10  Spike could have served formal discovery at any time thereafter.  But Blue Spike
11  inexplicably waited until February 23, 2018, to serve its first set of formal document
12  demands, including its demand for source code.  Basileo Decl., Ex. I.  Blue Spike's
13  protests about "trying to meet and confer" for "months," when it did not serve formal
14  requests until February 23, 2018, and did not seek its first post-formal- request meet
15  and confer until April 3, 2018, *see id.,* Ex. A, are not well-taken.  And Blue Spike has
16  not bothered to conduct any third party discovery to date, despite VIZIO repeatedly
17  informing Blue Spike that third parties are likely in possession of this source code.
18  Moreover, as discussed above, Blue Spike has delayed the instant motion by serving a
19  joint stipulation, then withdrawing that joint stipulation after it received VIZIO's
20  response, and then approximately one week later re-serving a second, substantially
21  revised joint stipulation that restarted the seven-day time period for VIZIO's
22  response.  Any time crunch Blue Spike may purportedly be facing, such as pursuing
23  international discovery, is Blue Spike's own fault.

24      Similarly unavailing is Blue Spike's contention that VIZIO has avoided
25  meeting and conferring with Blue Spike.  The document request response at issue in
26  this Motion was served in a timely manner on March 26, 2018.  *Id.*, Ex. F.  Blue
27  Spike did nothing for eight days, then sent a meet and confer request that did not
28  contain any of the information required by Local Rule 37.  *Id.*, Ex. A at 8.  VIZIO

33

1489671

requested that Blue Spike provide a proper meet and confer letter.  *Id.* at 4-6.  Even though Blue Spike ignored this request, over the next few days VIZIO proposed *multiple* dates and times for a meet and confer call.  *Id.* at 2 ("The dates and times you propose do not work for us.  We are available to meet and confer Thursday or Friday of this week."); *id.* at 1 ("How about 2 p.m. Los Angeles time on Thursday?"); *id.* ("I have not heard back from you regarding the time I proposed, and now that time slot no longer works for us.  How about 10:30 tomorrow morning?").  Blue Spike ignored all of these proposals. When Blue Spike finally responded, it claimed it was distracted by another matter that it deemed more important:

> My apologies Steve, I was distracted the last few days by the billion
> dollar Virnetix case against Apple. They found infringement and the last
> few days are involved with willfulness, which seems like a sure thing
> from your fellow members of the bar here in Texas.

*Id.*, Ex. A at 1.

On this record, Blue Spike cannot credibly assert that VIZIO has delayed the meet and confer process.  The opposite is true.

## XI.   CONCLUSION TO VIZIO'S POSITION

As explained to Blue Spike on multiple occasions, VIZIO is not refusing to produce relevant source code.  It simply does not have the relevant source code that Blue Spike seeks.  Blue Spike's vague request for other source code unrelated to the accused functionality at issue in this case is improper.  Equally improper is Blue Spike's insistence on bringing this meritless motion in order to cast aspersions at VIZIO.  Blue Spike's Motion should be denied in its entirety, and VIZIO should be awarded its fees and costs incurred in connection with this Motion (including the fees and costs incurred by VIZIO in responding to Blue Spike's initial Joint Stipulation, which Blue Spike has now withdrawn).

1489671

1 | JOINT SUBMISSION BY BLUE SPIKE, LLC AND VIZIO, INC.

| PLAINTIFF BLUE SPIKE LLC | DEFENDANT VIZIO, INC. |
|---|---|
| /s/ Randall T. Garteiser<br>RANDALL T. GARTEISER<br>    California Bar No. 231821<br>    rgarteiser@ghiplaw.com<br>CHRISTOPHER A. HONEA<br>    California Bar No. 232473<br>    chonea@ghiplaw.com<br>IAN N. RAMAGE<br>    California Bar No. 224881<br>    iramage@ghiplaw.com<br><br>**GARTEISER HONEA LLP**<br><br>888.908.4400 (phone / fax)<br><br>Primary Address to be Served:<br>119 W Ferguson,<br>Tyler, TX 75702<br><br>Secondary Address:<br>795 Folsom St, Floor 1,<br>San Francisco, CA  94107-4226.<br><br>*Attorneys for Plaintiff Blue Spike, LLC* | /s/ Rex Hwang<br>ADRIAN PRUETZ<br>    State Bar No. 118215<br>    apruetz@glaserweil.com<br>REX HWANG<br>    State Bar No. 221079<br>    rhwang@glaserweil.com<br>STEVEN P. BASILEO<br>    State Bar No. 157780<br>    sbasileo@glaserweil.com<br>DESMOND JUI<br>    State Bar No. 262200<br>    djui@glaserweil.com<br>GUY M. RODGERS<br>    State Bar No. 303229<br>    grodgers@glaserweil.com<br><br>**GLASER WEIL FINK<br>HOWARD AVCHEN &<br>SHAPIRO LLP**<br><br>10250 Constellation Blvd, 19th Fl.<br>Los Angeles, California 90067<br>Telephone:  (310) 553-3000<br>Facsimile:   (310) 556-2920<br><br>*Attorneys for Defendant VIZIO, Inc.* |

JOINT STIPULATION

1489671