1  ADRIAN M. PRUETZ – State Bar No. 118215
   apruetz@glaserweil.com
2  REX HWANG – State Bar No. 221079
   rhwang@glaserweil.com
3  STEVEN P. BASILEO – State Bar No. 157780
   sbasileo@glaserweil.com
4  DESMOND JUI – State Bar No. 262200
   djui@glaserweil.com
5  GUY RODGERS – State Bar No. 303229
   grodgers@glaserweil.com
6  GLASER WEIL FINK HOWARD
     AVCHEN & SHAPIRO LLP
7  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
8  Telephone:  (310) 553-3000
   Facsimile:   (310) 556-2920
9
   Attorneys for Defendant VIZIO, Inc.
10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                    SOUTHERN DIVISION

14

| | |
|---|---|
| 15  Blue Spike, LLC, | CASE NO.: 8:17-cv-1172-DOC-KES |
| 16                Plaintiff, | Hon. David O. Carter |
| 17  v. | **DECLARATION OF STEVEN P. BASILEO IN SUPPORT OF VIZIO, INC.'S OPPOSITION TO BLUE SPIKE'S MOTION TO COMPEL** |
| 18  VIZIO, Inc., | |
| 19                Defendant. | DATE:          May 22, 2018 |
| 20  | TIME:          10:00 a.m. |
| | COURTROOM:   6D |
| 21  | **[PUBLIC REDACTED VERSION]** |

22

23

24

25

26

27

28

<u>**DECLARATION OF STEVEN P. BASILEO**</u>

I, Steven P. Basileo, declare and state as follows:

1.      I am an attorney at law duly licensed to practice before all courts of the State of California and am Of Counsel in the law firm of Glaser Weil Fink Howard Avchen & Shapiro LLP, attorneys of record herein for Defendant VIZIO, Inc. ("VIZIO"). I make this declaration in support of VIZIO's Opposition to Plaintiff Blue Spike's ("Blue Spike") Motion to Compel. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.      Attached hereto as Exhibit A is a true and correct copy of an email chain between counsel for VIZIO and counsel for Blue Spike, dated between April 2, 2018, and April 13, 2018.

3.      Attached hereto as Exhibit B is a true and correct copy of the draft Joint Stipulation that Blue Spike sent to VIZIO on April 27, 2018.

4.      Attached hereto as Exhibit C is a true and correct copy of an email chain between counsel for VIZIO and counsel for Blue Spike, dated May 1, 2018.

5.      Attached hereto as Exhibit D are true and correct excerpts of Blue Spike LLC's Supplemental Responses to VIZIO, Inc.'s First Set of Interrogatories, served on March 26, 2018.

6.      Attached hereto as Exhibit E is a true and correct copy of Blue Spike's First Amended Complaint for Patent Infringement, filed in this case as docket entry no. 30.

7.      Attached hereto as Exhibit F are true and correct excerpts of Defendant VIZIO, Inc.'s Responses and Objections to Plaintiff Blue Spike, LLC's First Requests for Production of Documents, served on March 26, 2018.

8.      Attached hereto as Exhibit G are true and correct excerpts of Blue Spike LLC's Objections and Response to VIZIO Inc.'s Second Set of Interrogatories.

9.      Attached hereto as Exhibit H is a true and correct copy of the Joint Rule

1  26(f) Report, filed in this case as docket entry no. 33.

2      10.    Attached hereto as Exhibit I is a true and correct copy of Blue Spike

3  LLC's First Request for Production of Documents to Defendant, VIZIO, Inc., served

4  on February 23, 2018.

5      11.    Attached hereto as Exhibit J is a true and correct copy of an Order

6  Granting Defendants' Motion for Improper Venue, *Nichia v. Vizio*, No. 16-cv-1453,

7  Dkt. 220 (E.D. Tex. Feb. 2, 2018) (Gilstrap, J.).

8      12.    Attached hereto as Exhibit K is a true and correct copy of red-lined

9  version of the Joint Stipulation, comparing the version originally exchanged with

10  Blue Spike on May 4, 2018, with the version received from Blue Spike on May 10,

11  2018, showing Blue Spike's edits.

12      13.    During the April 20, 2018, meet and confer teleconference, Blue Spike

13  counsel (citing his need to get up to speed on the case following the withdrawal of the

14  attorney who had been handling this matter for Blue Spike) proposed that the parties

15  schedule another meet and confer teleconference for the following week, and

16  requested that the parties agree to *defer any motion practice* while they continued

17  discussions in an attempt to resolve their disputes.

18      14.    During this teleconference, I also advised Blue Spike counsel that the

19  source code they seek is likely in the possession of third parties.

20

21      I declare under penalty of perjury pursuant to the laws of the State of California

22  that the foregoing facts are true and correct.

23      Executed on May 17, 2018, in Los Angeles, California.

24

25                              /s/ Steven Basileo
                                Steven P. Basileo
26

27

28

BASILEO DECLARATION ISO VIZIO'S OPPOSITION TO BLUE SPIKE'S MOTION TO COMPEL

1487254

# EXHIBIT A

| From: | Randall Garteiser |
|---|---|
| To: | Steve Basileo |
| Cc: | <bluespike@ghiplaw.com>; Adrian Pruetz; Guy Rodgers; Rex Hwang; Thomas Burke; Christie Woo |
| Subject: | Re: Blue Spike, LLC v. Vizio, Inc. (CASE #: 8:17-cv-01172-DOC-KES) |
| Date: | Friday, April 13, 2018 12:39:17 PM |

My apologies Steve, I was distracted the last few days by the billion dollar Virnetix case against Apple. They found infringement and the last few days are involved with willfulness, which seems like a sure thing from your fellow members of the bar here in Texas.

Do you have an opening Tuesday, 1-6 pm Central ? or Wednesday 1-6 pm Central time?
If not, please provide an alternative. The time you had for today was too early for us Central time.



**Randall Garteiser** / Partner

888.908.4400 x100 / rgarteiser@ghiplaw.com
119 W Ferguson, Tyler, TX 75702
795 Folsom St, Floor 1, San Francisco, CA  94107-4226
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.

  

On Apr 12, 2018, at 1:48 PM, Steve Basileo <sbasileo@glaserweil.com> wrote:

Randall:

I have not heard back from you regarding the time I proposed, and now that time slot no longer works for us. How about 10:30 tomorrow morning? And please confirm that you will be prepared to discuss all of the pending issues we have raised in our meet and confer letters.

Best regards,
Steve

**From:** Steve Basileo
**Sent:** Tuesday, April 10, 2018 4:07 PM
**To:** 'Randall Garteiser' <rgarteiser@ghiplaw.com>
**Cc:** <bluespike@ghiplaw.com> <bluespike@ghiplaw.com>; Adrian Pruetz <apruetz@glaserweil.com>; Guy Rodgers <grodgers@glaserweil.com>; Rex Hwang <rhwang@glaserweil.com>; Thomas Burke <tburke@glaserweil.com>; Christie Woo <christie@adrservices.com>
**Subject:** RE: Blue Spike, LLC v. Vizio, Inc. (CASE #: 8:17-cv-01172-DOC-KES)

How about 2 p.m. Los Angeles time on Thursday? Also, please confirm that you will be prepared to discuss all of the pending issues we have raised in our meet and confer letters.

Best regards,
Steve

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Tuesday, April 10, 2018 12:09 PM
**To:** Steve Basileo <sbasileo@glaserweil.com>
**Cc:** <bluespike@ghiplaw.com> <bluespike@ghiplaw.com>; Adrian Pruetz <apruetz@glaserweil.com>; Guy Rodgers <grodgers@glaserweil.com>; Rex Hwang <rhwang@glaserweil.com>; Thomas Burke <tburke@glaserweil.com>; Christie Woo <christie@adrservices.com>
**Subject:** Re: Blue Spike, LLC v. Vizio, Inc. (CASE #: 8:17-cv-01172-DOC-KES)

Let's plan to talk on Thursday as the concern is that Vizio has not made any of its code available and I don't understand the legal basis for doing so.  Then, if we need another call next week, we can follow up.

I feel like we need to communicate more as Vizio has issues it has raised of Blue Spike so we would like to address those as well in the hopes of avoiding motion practice where the Court is unhappy at everyone due to our inability to work out our concerns first without his intervention.

What time on Thursday works best for your team?  We will confirm with a call-in number.

Thanks,



<div style="border:1px solid red">

**Randall Garteiser** / Partner

888.908.4400 x100 / rgarteiser@ghiplaw.com
119 W Ferguson, Tyler, TX 75702
795 Folsom St, Floor 1, San Francisco, CA  94107-4226
http://www.ghiplaw.com

</div>

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On Apr 10, 2018, at 1:47 PM, Steve Basileo <sbasileo@glaserweil.com> wrote:

Randall:

The dates and times you propose do not work for us.  We are available to meet and confer Thursday or Friday of this week.

However, it may make sense to push the meet and confer to next week.  VIZIO's technical staff is unavailable this week (at a trade show), and we expect to have more specific information

next week about what source code VIZIO has.  Additionally, we reiterate that, based on our current understanding, the source code you are really seeking is in the possession of third parties, but we can discuss that on our phone call as well.

Best regards,
Steve

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Monday, April 9, 2018 10:35 AM
**To:** Steve Basileo <sbasileo@glaserweil.com>
**Cc:** <bluespike@ghiplaw.com> <bluespike@ghiplaw.com>; Adrian Pruetz <apruetz@glaserweil.com>; Guy Rodgers <grodgers@glaserweil.com>; Rex Hwang <rhwang@glaserweil.com>; Thomas Burke <tburke@glaserweil.com>; Christie Woo <christie@adrservices.com>
**Subject:** Re: Blue Spike, LLC v. Vizio, Inc. (CASE #: 8:17-cv-01172-DOC-KES)

Dear Counsel for Vizio:

Blue Spike again renews its request to meet and confer about discovery issues, including production of source code for the accused products.  As indicated last week, we've mention Monday, Tuesday, or Wednesday, Blue Spike is available to meet and confer from 1 to 4 pm Central.  If those time frames don't work, then kindly provide two alternative times and we will confirm by providing a call-in number.

Also, we need to provide Ms. Woo a date for the ADR dispute, or stipulate not to proceed with it.  Blue Spike has offered potential dates but have not heard back from Vizio.   Please be prepared to discuss that topic as well.



Randall Garteiser / Partner
888.908.4400 x100 / rgarteiser@ghiplaw.com
119 W Ferguson, Tyler, TX 75702
795 Folsom St, Floor 1, San Francisco, CA  94107-4226
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On Apr 6, 2018, at 10:18 PM, Randall Garteiser <rgarteiser@ghiplaw.com> wrote:

I asked you if Friday afternoon worked to meet and confer.  But instead of answering yes or no, and providing an alternative time.  You list a lot of

misstatements and still refuse to meet and confer.

So the pattern of delay is laid out by VIzio, notwithstanding your attempts to obfuscate the record.

So Monday, Tuesday, or Wednesday, Blue Spike is available to meet and confer from 1 to 4 pm Central.  If those time frames don't work, then kindly provide two alternative times and we will confirm by providing a call-in number.
We can discuss all the issues raised by both parties to date.

We will file the protective order jointly as have not had any feedback to the contrary and it seems to be another delay tactic of Vizio like waiting months to inform us that it does not believe it has to produce its source code.  Good luck with that defense.  If Vizio wants to challenge the submission of its proposed protective order, please proceed.



**Randall Garteiser** / Partner
888.908.4400 x100 / rgarteiser@ghiplaw.com
119 W Ferguson, Tyler, TX 75702
795 Folsom St, Floor 1, San Francisco, CA  94107-4226
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On Apr 6, 2018, at 1:35 AM, Steve Basileo <sbasileo@glaserweil.com> wrote:

Randall:

It is absurd for you to suggest that VIZIO has acted improperly, given Blue Spike's track record in this matter.

Notwithstanding your repeated assertion that "time is of the essence," it is Blue Spike that has consistently dragged its feet. For example:

- Blue Spike has failed to serve its Initial Disclosures, which were due **three months ago**. We have brought this deficiency to your attention,

but you still have not served these disclosures.

- Blue Spike has failed to serve any responses to VIZIO's requests for production of documents, which were due over **two months ago**.

- **Five weeks ago** we sent you our proposed protective order. You ignored it for **a full month**. We then re-sent it to you and you waited a week to respond.  We also asked to see the PDF version of the protective order before it is filed, which you still have not sent to us.

- **Five weeks ago** we advised you that over 10,000 pages of your document production could not be reviewed, opened, or processed. You have not responded to this letter, let alone corrected this glaring problem with your document production.

- Blue Spike served its responses to VIZIO's Interrogatory No. 1 more than **two weeks after the response deadline**. And Blue Spike's belated response was devoid of content.

- On March 8, 2018 we requested a meet and confer regarding VIZIO's response to this interrogatory, and **you refused to provide us with a meet and confer date** within the 10-day time period required under the local rules.

- On March 1, 2018 you promised to amend your responses to VIZIO's Interrogatory No. 1 by providing us with infringement contentions, but you waited **four weeks** before actually providing these contentions. And the infringement contentions that you belatedly provided are incomplete and in many instances unintelligible.

- Blue Spike has ignored VIZIO's March 31, 2018 meet and confer request relating to Blue Spike's responses to VIZIO's Second Set of Interrogatories.

Further, the record is clear that VIZIO has not engaged in any "delay tactics."  In the Central District of California you cannot compel the production of source code or any other documents through informal demands. VIZIO responded (in a timely manner) to your first set of formal document demands on March 26, 2018, and explained the multiple reasons why we could not comply with your source-code related requests, including the fact that the source code you are looking for is likely in the possession of third parties. **You did nothing for 8 days**, then sent us a purported meet and confer email that clearly does not comply with the Local Rule 37-1. We promptly brought this deficiency to your attention, but in response you have simply re-iterated your improper meet and confer demand.

We again request that you comply with Local Rule 37-1, under which we are entitled to a statement of each issue or request in dispute, your position with respect to each issue or request, and any legal authority that you believe is dispositive as to each issue or request. Once you have provided us with a proper meet and confer letter, we will gladly work out a mutually agreeable date and time to meet and confer with regard to our discovery responses within the 10-day time period provided under the Local Rules.

And we re-iterate our request that you provide us with a date

and time when you will be available to meet and confer regarding the numerous deficiencies in Blue Spike's discovery responses that we have outlined in previous correspondence, and reference above.


Best regards,

Steve


---

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Thursday, April 5, 2018 10:53 AM
**To:** Steve Basileo <sbasileo@glaserweil.com>
**Cc:** <bluespike@ghiplaw.com> <bluespike@ghiplaw.com>; Adrian Pruetz <apruetz@glaserweil.com>; Guy Rodgers <grodgers@glaserweil.com>; Rex Hwang <rhwang@glaserweil.com>; Thomas Burke <tburke@glaserweil.com>; Christie Woo <christie@adrservices.com>
**Subject:** Re: Blue Spike, LLC v. Vizio, Inc. (CASE #: 8:17-cv-01172-DOC-KES)

Steve,

We will move to compel on an inspection, as your client has wasted months before finally telling us your client has "no obligation" to make its source code available.  We obviously disagree and will proceed accordingly.

Does your client refuse to provide us a meet and confer time and date as to our motion to compel review of the source code as responsive to numerous document requests?

Does this afternoon or Friday work?  We are not inclined to continue this matter until next week, given Vizio's delay tactics to date.




**Randall Garteiser** / Partner
888.908.4400 x100 • rgarteiser@ghiplaw.com
119 W Ferguson, Tyler, TX 75702
795 Folsom St, Floor 1, San Francisco, CA  94107-4226
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On Apr 4, 2018, at 8:11 PM, Steve Basileo <sbasileo@glaserweil.com> wrote:

Randall:

We will check with our client regarding the ADR conference dates you propose.

As for your purported meet and confer request, VIZIO has no obligation to make its source code available for inspection in response to your informal requests for such an inspection. And to the extent you (for the first time) seek a meet and confer regarding VIZIO's March 26, 2018 RFP and Interrogatory responses, your email does not provide the information or specificity required by Local Rule 37-1 to initiate the meet and confer process.

And as explained in VIZIO's discovery responses, it is unclear which source code Blue Spike wishes to inspect.  You have only recently provided VIZIO with your infringement contentions, and to the extent they are intelligible these contentions suggest that the relevant source code (if any) is in the possession of third parties.

Also, you have taken the position that we cannot show your infringement contentions to our client.  However, your infringement contentions are based on publicly available information, so this restriction is improper. In addition, we need to be able to show your contentions to our client in order to collect relevant documents.

Moreover, though you state that time is of the essence, you delayed agreeing to our proposed protective order for weeks.  Obviously, VIZIO cannot provide confidential documents or information before entry of a suitable protective order.  Earlier today you agreed to the protective order that we proposed. Please send us a pdf version of the final document you intend to file, so we can give final approval.

Best regards,
Steve

**From:** Randall Garteiser [mailto:rgarteiser@ghiplaw.com]
**Sent:** Tuesday, April 3, 2018 8:57 AM
**To:** Adrian Pruetz <apruetz@glaserweil.com>; Guy Rodgers <grodgers@glaserweil.com>; Rex Hwang <rhwang@glaserweil.com>; Steve Basileo <sbasileo@glaserweil.com>; Thomas Burke <tburke@glaserweil.com>; Christie Woo <christie@adrservices.com>
**Cc:** <bluespike@ghiplaw.com> <bluespike@ghiplaw.com>
**Subject:** Re: Blue Spike, LLC v. Vizio, Inc. (CASE #: 8:17-cv-01172-DOC-KES)

Dear Counsel for VIzio:

We propose April 26, June 15, or June 30 for the ADR conference.  Please let us know if one of these dates or another date works for you.

Also, we have asked to meet and confer about Vizio's source code review and lack of production.  We also have complaints about Vizio's ROGs.  We've mentioned we wanted to meet and confer about 3 times on the source code and you've ignored our requests.

So in another effort to meet and confer, please let us know a date this week that works for Vizio.  We prefer 2-6 pm Central Wednesday through Friday, but we can make accommodations for your team, just provide an alternative time.

Time is of the essence.  The call pertains to a future date for source code inspection, Vizio's lack of production.

 <~WRD000.jpg>

**Randall Garteiser** / Partner
888.908.4400 x100 / rgarteiser@ghiplaw.com
119 W Ferguson, Tyler, TX 75702
795 Folsom St, Floor 1, San Francisco, CA  94107-4226
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.

<~WRD000.jpg> <~WRD000.jpg> <~WRD000.jpg>

On Apr 2, 2018, at 12:17 PM, Alex Kim <alex@adrservices.com> wrote:

Dear Counsel:

Your case has been assigned to and accepted by Gail M. Title, Esq. through the United States District Court ADR Office through which Ms. Title serves as a volunteer. Please note that we will reserve three (3) hours for the mediation session. Should the parties wish to continue the mediation beyond the initial session, Ms. Title will serve at her standard rate of $650 per hour.

The mediation completion date for the above referenced matter is forty-five days prior to the final pretrial conference.

**You must confer with opposing counsel and provide us with 3 dates** that are **mutually convenient** for the parties and counsel. Upon our receipt of these dates, our office will select one and confirm the hearing date in writing. *Please do not provide us with your own individual dates.*

Also, please let us know whether the three (3) hours of hearing time provided through the program is sufficient for your matter or if the parties wish to reserve the full day on the mediator's calendar.

If the matter has been settled or the mediation cut-off date extended, please let us know.

If you have any questions, please do not hesitate to call or e-mail.

Best Regards,
Alex Kim

<image001.png> **Alex Kim, Case Manager**
*ADR Services, Inc.* - *Your Partner in Resolution*

alex@adrservices.com

**Alex Kim |  Case Manager  | ADR SERVICES, INC.**

**Tel:** 310.201.0010 | **Fax:** 310.201.0016 | 1900 Avenue of the Stars, Suite 200 | Los Angeles, California | 90067 | www.adrservices.com

**SEVEN OFFICES STATEWIDE: Century City | Downtown Los Angeles | Orange County | San Diego | San Francisco | Silicon Valley | Oakland**

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.
*Please consider the environment before printing this e-mail*

# EXHIBIT B

RANDALL T. GARTEISER – SBN 231821
rgarteiser@ghiplaw.com
CHRISTOPHER A. HONEA – SBN 232473
chonea@ghiplaw.com
IAN N. RAMAGE – SBN224881
iramage@ghiplaw.com
GARTEISER HONEA, P.C.
119 W. Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

*Attorneys for Plaintiff Blue Spike, LLC*

ADRIAN M. PRUETZ – State Bar No. 118215
apruetz@glaserweil.com
REX HWANG – State Bar No. 221079
rhwang@glaserweil.com
STEVEN P. BASILEO – State Bar No. 157780
sbasileo@glaserweil.com
GUY M. RODGERS – State Bar No. 303229
grodgers@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

*Attorneys for Defendant VIZIO, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| Blue Spike, LLC, | CASE NO.: 8:17-cv-1172-DOC-KES |
| Plaintiff, | Hon. David O. Carter |
| v. | **JOINT STIPULATION PURSUANT TO L.R. 37-2 REGARDING DEFENDANT'S REFUSAL TO PRODUCE DOCUMENTS FOR INSPECTION** |
| VIZIO, Inc., | |
| Defendant. | |
| | Hearing Date: May 22, 2018 Time: 10:00 A.M. Location: Santa Ana, 6D |
| | **Disc. Cut-Off:** Nov. 1, 2018 **Final Pre-Trial:** Apr. 15, 2019 **Trial:** Apr. 30, 2019 |

1

1

2
## **JOINT DISCOVERY SUBMISSION**

3    Pursuant to Rule 37(a) of the Federal Rules, and Local Rule 37.2, Plaintiff Blue

4 Spike LLC ("Blue Spike"), and Defendant VIZIO Inc. ("VIZIO"), submit this Joint

5 Submission regarding Blue Spike's Motion to Compel production of Defendant's

6 source code for inspection. *See* F. R. Civ. P. 37(a); C.D. Cal., L.R. 37-2. In accordance

7 with Local Rule 37-1, the parties have met and conferred on April 20, 2018.[1] While

8 Blue Spike has made good faith attempts to produce the information requested by

9 VIZIO, the Defendant has made no such attempts to provide Blue Spike with the one

10 piece of information that would drastically simplify, and narrow, this case (both in

11 terms of complications that will arise from the patent infringement counts themselves,

12 and for the Court in terms of time and resources invested), VIZIO's source code for

13 the accused products.

14    Blue Spike requests VIZIO to produce documents, including source code,

15 responsive to Blue Spike's Requests for Production 16. *See* Request, Ex. 6.

16
## **PLAINTIFF' BLUE SPIKE'S POSITION**

17
## I.    NATURE OF THE DISPUTE

18    Blue Spike has requested that VIZIO timely produce its available source code

19 since the very early stages of this case. *See* Randall Garteiser Declaration, ¶¶ 1, 3-5,

20 7; Joint Rule 26(f) Report, Dkt. 33, Ex. 8, at 4. Blue Spike has been very clear that this

21 source code inspection would benefit this case immensely in terms of reducing the

22 time and effort the Court will need to put into this action. It will also simplify the

23 patent infringement claims themselves—including any ambiguities that VIZIO sees

24 in the patent infringement counts brought against it. *See* Rule 26(f) Report, Dkt. 33,

25 Ex. 8, at 4; *see also*, Fed. R. Civ. P. 1.

26

27
_____

28 [1] VIZIO had attorneys Steve Basileo and Thomas Burke participate on the meet and confer with attorneys Chris Honea and Randall Garteiser for Blue Spike.

Instead of simply providing the limited, narrowly tailored, discovery requested—*i.e.*, source code for the Accused Products—VIZIO has entrenched this case in over a year's worth of pleading motion practice. *See* Initial Disclosures, Ex. 7 (clearly limiting Accused Products to a certain subset of VIZIO smart televisions, and tablets that employ Andriod 4.0 operating system, and not indicative of the vast production for an ambiguously large group of products—as the Defendant continues to assert). Blue Spike has revised and updated its Complaint throughout this process in good faith that eventually its claims would have a fair and full opportunity to be heard.  Blue Spike used the most accurate and publicly available information that it has been able to obtain. To date, it has done this without VIZIO's cooperation in delivering the nonpublic information within its control.

The Complaint accurately underscores the accused products in this case, within the control of VIZIO, accused of infringement. It also accurately indicates where the source code for these VIZIO products can be located. Yet Defendant refuses to even attempt production of any source code information within the reasonable scope of what has been asked for by Blue Spike. While Blue Spike has made all reasonable efforts to provide VIZIO with good faith responses, and information, in the discovery process, VIZIO refuses to cooperate with Blue Spike's most fundamental request entirely.

Admittedly, Blue Spike will need the source code utilized in the VIZIO controlled products at issue in this case to develop its complaint beyond the information that is now publicly available to it.[2] *See* Fed. R. Civ. P 26(b)(1) (the

---

[2] VIZIO appears to be using Blue Spike's infringement contentions as a pretext not to cooperate with Plaintiff's discovery request. These claims are, as is customary prior to production of nonpublic information, demonstrated through publicly available information in claim charts developed by experts. Here, VIZIO is requiring a more particularized form of pleading than is required by the law in order for it to make a good faith effort at producing the needed source code that is at issue in this case. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007); *Cellular Commc'ns Equip. LLC HTC Corp.*, 2016 WL 4204136, at *2 (E.D. Tex. Aug. 9, 2016); *Stragent, LLC v. BMW of N. Am., LLC*, 6:16-cv-446, 2017 WL 2821697, at *2 (E.D.

3

1  information requested is nonprivileged, is highly relevant to Blue Spike's claim or

2  VIZIO's noninfringement defenses, and sits squarely within scope of discovery). This

3  would be true of all such plaintiffs in the same position as Blue Spike. Moreover, the

4  need for VIZIO to produce the requested source code is even more pronounced in a

5  case that has been seen in two separate Districts, and has been needlessly stalled by

6  multiple pleading motions for more than a year. In terms of expediting this claim so

7  that a full-trial on the merits can finally convene, time is of the essence now more than

8  ever.

9      Blue Spike's request of a discovery referee, with a loser pay provision in place,

10  to oversee the discovery process is indicative of Plaintiff's desire to work with VIZIO

11  in good faith, and to bring this case to a just and speedy resolution. *See* Rule 26(f),

12  Dkt. 33, Ex. 8, at 4-5, n. 1. Moreover, prior to the parties' meet and confer held on

13  April 20, 2018, a Protection Order that should have resolved VIZIO's purported issue

14  with disclosure of confidential information (*see* VIZIO Obj., Ex. 5, at 5) was in place.

15  *See* Protective Order, Dkt. 44. Yet VIZIO again refused to cooperate with Blue Spike's

16  request when the parties met on April 20, 2018, without any further explanation or

17  constructive resolutions to producing the essential discovery information. *See* Randall

18  Garteiser Declaration, at ¶ 2.

19      Blue Spike has taken steps to ensure that its discovery collaboration with

20  VIZIO is both fair and efficient. However, in order for this to occur VIZIO must at

21  least make a reasonable attempt to produce source code for the Accused Products.

22  This is central to the claims in Blue Spike's Complaint, and VIZIO's refusal will only

23  continue to inhibit any meaningful ability for this action to move forward. *See* Fed. R.

24  Civ. P. 26(b)(1). Blue Spike's ability to develop its claim to the particularized level that

25  VIZIO now insists Blue Spike must, as well as VIZIO's non-infringement contentions

26

27  _____

28  Tex. Mar. 3, 2017).

themselves[3] require that VIZIO cooperate in good faith with Plaintiff to produce the source code that is at issue in this action.

VIZIO acts in opposition to any and all such attempts.

## II.  INTRODUCTION

Blue Spike brought this patent infringement lawsuit against VIZIO more than one year ago in the United States District Court for the Eastern District of Texas. *See* Dkt. 1, Case 6:17-cv-00060 (filed Jan. 30, 2017). During that period, Blue Spike cooperated with VIZIO in good faith to resolve the initial default judgment entered against the Defendant for failure to respond. Plaintiff was also patient with VIZIO's concerns in the wake of *TC Heartland* and ultimately worked with VIZIO to bring the action here in the Central District of California—a venue that VIZIO preferred. *See* Blue Spike's Opp., Dkt. 21, at 6 (Plaintiff's Claim has now been in this District for nearly 10 months).

Once VIZIO had gained this concession from Blue Spike and was in its preferred venue, Defendant continued its efforts to forestall this case by filing yet another motion to dismiss. *See* Dkt. 17. This litigation tactic was ruled to be against the spirit of good faith and cooperation that is required by this Court. *See* Order, Dkt. 29; Fed. Cir., Order, Case 18-116. It is a trend that has continued as VIZIO seems committed to its strategy of working against a meaningful trial on the merits. For example, while Blue Spike proposed a date of February 1, 2018, for the production of source code in possession of VIZIO, the Defendant's counter was "[n]o date needed." *See* Rule 26(f) Report, Dkt. 33, Ex. 8, at 11. Such a response is less than constructive and adds no productive value to the resolution of this case. *Id.*

---

[3] The Court cannot rely on simply VIZIO's self-interested proclamation that it has not infringed, and Blue Spike must have this information to fairly defend against such contentions. *See Wi-Lan Inc. v. VIZIO, Inc.*, 1:15-cv-00788, Dkt. 204 (D. Del. Apr. 13, 2018).

The source code production issue has consistently come up since Blue Spike and VIZIO have started the discovery phase of this case. The parties have exchanged interrogatories and requests starting in early February. *See* Request, Ex. 6; *see generally*, Randall Garteiser Declaration. Throughout this process, Blue Spike has attempted to gain cooperation with VIZIO in the production of the essential source code. Blue Spike has also supplied VIZIO with the production of voluminous amounts of information requested by Defendant. Although not everything is to VIZIO's liking in Blue Spike's production, that is to be expected in an adversarial process. And Blue Spike continues to address these concerns along the way. However, VIZIO refuses production of any of its source code essential to this case. The unconstructive proposal "[n]o date needed" for the production of this information reflects Defendant's general attitude on the issue of good faith efforts to constructively resolve this case. *See* Rule 26(f) Report, Dkt. 33, Ex. 8, at 11.

While Blue Spike has requested source code within VIZIO's control through the discovery process, it has also reminded VIZIO of this important issue through other correspondence with Defendant. *See, e.g.*, Ex's. 1 (email dated Feb. 23, 2018); 2 (email dated Mar. 26, 2018); 3 (email dated Apr. 19, 2018). Not only has this correspondence clarified the need for the source code at issue in this complaint, but it reflects that Blue Spike has also attempted to alleviate VIZIO's alleged issues with Blue Spike's request. *See* Ex. 1. And admittedly, it does indicate a sense of frustration by Blue Spike with VIZIO's continued lack of cooperation. *See* Ex. 3.

In February, Counsel for Blue Spike elaborated on the source code needed, and noted ways that the pressure of document production could be alleviated if the scope of this case could be limited through an initial "start with the source code review." *See* Ex. 1. Moreover, Blue Spike reiterated that VIZIO's continued position "that it is not going to make its entire source code for the accused products" or "even make the source code related to the streaming functionality available" was untenable and had held up progress in the case for months. *Id*. Corresponding documentation and

requests were attached to this email to provide VIZIO with further guidance on its alleged issues with Blue Spike's request. *Id.*

More to this point, in March, correspondence between the parties underscores VIZIO's strategy of again ignoring Plaintiff's repeated requests for initial source code review entirely while, at the same time, requiring that Blue Spike go above and beyond in clarifying responses that it has already given in good faith. *See* Ex. 2. Indeed, VIZIO's lack of cooperation, or constructive responses as to how a meet and confer would address Plaintiff's issues, was a serious hindrance to scheduling a meet and confer. *Id.* Yet even as Plaintiff worked with VIZIO, and made concessions to supplement its responses (this in spite of zero concessions on behalf of VIZIO, *see* Ex. 2, VIZIO Counsel's Mar. 22 reply to Blue Spike Counsel Mar. 8 correspondence), VIZIO falls into a pattern of causing the obstacles to a resolution of this case. It does this while, at the same time, holding the obvious difficulties with formal compliance due to this non-cooperative strategy against the intended target of this tactic. *Id.* This even in the aftermath of two decisions in the present case that found VIZIO's use of such a strategy impermissible (*see* Order, Dkt. 29; Fed. Cir. Order, Case 18-116), and in spite of the "multiple documented times Blue Spike has attempted to meet and confer" (*see e.g.* Ex. 3).

In April, Blue Spike had to, once more, reassert its request for source code inspection, which it reiterated had been instrumental in holding up the process for an attempted "meet and confer with Vizio for about 3 weeks." *See* Ex. 3. Blue Spike also repeated the importance of time in this case, as the "short discovery window" (ending on the 1st of Nov. 2018) made VIZIO's continued refusal to meet and confer, and its continuous strategy in failing to "provide a reason for its denial of financial information related to the accused products and its source code" a dangerous tactic. This tactic has left Blue Spike in the position of being prejudiced in the assertion of its property rights absent the assistance of this Court in the resolution of this issue.

In sum, while Blue Spike has given a good faith attempt to provide information

1   to, and collect essential information from VIZIO; VIZIO has not reciprocated.

2

3   **III.   THE   REQUESTED   SOURCE   CODE   IS   ESSENTIAL   TO**
4   **DEFENDANT'S CONTENTIONS AND FOR THE DEVELOPMENT OF**
    **PLAINTIFF'S CASE.**

5       Blue Spike will need to inspect the source code that is at issue in this case in
6   order to respond to the non-infringement and invalidity claims that VIZIO has
7   asserted it will raise in this case. *See* Rule 26(f) Report, Dkt. 33, Ex. 8, at 7 (§ D. 2.).
8   Moreover, Blue Spike will also need to see such nonpublic information in order to
9   fairly develop its claims past the plausible (yet publicly available) level that Plaintiff
10  has already demonstrated in this claim. *Id.* at 4.

11      These are concerns VIZIO shares, at least as to its self-interested position that
12  instead of cooperating with Plaintiff it will, yet again, move to dismiss Blue Spike's
13  Complaint. *See, e.g., Id.* at 7; *see also* VIZIO Letter, Apr. 17, 2018, Ex. 4. The
14  Defendant's letter, for example, outlines VIZIO's issues with Blue Spike's use of
15  publicly available information to plead a plausible Complaint. *See* Ex. 4. Yet the
16  particularized – and generally unrequired prior to discovery production and trial –
17  standard that VIZIO  insists upon before it will cooperate with Blue Spike is the very
18  reason that the Defendant must produce the requested nonpublic information. *Id.*
19  Without it, it is understood that Plaintiff would be prejudiced in the development of
20  its Complaint to such a particularized level in the first place. *See Wi-Lan Inc. v. VIZIO,*
21  *Inc.,* 1:15-cv-00788, Dkt. 204 (D. Del. Apr. 13, 2018).

22      This is understandable due to the current absence of the nonpublic information
23  held by VIZIO, which Blue Spike continues to request. VIZIO will need to produce
24  this information to resolve the Catch-22 that it currently has created for the Plaintiff.
25  On the one hand, it requests a deeper level of information than that required by Rule
26  8. On the other, it refuses to provide Blue Spike with the information needed for
27  Plaintiff to comply. VIZIO also asserts that it will move to dismiss, yet again, without
28  providing Blue Spike the information essential to defending against such non-

1   infringement contentions. *See* Rule 26(f) Report, Dkt. 33, Ex. 8, at 7 (§ D. 2.).

2       Already in this case, two separate courts, consisting of not less than four

3   separate judges, have found in favor of Blue Spike when VIZIO's litigation tactics

4   (which involved an abuse of the parties' good faith efforts through the dismissal

5   process) have been reviewed. Both this Court and the Federal Circuit found that, in

6   working to forestall Blue Spike's patent infringement claims after Plaintiff moved the

7   action to VIZIO's preferred District, Defendant did not act in good faith or with clean

8   hands. *See* Order, Dkt. 29; Fed. Cir., Order, Case 18-116.

9       This is not the first, or last, time a Federal Court has found misconduct in

10  VIZIO's litigation strategy. In fact, just this month the District Court of Delaware

11  found VIZIO's litigation tactics in discovery "would be unfairly prejudicial to Plaintiff

12  and disrupt the Court's management of the case." *See Wi-Lan Inc. v. VIZIO, Inc.*, 1:15-

13  cv-00788, Dkt. 204 (D. Del. Apr. 13, 2018). Chief Judge Leonard P. Stark found that

14  "Plaintiff has the right to obtain the factual basis for each of Vizio's affirmative

15  defenses beyond the bare assertions in them in Vizio's responsive pleading." *Id*. The

16  Judge also found the interrogatories "necessary to advance the orderly pretrial

17  development of the case." *Id*.

18      In Judge Stark's Order, as here, production by VIZIO of the requested source

19  code is necessary to advance the pretrial development of this case. Moreover, VIZIO

20  intends to use absence of this non-public information in Blue Spike's Complaint as the

21  basis for affirmative, and other defenses. Without allowing Blue Spike or this Court

22  to inspect the source code by producing it, these defenses will be nothing more than

23  bare assertions.

24      Thus, for one, if VIZIO does "believe[ ] that its defenses of non-infringement

25  and/or invalidity are likely to be determined by a motion for summary judgment,"

26  then Blue Spike and this Court will need the source code in order to understand,

27  beyond assertions, that there is a factual basis for Defendant's defenses. *See* Rule 26(f)

28  Report, Dkt. 33, Ex. 8,  at 7 (§ D. 2.) (alteration added). For two, if VIZIO actually

does want Blue Spike to prepare for, and potentially streamline, this case by clarifying its infringement contentions deeper than the plausibility standard required by Rule 8, then Blue Spike will need to see the source code: because it is a central item of information needed to do that in this case. Lastly, dismissing infringement counts (as the source code sometimes calls for in cases such as these) would, again, need cooperation by VIZIO with Blue Spike's request, as the source code may "indicate a flaw with the publicly available information supporting Blue Spike's allegation of Vizio's patent infringement." *See* Rule 26(f) Report, Dkt. 33, Ex. 8, at 4.

In short, it seems that VIZIO has tied Blue Spike's hands. Essentially, VIZIO requires an unreasonable level of specificity in order to make a good faith attempt to provide Blue Spike with the very information required to comply with such a request. VIZIO then, again, ties Blue Spike's hands by asserting that it will file defenses against Plaintiff. With nothing more than Defendant's contention, absent the source code to support this defense, Defendant's defense that noninfringement applies to the present case leaves Plaintiff prejudiced. VIZIO then asserts that Blue Spike, and not the Catch-22 it has created, is the underlying reason for delay.  This is illogical.

With the discovery deadline fast approaching, Blue Spike is left with no choice but to file the current motion after meeting and conferring with counsel on April 20, 2018, for about an hour. VIZIO took the repeated position that it didn't understand Blue Spike's infringement contentions—contentions which have been in Defendant's possession for over two months. As has been an issue since the beginning of this process, VIZIO also made no good faith attempts to provide any of the requested source code. Though Blue Spike has made it clear from the very beginning of discovery requests that an initial good faith effort as to some of the source code would have been sufficient to help move the process forward. *See* Ex. 1. VIZIO's alleged lack of understanding coincides precisely with Blue Spike's renewed request for a date to

1  inspect VIZIO's accused product source code.[4]

2  **IV.    CONCLUSION TO PLAINTIFF'S BLUE SPIKE'S POSITION**

3       Production of the source code requested by Blue Spike, and withheld by VIZIO,

4  is essential to Blue Spike's development of this case. Fed. R. Civ. P. 26(b)(1). Defendant

5  is protected from prejudice by a protection order outlining the care of confidential

6  information, Blue Spike's efforts to set-up a discovery process with a neutral referee

7  and loser pay provision, and Blue Spike's transparent efforts to work with Defendant

8  in the production of discovery at issue in this proceeding. Pursuant to Federal Rule

9  37(a), and Local Rule 37, Plaintiff requests for the Court to issue an Oder to Compel

10  Defendant to produce the source code at issue in this Complaint as Blue Spike

11  requested in its Requests for Production 16.

12

13                    **DEFENDANT' VIZIO'S POSITION**

14  **[TBD].**

15

16

17

18  JOINT SUBMISSION BY BLUE SPIKE, LLC AND VIZIO, INC.

19

| PLAINTIFF BLUE SPIKE LLC | DEFENDANT VIZIO, INC. |
|---|---|
| */s/ Randall T. Garteiser*<br>Randall T. Garteiser<br>  California Bar No. 231821<br>  rgarteiser@ghiplaw.com<br>Christopher A. Honea | */s/ Rex Hwang*<br>Adrian Pruetz<br>  State Bar No. 118215<br>  apruetz@glaserweil.com<br>REX HWANG |

---

[4] VIZIO also attempted through attorney argument to say that third parties had the source code not VIZIO. But VIZIO would not stipulate to not using any source code to show non-infringement. As such, even if third parties possess some source code, the Smart TVs produced by VIZIO are the accused products for this case and that source code is necessary to show how this hardware works with the operating system of VIZIO to run particular steaming applications, among others, from third parties.

1

California Bar No. 232473
chonea@ghiplaw.com
Ian N. Ramage
  California Bar No. 224881
iramage@ghiplaw.com

**GARTEISER HONEA LLP**

888.908.4400 (phone / fax)

Primary Address to be Served:
119 W Ferguson,
Tyler, TX 75702

Secondary Address:
795 Folsom St, Floor 1,
San Francisco, CA  94107-4226.

*Attorneys for Plaintiff Blue Spike, LLC*

State Bar No. 221079
rhwang@glaserweil.com
STEVEN P. BASILEO
  State Bar No. 157780
sbasileo@glaserweil.com
GUY M. RODGERS
  State Bar No. 303229
grodgers@glaserweil.com

**GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO LLP**

10250 Constellation Blvd, 19th Fl.
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

*Attorneys for Defendant VIZIO, Inc.*

# EXHIBIT C

| From: | Randall Garteiser |
|---|---|
| To: | Steve Basileo |
| Cc: | Christopher Honea (chonea@ghiplaw.com); bluespike@ghiplaw.com; Adrian Pruetz; Rex Hwang; Thomas Burke; Dan Liu; Guy Rodgers; Desmond Jui |
| Subject: | Re: Blue Spike LLC v. VIZIO Inc., Case No. 8:17-cv-1172-DOC-KES |
| Date: | Tuesday, May 1, 2018 6:22:40 PM |

Steve,

We thought the intro complies as is.  But you are welcome to separate it into sections.

Be well,



**Randall Garteiser** / Partner

888.908.4400 x100 / rgarteiser@ghiplaw.com
119 W Ferguson, Tyler, TX 75702
795 Folsom St, Floor 1, San Francisco, CA  94107-4226
http://www.ghiplaw.com

This e-mail message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections, and is intended solely for use by the intended recipient. Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately. We also advise that any federal tax advice provided in this communication is not intended or written to be used, and cannot be used by the recipient or any other taxpayer for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or in promoting, marketing or recommending to another party any transaction or matter addressed herein.



On May 1, 2018, at 7:42 PM, Steve Basileo <sbasileo@glaserweil.com> wrote:

Randall:

I am in receipt of Blue Spike's purported motion to compel production of VIZIO's source code.  Your purported motion is in breach of your obligations under the Local Rules.

In our teleconference on April 20, we agreed that the parties would forgo motion practice while they continued to try to resolve their discovery disputes.  **You** requested this moratorium based on your assertion that you needed time to get up to speed on this matter following the departure of Mr. Anderson, the attorney who had been handling this matter on behalf of your firm. VIZIO reluctantly agreed to this proposal based on your promise that you would serve Amended Infringement Contentions, Initial Disclosures, and written responses to VIZIO's First Set of RFPs on April 27.  And

(at your request) we agreed to conduct another meet and confer teleconference on April 26 at 2 p.m. to address any questions you might have that would impact your amended infringement contentions.

You never joined the April 26 follow-up teleconference that you requested.  You never provided the Amended Infringement Contentions, Initial Disclosures, and written RFP responses you promised to provide. And your purported motion to compel is in direct violation of your agreement to forego motion practice while we are still discussing our discovery disputes.  I ask that you honor your agreement by a) serving your Amended Infringement Contentions, Initial Disclosures, and written responses, as promised, and b) withdrawing your motion to compel.

And if you insist on going forward with your motion to compel (in violation of our agreement), I request that you revise your draft joint stipulation to comply with Local Rule 37-2.1. Among other things, your draft is not set up to include a separate introductory statement from each party (not to exceed 3 pages each), a separate section stating the issues in dispute (including a verbatim recitation of the document demand in question and the response), and then a section setting forth each party's position regarding the disputed issue.  We cannot formulate our response until you put your portion in the required format, and the time period for our response does not start to run until we receive a document that conforms to Local Rule 37-2.1.

Please let me know if you would like to discuss any of the foregoing.

Best regards,

Steve

# EXHIBIT D

Randall T. Garteiser, Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea, Texas Bar No. 24059967
chonea@ghiplaw.com
Kirk J. Anderson, California Bar No. 289043
kanderson@ghiplaw.com
Ian Ramage, California Bar No. 224881
iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
795 Folsom St, Floor 1, San Francisco, CA  94107-4226
Telephone: (903) 705-7420

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| BLUE SPIKE LLC, | Case No.: 8:17-cv-1172-DOC-KES |
| Plaintiff, | |
| vs. | BLUE SPIKE LLC'S SUPPLEMENTAL RESPONSES TO VIZIO INC.'S FIRST SET OF INTERROGATORIES |
| VIZIO, INC., | |
| Defendant | |

Plaintiff, Blue Spike LLC ("Blue Spike"), by and through its counsel, responds and objects to Defendant Vizio, Inc's ("Vizio") First Set of Interrogatories, pursuant to Fed. R. Civ. P. 26 and 33 and Local Court Rule CV-26. Blue Spike has not yet completed its discovery and investigation with respect to many of the issues raised. Therefore, these responses are based on Blue Spike's present knowledge, and are given without prejudice to Blue Spike's right to produce evidence of any subsequently discovered facts, or to add, modify or otherwise change or amend its responses.

**GENERAL OBJECTIONS**

BLUE SPIKE LLC'S SUPPLEMENTAL RESPONSES TO VIZIO INC.'S FIRST SET OF INTERROGATORIES
- 1 – CONFIDENTIAL

infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described;

5. Whether each limitation of each Asserted Claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

6. For any patent that claims priority to an early application, the priority date to which each Asserted Claim allegedly is entitled;

7. Identify the time of the point of first infringement, the start of claimed damages, and the end of claimed damages; and

8. Identify the basis for Blue Spike's willful infringement allegations.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY ONE:**

Blue Spike objects to this interrogatory as it includes multiple requests grouped together as a single interrogatory and is therefore overly burdensome to respond to. Blue Spike further objects to this interrogatory as it seeks information prematurely. Blue Spike is available to meet and confer to work on defining a reasonable scope for this interrogatory. As of March 26, 2018, Vizio continues to not provide a date to meet and confer on the proper number of interrogatories this Interrogatory should account for. As such, Blue Spike treats this failure as an admission that the interrogatory calls for three (3) interrogatory responses for Blue Spike's secure server patents, trusted transaction patents, and ASLR patents, as outlined in the table below.

| Type | Patent Numbers | Product | Asserted Claims |
|------|----------------|---------|-----------------|
| Secure Server Patents | US 7475246 | Vizio Smart TVs - PlayReady | 17, 20, 21, 24, 25, 31 |
| | US 8171561 | Vizio Smart TVs - PlayReady | 1-4, 9-12 |

| | | | |
|---|---|---|---|
| | US 8739295 | Vizio Smart TVs - PlayReady | 13, 19, 20, 23 |
| Trusted Transactions Patents | US 7159116 | Vizio Smart TVs - PlayReady | 14, 16-19 |
| | US 8538011 | Vizio Smart TVs - PlayReady | 35, 36 |
| ASLR Patents | US 8930719 | Vizio Android Tablets - Android | 1, 2, 10, 21, 22, 23, 29, 47 |
| | US 5745569 | Vizio Android Tablets - Android | 16 |

The chart above lists Vizio's accused products per patent. It lists the asserted claims of each patent.  Also, Blue Spike has prepared charts mapping Vizio's infringement of the its Smart TV's and its Android Tablets in the attached 7 charts with exhibits.


March 26, 2018.

/s/ Randall Garteiser

Randall T. Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
Kirk J. Anderson
   California Bar No. 289043
   kanderson@ghiplaw.com
Ian Ramage
   California Bar No. 224881
   iramage@ghiplaw.com
**GARTEISER HONEA PLLC**
   119 W. Ferguson Street
   Tyler, Texas 75702
   Telephone: (903) 705-7420
   Facsimile: (888) 908-4400


*Counsel for Blue Spike LLC*

BLUE SPIKE LLC'S SUPPLEMENTAL RESPONSES TO VIZIO INC.'S FIRST SET OF INTERROGATORIES
- 6 – CONFIDENTIAL

# EXHIBIT E

Randall T. Garteiser (CBN 231821)
rgarteiser@ghiplaw.com
Christopher A. Honea (CBN 232473)
chonea@ghiplaw.com
Kirk J. Anderson (CBN 289043)
kanderson@ghiplaw.com
GARTEISER HONEA P.C.
119 W. Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Attorneys for Plaintiff
BLUE SPIKE LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE SPIKE LLC, | Civil Case No.: 8:17-cv-1172 |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| VIZIO, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

GARTEISER HONEA – TRIAL ATTORNEYS

1



Plaintiff Blue Spike LLC files this complaint against Vizio, Inc. ("Vizio" or "Defendant"), alleging seven (7) counts of infringement of the following Patents-in-Suit, separated for convenience into three groups: (1) Blue Spike's ASLR Patents, (2) Blue Spike's Secure Server Patents; and (3) Blue Spike's Trusted Transaction Patents:

**Blue Spike's ASLR Patents:**

1.      U.S. Patent No. 5,745,569, titled "Method for Stega-Cipher Protection of Computer Code" (the '569 Patent);

2.      U.S. Patent No. 8,930,719, titled "Data Protection Method and Device" (the '719 Patent, and collectively with U.S. Patent No. 5,745,569, the "ASLR Patents");

**Blue Spike's Secure Server Patents:**

3.      U.S. Patent No. 7,475,246, titled "Secure Personal Content Server" (the '246 Patent);

GARTEISER HONEA – TRIAL ATTORNEYS

4.     U.S. Patent No. 8,171,561, titled "Secure Personal Content Server" (the '561 Patent);

5.     U.S. Patent No. 8,739,295, titled "Secure Personal Content Server" (the '295 Patent, and collectively with U.S. Patent Nos. 7,475,246 and 8,171,561, the "Secure Server Patents");

**Blue Spike's Trusted Transactions Patents:**

6.     U.S. Patent No. 7,159,116, titled "Systems, Methods and Devices for Trusted Transactions" (the '116 Patent); and

7.     U.S. Patent No. 8,538,011, titled "Systems, Methods and Devices for Trusted Transactions" (the '011 Patent, and collectively with U.S. Patent No. 7,159,116, the "Trusted Transactions Patents").

## NATURE OF THE SUIT

This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

1.     Plaintiff Blue Spike LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit, and has ownership of all substantial rights in them, including the rights to grant

3

sublicenses, to exclude others from practicing the inventions taught therein, and to sue and obtain damages and other relief for past and future acts of infringement.

2.     On information and belief, Vizio, Inc. is a company organized and existing under the laws of California, with a principal place of business at 39 Tesla, Irvine, California 92618. Vizio, Inc. may be served through its registered agent, Registered Agent Solutions, Inc., at 1220 S Street, Suite 150, Sacramento, California 95811.

## JURISDICTION AND VENUE

3.     This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

4.     The Court has personal jurisdiction over Vizio has it requested to be transferred to this district and purports to have its principal place of business here.

5.     Venue is proper in this judicial district under 28 U.S.C. §1400(b) because Defendant is incorporated in this state. *See* 28 U.S.C § 1400 (b); *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017). Venue is also proper because Defendant is headquartered in this district. *See* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant . . . has a regular and established place of business.").

GARTEISER HONEA – TRIAL ATTORNEYS

4

Defendant also does business in this state and has committed acts of infringement in this state. The Plaintiff has all necessary rights to exploit the patents-in-suit in patent infringement litigation and also has the right to import and manufacture the products.

**FACTUAL BACKGROUND**

6.    Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered and continues to invent technology that makes such protection possible.

7.    Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

8.    Moskowitz is an inventor of more than 100 patents in the areas of forensic watermarking, signal abstracts, data security, software watermarks, product license keys, deep packet inspection, license code for authorized software, and bandwidth securitization, among others.

9.    The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application

classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

10.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article, "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works," recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz for an excerpt in "Cops Versus Robbers in Cyberspace," September 9, 1996. The article discussed the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

11.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*,

GARTEISER HONEA – TRIAL ATTORNEYS

6

a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

12. Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS

13. The Defendant Vizio designs, develops, manufactures and/or provides products, services and/or software applications that employ features or components that infringe one or more claims of the Patents-in-Suit (collectively the "Accused Products").

14. The Accused Products are comprised of Accused Address Space Layout Randomization ("ASLR") Products and the Accused TV Products, which employ features or components that infringe on Blue Spike's patented ASLR security technique.

15. The Accused ASLR Products comprise all of Defendant's tablets employing the Android 4.0 OS or later, including, but not limited, to its 7" and 10" series of tablets, as well as its Smartcast™ Tablet Remote that comes with its P-series and M-series televisions. Such products employ features or components that infringe on Blue Spike's patented ASLR security technique.

GARTEISER HONEA – TRIAL ATTORNEYS

7

16.  When the Defendant's Accused Products is used, Defendant's end users infringe Blue Spike's patented ASLR security technique. However, this infringement claim is not limited to the memory component and the ASLR features and components embedded within the memory.  Defendant also directly infringes by its testing and quality control practices.

17.  Address Space Layout Randomization ("ASLR") is a security technique that protects software by shuffling it in computer memory. Prior to implementing ASLR, modern-day operating systems often loaded software into predictable memory locations. That predictability allowed attackers to pinpoint specific potions of software and manipulate them in unintended ways. In response to this grave threat, many operating systems now utilize ASLR to reduce predictability by shuffling software to random memory locations.

18.  The Android OS utilizes ASLR technology to protect itself and other software from being compromised. Android began implementing ASLR technology as early as version 2, and advertised more robust implementations by versions 4 and 4.1.  On information and belief, the Accused ASLR Products use various versions of the Android OS, beginning with version 4.0, and therefore infringe on Blue Spike's ASLR patents.

19.  The Accused TV Products include Vizio smart televisions, which utilize features or components capable of streaming secured content such as Netflix, YouTube, Google Play, HBO Go, Fox Now, and other such services. Such

GARTEISER HONEA – TRIAL ATTORNEYS

8

products include, but are not limited to, Vizio's D-Series, E-Series, M-Series, P-Series, and Reference Series of televisions.

20.   The Accused Products employ features or components that infringe on Blue Spike's Secure Server Patents and Trusted Transactions Patents. When end users use Defendant's Accused Products, Defendant causes them to directly infringe on Blue Spike's patented ASLR security technique. However, this infringement claim is not limited to the memory component and the Secure Server and Trusted Transaction features and components embedded within the memory.  Defendant also directly infringes by its testing and quality control practices.

21.   Blue Spike's Secure Server patented technique creates a secure environment for the disclosure of digital content, whereby a local content server system (LCS) is provided with rules and procedures for accepting and transmitting content data.

22.   Blue Spike's Trusted Transaction patented technique provides an integrated multivalent system for enhancing trust across a variety of data transactional categories.

23.   Defendant has not obtained a license for any of Blue Spike's patented technologies.

24.   Yet the Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

GARTEISER HONEA – TRIAL ATTORNEYS

9

GARTEISER HONEA – TRIAL ATTORNEYS

25.  Each count of patent infringement contained herein is accompanied by a representative claim. *See Atlas IP LLC v. P. Gas and Electric Co.*, 15-CV-05469-EDL, 2016 WL 1719545, at \*5 (N.D. Cal. Mar. 9, 2016) ("*Iqbal* and *Twombly* only require Plaintiff to state a plausible claim for relief, which can be satisfied by adequately pleading infringement of one claim.).

## COUNT 1:
## INFRINGEMENT OF U.S. PATENT 5,745,569

26.  Blue Spike incorporates by reference the allegations in the paragraphs above.

27.  The '569 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO").

28.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '569 Patent directly, contributorily, or by inducement, by importing, making, using, offering for sale, or selling products and devices that embody the patented invention. This includes, without limitation, one or more of the Accused ASLR Products, in violation of 35 U.S.C. § 271.

29.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '569 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '569 Patent. Specifically, Defendant imports the Accused ASLR Products into the United States, operates a website that offers for

10

sale the Accused ASLR Products (*see, e.g.*, Ex. A & B), has partnered with resellers to offer for sale and sell the Accused ASLR Products in the United States (*see, e.g.*, Ex. C & D), generates revenue from sales of the Accused ASLR Products to U.S. customers via said channels (*see id.*); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see, e.g.*, Ex. F).

30.     The Accused ASLR Products infringe claims of the '569 Patent, such as Claim 16 which teaches:

> A method for copy protecting a software application executed by a computer system, the software application including a plurality of executable code resources loaded in a memory of the computer system, said method comprising the steps of:
> determining an address within the memory of the computer system associated with each of the plurality of executable code resources; and
> intermittently relocating each of the plurality of executable code resources to a different address within the memory of the computer during execution of the software application.

Defendant's Accused ASLR Products utilize a version of Android OS that employs ASLR, a security technique that protects software by shuffling it in computer memory (*method for copy protecting a software application … comprising the steps of: determining an address within the memory of the computer system associated with each of the plurality of executable code resources; and intermittently relocating each of the plurality of executable code resources to a different address within the memory of the computer*). *See* Ex. G ("Android 4.0 now provides address space layout randomization … For the uninitiated, ASLR randomizes where various areas of

11

memory [*e.g.*, stack, heap, libs, etc.] are mapped in the address space of a process."); Ex. H ("Each instance of an executable will be given a randomized address space layout at execution time.").

31. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '569 Patent in California, in the Central District, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '569 Patent. Such products include, without limitation, one or more of the Accused ASLR Products. The infringing features or components of such products have no substantial non-infringing uses and are for use in systems that infringe the '569 Patent.[1] By making, using,

---

[1] In a claim for contributory infringement, there is particular attention to the infringing *feature or component* incorporated into the Defendant's Accused Products. *See* H.R.Rep. No. 82-1923 at 9 (stating that 35 U.S.C § 271(c) "applies not only to the bare sale of an infringing component, but also to the sale of that component as part of a product or device." And "[o]ne who makes a special device constituting the heart of a patented machine and supplies it to others with directions [specific or implied] to complete the machine is obviously appropriating the benefit of the patented invention."); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, 545 U.S. 913, 32 (2007); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 20, 21 (Fed. Cir. 2009) (a defendant can be liable even where it intended "users to use the [infringing feature]—perhaps not frequently—and the only intended use of the tool infringed." While specific instructions as to how to use an infringing feature indicates contributory infringement, it is also implied where a product's feature or component does not have substantial non-infringing uses); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 27 (Fed. Cir. 2008) (holding that "[w]e are unable to read *Sony* or *Grokster* as requiring the court to ignore the sale of a separable, distinct and infringing component

12

importing offering for sale, and/or selling such products, Defendant has injured Blue Spike and is, thus, liable to Blue Spike for infringement of the '569 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused ASLR Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused ASLR Products. *See, e.g.*, Ex. C & D; *infra*, at 19-20, n. 2. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users and direct infringers of the Accused ASLR Products.

32. Defendant had knowledge of the '569 Patent at least as early as the service of Blue Spike's complaint against Defendant in the Eastern District of Texas, filed on January 30, 2017. *See* Case No. 6:17-cv-00060, Dkt. No. 1; *MyMedicalRecords, Inc. v. Jardogs*, LLC, 1 F.Supp.3d 1020, 25 (C.D. Cal. 2014) (notice establishes "full

because it is bundled together with a noninfringing component before being distributed."); *Oak Indus., Inc. v. Zenith Elecs. Corp.*, 697 F. Supp. 988, 95 (N.D. Ill. 1988) (finding "the possibility, or even the likelihood, that someone may use it in a noninfringing manner does not protect the manufacturer" from contributory infringement). The Defendant's accused products not only include features or components that infringe on Blue Spike's Patents-in-Suit, but the Defendant makes instructions available, either specifically or impliedly, through descriptions of these infringing features or components and/or instruction manuals explaining how to activate. *See, infra,* at 19-20, n. 2.

GARTEISER HONEA – TRIAL ATTORNEYS

knowledge of the patents in suit."). That complaint also notified Defendant that the Accused ASLR Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. *See*, *infra*, at 19-20, n. 2. Thus, Defendant is liable for infringement of one or more claims of the '569 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '569 Patent under 35 U.S.C. § 271.

33. Defendant's acts of infringement of the '569 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '569 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

34. On information and belief, the infringement of the '569 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '569 Patent, including but not limited to at least one or more of the following:

a. The filing of Blue Spike's complaint against Defendant in the Eastern District of Texas on January 30, 2017 (Case No. 6:17-cv-00060, Dkt. No. 1).

14

GARTEISER HONEA – TRIAL ATTORNEYS

b.  The '569 patent has been forward-cited as prior art in connection with the examination of at least 300 subsequently-issued U.S. patents, including Microsoft in its patent titled "License-based cryptographic technique, particularly suited for use in a digital rights management system, for controlling access and use of bore resistant software objects in a client computer," Digimarc in its patent titled "Anti-piracy system for wireless telephony," AT&T in multiple patents including one of its U.S. Patent titled "Protected IP telephony calls using encryption," NEC in its U.S. Patent titled "Method and system for protecting digital data from unauthorized copying," Matsushita Electric Industrial in its U.S. Patent titled "Active data hiding for secure electronic media distribution," and multiple other well-known companies and government agencies, including The U.S. Army, Intertrust Technologies, Texas Instruments, Dell Products, Intel, ShieldIP, Borland Software Company, Avaya Inc., Shoretel Inc., and Syndata Technologies; and

c.  And in the course of its due diligence and freedom to operate analyses.

On information and belief, Defendant has had at least had constructive notice of the '569 Patent by operation of law.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT 8,930,719

35.  Blue Spike incorporates by reference the allegations in the paragraphs above.

GARTEISER HONEA – TRIAL ATTORNEYS

36.   The '719 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

37.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '719 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused ASLR Products, in violation of 35 U.S.C. § 271.

38.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '719 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '719 Patent. Specifically, Defendant imports the Accused ASLR Products into the United States, operates a website that offers for sale the Accused ASLR Products (*see*, *e.g.*, Ex. A & B), has partnered with resellers to offer for sale and sell the Accused ASLR Products in the United States (*see*, *e.g.*, Ex. C & D), generates revenue from sales of the Accused ASLR Products to U.S. customers via said channels (*see id.*); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Ex. F).

39.   The Accused ASLR Products infringe claims of the '719 Patent, such as Claim 1 which teaches:

A computing device for running application software, comprising:

16

an operating system;
wherein said memory stores an application software;
wherein said application software comprises
    (1) a memory scheduler code resource and (2) other code resources;
wherein said application software is designed to call said memory scheduler code resource; wherein said memory scheduler code resource, when called, functions to shuffle said other code resources in said memory; and
wherein said memory scheduler code resource is designed to modify a stack frame in said memory.

The Accused ASLR Products utilize the Android OS, which employs ASLR, a security technique that protects software by shuffling various code resources in computer memory (*application software [that] comprises: (1) a memory scheduler code resource and (2) other code resources; wherein said application software is designed to call said memory scheduler code resource; wherein said memory scheduler code resource, when called, functions to shuffle said other code resources in said memory; and wherein said memory scheduler code resource is designed to modify a stack frame in said memory*). *See* Ex. I ("Android is a Linux based OS with 2.6.x kernel … All the basic OS operations like I/O, memory management, and so on, are handled by the native stripped-down Linux kernel."); Ex. G ("Android 4.0 now provides address space layout randomization … For the uninitiated, ASLR randomizes where various areas of memory (eg. stack, heap, libs, etc) are mapped in the address space of a process."); Ex. H ("Each instance of an executable will be given a randomized address space layout at execution time."); Ex. J ("ASLR randomizes the base points of the stack, heap, shared libraries, and base executables").

GARTEISER HONEA – TRIAL ATTORNEYS

17

GARTEISER HONEA – TRIAL ATTORNEYS

40.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '719 Patent in the State of California, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, features or components for use in systems that fall within the scope of one or more claims of the '719 Patent. Such products include, without limitation, features or components that employ one or more of the Accused ASLR patents without license or authorization. The infringing features or components in Accused ASLR Products have no substantial non-infringing uses and are for use in systems that infringe the '719 Patent. *See*, *supra*, at 12, n. 1. By making, using, importing offering for sale, and/or selling such products, Defendant has injured Blue Spike and is liable for infringement of the '719 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused ASLR Products. *See In re Bill of Lading*, 681 F.3d at 1336. Even so, Defendant induces and contributes to the infringement of its customers. *See*, *infra*, at 19-20, n. 2. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. *See*, *e.g.*, Ex. C & D. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused ASLR Products. *See*, *infra*, at 19-20, n. 2.

18

41.   Defendant had knowledge of the '719 Patent at least as early as the service of Blue Spike's complaint against Defendant in the Eastern District of Texas, filed on January 30, 2017. *See* Case No. 6:17-cv-00060, Dkt. No. 1; *MyMedicalRecords*, 1025.   That complaint also notified Defendant that the Accused ASLR Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit. The features and components at issue in the Accused ASLR Products cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe.[2] Thus,

---

[2] On information and belief, Defendant's Accused Products use various versions of the Android OS, beginning with version 4.0, and therefore infringe on the ASLR Patents, which are at the heart of its memory component when its secured content app streaming features. These streaming features include, but are not limited to, "Internet Apps Plus® (V.I.A. Plus)" and "VIZIO Smart CastTM App," utilize the randomized ASLR memory system. Vizio has not obtained a license for any of Blue Spike's patented technologies, though its products include components and features or components that use methods, devices, and systems taught by the plaintiff's patents. For example, the intended use of the infringing feature or component in Vizio's Reference Series smart televisions is spelled out in on its website advertisement, which is to "deliver[] the most popular apps featuring 4K UHD, HDR-mastered content coming soon to VUDU - as well as 4K UHD content on Netflix, Amazon Instant Video and UltraFlix." *See* Ex. M (*e.g.*, implied instructions). Moreover, Vizio's user manuals give specific instructions on how to enable the infringing secured streaming features for its D-series, E-series, M-series, P-series Reference Series smart television sets. *See* Ex. N (using "VIZIO Internet Apps Plus® (V.I.A. Plus)"); Ex. O (using "VIZIO Smart CastTM App"); Ex. P (using "VIZIO Internet Apps Plus® (V.I.A. Plus)"); Ex. Q (using "VIZIO Smart CastTM App"). Thus, it is when the secured streaming feature of Vizio's smart television sets are enabled as impliedly or specifically instructed, as well as Vizio tablets and its Smartcast Tablet Remote that comes with its P-series and M-series televisions that employ the use of Android OS 4.0 or later, that the ASLR randomized memory component of those television sets or tablets infringe on the

19

GARTEISER HONEA – TRIAL ATTORNEYS

GARTEISER HONEA – TRIAL ATTORNEYS

Defendant is liable for infringement of one or more claims of the '719 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '719 Patent under 35 U.S.C. § 271.

42.    Defendant's acts of infringement of the '719 Patent have damaged Blue Spike. Thus, Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '719 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law. This warrants an injunction from the Court.

43.    On information and belief, the infringement of the '719 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '719 Patent, including but not limited to at least one or more of the following:

  a. The filing of Blue Spike's complaint against Defendant in the Eastern District of Texas on January 30, 2017 (Case No. 6:17-cv-00060, Dkt. No. 1).

plaintiff's patented methods, devices, and systems. These features or components have no substantial non-infringing uses and, therefore, are liable for the asserted infringement claims. Moreover, also at the heart of the memory are features or components that can only be utilized to infringe the Secure Server and Trusted Transaction Patents asserted in this claim. Due to the memory component's use of Android OS 4.0 or later, such Secure Server and Trusted Transaction data is also randomized in the memory according to the employed patented ASLR randomized memory system—therefore infringing, yet again, on the Patents-in-Suit.

GARTEISER HONEA – TRIAL ATTORNEYS

b. The filing of Blue Spike's prior lawsuits, which assert the '719 Patent against five major smartphone manufacturers—Xiaomi, Huawei, Infosonics, DDM Brands, and ZTE (consolidated as *Blue Spike, LLC v. Beijing Xiaomi Technology Co. Ltd. et al.* (E.D. Tex.) Case No. 2:15-CV-01785). These lawsuits have been widely publicized. *See*, *e.g.*, "China's Xiaomi slapped with patent-infringement suit by Blue Spike in US over upcoming Mi 5, Mi 5 Plus smartphones," Dec. 9, 2015, SOUTH CHINA MORNING POST, *at* http://www.scmp.com/tech/enterprises/article/1889024/chinas-xiaomi-slapped-patent-infringement-suit-blue-spike-us-over (*see* Ex. K).

c. And in the course of its due diligence and freedom to operate analysis.

On information and belief, Defendant has, at a minimum, been given constructive notice of the '719 Patent by operation of law.

## COUNT 3:
## INFRINGEMENT OF U.S. PATENT 7,475,246

44. Blue Spike incorporates by reference the allegations in the paragraphs above.

45. The '246 Patent is valid, enforceable, and was duly and legally issued by the USPTO.

46. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '246 Patent directly, contributorily, or by inducement, by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including,

21

without limitation, one or more of the Accused TV Products, in violation of 35 U.S.C. § 271.

47.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '246 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '246 Patent. Specifically, Defendant imports the Accused TV Products into the United States, operates a website that offers for sale the Accused TV Products (*see*, *e.g.*, Ex. A & B), has partnered with resellers to offer for sale and sell the Accused TV Products in the United States (*see*, *e.g.*, Ex. C & D), generates revenue from sales of the Accused TV Products to U.S. customers via said channels (*see id.*); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Ex. F).

48.     For instance, the Accused TV Products infringe claim 17 of the '246 Patent which teaches:

> A method for creating a secure environment for digital content for a consumer, comprising the following steps:
> sending a message indicating that a user is requesting a copy of a content data set;
> retrieving a copy of the requested content data set;
> embedding at least one robust open watermark into the copy of the requested content data set, said watermark indicating that the copy is authenticated;
> embedding a second watermark into the copy of the requested content data set, said second watermark being created based upon information transmitted by the requesting user;

GARTEISER HONEA – TRIAL ATTORNEYS

> transmitting the watermarked content data set to the requesting consumer via an electronic network;
> receiving the transmitted watermarked content data set into a Local Content Server (LCS) of the user;
> extracting at least one watermark from the transmitted watermarked content data set;
> permitting use of the content data set if the LCS determines that use is authorized; and
> permitting use of the content data set at a predetermined quality level, said predetermined quality level having been set for legacy content if the LCS determines that use is not authorized.

Defendant's Accused TV Products include features or components which allow playback, upon request and proper authorization, of secured content via Netflix and other streaming services (*digital content for a consumer*; *sending message*; *retrieving a copy of the requested content*; *transmitting the watermarked content data set*; *receiving the transmitted watermarked content data set into a Local Content Server (LCS) of the user*; *extracting at least one watermark*; *permitting use of the content data set if the LCS determines that it is authorized*). *See, e.g.*, Ex. A & L.

49. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '246 Patent in California, in the Central District, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '246 Patent. Such products include, without limitation, one or more of the Accused TV Products. The infringing features or components of such products have no substantial non-infringing uses

GARTEISER HONEA – TRIAL ATTORNEYS

and are for use in the Defendant's product systems that infringe the '246 Patent. *See*, *supra*, at 12, n. 1. By making, using, importing offering for sale, and/or selling such products, Defendant has injured Blue Spike and is thus liable to Blue Spike for infringement of the '246 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused TV Products. *See In re Bill of Lading*, 681 F.3d at 1336. Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused TV Products. *See*, *e.g.*, Ex. C & D; *supra*, at 19-20, n. 2. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused TV Products.

50.   Defendant had knowledge of the '246 Patent at least as early as the service of Blue Spike's complaint against Defendant in the Eastern District of Texas, filed on January 30, 2017. *See* Case No. 6:17-cv-00060, Dkt. No. 1; *MyMedicalRecords*, 1 F.Supp.3d at 1025. That complaint also notified Defendant that the Accused TV Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, employ features or components that cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Even so, Defendant has continued to induce its customers and partners to infringe. *See*, *supra*, at 19-20, n. 2. Thus, Defendant is liable for

24

GARTEISER HONEA – TRIAL ATTORNEYS

infringement of one or more claims of the '246 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '246 Patent under 35 U.S.C. § 271.

51.   Defendant's acts of infringement of the '246 Patent have damaged Blue Spike. Thus, Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '246 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law. This warrants an injunction from the Court.

52.   On information and belief, the infringement of the '246 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '246 Patent, including but not limited to at least one or more of the following:

    a.   The filing of Blue Spike's complaint against Defendant in the Eastern District of Texas on January 30, 2017 (Case No. 6:17-cv-00060, Dkt. No. 1).

    b.  In the course of its due diligence and freedom to operate analysis.

    c.  And due diligence in relation to its prior litigation with Blue Spike.

On information and belief, Defendant has, at a minimum, been given constructive notice of the '246 Patent by operation of law.

### COUNT 4:
### INFRINGEMENT OF U.S. PATENT 8,171,561

53.   Blue Spike incorporates by reference the allegations in the paragraphs above.

54. The '561 Patent is valid, enforceable, and was duly and legally issued by the USPTO.

55. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '561 Patent directly, contributorily, or by inducement, by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused TV Products, in violation of 35 U.S.C. § 271.

56. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '561 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '561 Patent. Specifically, Defendant imports the Accused Products into the United States, operates a website that offers for sale the Accused Products (*see*, *e.g.*, Ex. A & B), has partnered with resellers to offer for sale and sell the Accused TV Products in the United States (*see*, *e.g.*, Ex. C & D), generates revenue from sales of the Accused TV Products to U.S. customers via said channels (*see id.*); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Ex. F).

57. For instance, the Accused TV Products infringe claim 9 of the '561 Patent which teaches:

> A method for using a local content server (LCS), said LCS comprising an LCS communications port; an LCS

26

storage unit for storing digital data; an LCS domain processor for processing digital data; and an LCS identification code uniquely associated with said LCS, said method comprising:

said LCS storing in said LCS storage unit a plurality of rules for processing a data set;

said LCS receiving via said communications port a first data set that includes data defining first content;

said LCS using said domain processor to determine from inspection of said first data set for a watermark, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;

said LCS using said first data set status value to determine which of a set of rules to apply to process

said first data set prior to storage of a processed second data set resulting from processing of said first data set, in said LCS storage unit;

said LCS determining, at least in part, from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; and

wherein a quality level of legacy means that said first content does not include said watermark.

Defendant's Accused TV Products features or components allow playback of both secured and unsecured content via Netflix and other streaming services (*a method for using a local content server with communications port, storage, domain processor, and unique ID; said LCS storing/receiving data sets/content; LCS inspecting data set for watermark and determining … unsecure, secure, legacy; wherein a quality level of legacy means that said first content does not include said watermark*). *See, e.g.*, Ex. A & L.

27

GARTEISER HONEA – TRIAL ATTORNEYS

58.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '561 Patent in California, in the Central District, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '561 Patent. Such products include, without limitation, one or more of the Accused TV Products. The infringing features or components of such products have no substantial non-infringing uses and are for use in systems that infringe the '561 Patent. *See, supra*, at 12, n. 1. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '561 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused TV Products. *See In re Bill of Lading*, 681 F.3d at 1336. Even so, Defendant induces and contributes to the infringement of its customers. *See, supra*, at 19-20, n. 2. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. *See, e.g.*, Ex. C & D. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused TV Products.

59.   Defendant had knowledge of the '561 Patent at least as early as the service of Blue Spike's complaint against Defendant in the Eastern District of Texas, filed on January 30, 2017. *See* Case No. 6:17-cv-00060, Dkt. No. 1; *MyMedicalRecords*, 1 F.Supp.3d at 1025. That complaint also notified Defendant that the Accused TV Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Thus, Defendant is liable for infringement of one or more claims of the '561 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '561 Patent under 35 U.S.C. § 271.

60.   Defendant's acts of infringement of the '561 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '561 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

61.   On information and belief, the infringement of the '561 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '561 Patent, including but not limited to at least one or more of the following:

GARTEISER HONEA – TRIAL ATTORNEYS

29

GARTEISER HONEA – TRIAL ATTORNEYS

a. The filing of Blue Spike's complaint against Defendant in the Eastern District of Texas on January 30, 2017 (Case No. 6:17-cv-00060, Dkt. No. 1).

b. In the course of its due diligence and freedom to operate analysis.

c. And due diligence in relation to its prior litigation with Blue Spike. On information and belief, Defendant has had at least had constructive notice of the '561 Patent by operation of law.

## COUNT 5:
## INFRINGEMENT OF U.S. PATENT 8,739,295

62. Blue Spike incorporates by reference the allegations in the paragraphs above.

63. The '295 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

64. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '295 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused TV Products, in violation of 35 U.S.C. § 271.

65. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '295 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '295 Patent. Specifically, Defendant imports the Accused TV Products into the United States, operates a website that offers for

GARTEISER HONEA – TRIAL ATTORNEYS

sale the Accused TV Products (*see*, *e.g.*, Ex. A & B), has partnered with resellers to offer for sale and sell the Accused TV Products in the United States (*see*, *e.g.*, Ex. C & D), generates revenue from sales of the Accused TV Products to U.S. customers via said channels (*see id.*); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Ex. F).

66.     For instance, the Accused TV Products infringe claim 13 of the '295 Patent which teaches:

> A method for using a local content server system (LCS), said LCS comprising an LCS communications port; an LCS storage unit for storing digital data in non-transitory form; an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and a programmable address module programmed with an LCS identification code uniquely associated with said LCS domain processor; comprising:
>> storing, in said LCS storage unit, a plurality of rules for processing a data set;
>> receiving, via said LCS communications port, a first data set that includes data defining first content;
>> said LCS determining whether said first content belongs to a different LCS domain than said first LCS domain;
>> said LCS excluding from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;
>> said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;
>> said LCS determining, using said first data set status value, which of a set of rules to apply to process said first data set; and

GARTEISER HONEA – TRIAL ATTORNEYS

said LCS determining, at least in part from rights associated with an identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy;

said LCS transmitting said first content at the determined quality level.

Defendant's Accused TV Products allow playback of both secured and unsecured content via Netflix and other streaming services (*a method for using a local content server with communications port, storage, domain processor, and unique ID; said LCS storing/receiving data sets/content; excluding from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain; said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy*). (*See, e.g.*, Ex. A & L).

67.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '295 Patent in the State of California, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '295 Patent. Such products include, without limitation, one or more of the Accused TV Products. The infringing features or components in such products have no substantial non-

infringing uses and are for use in systems that infringe the '295 Patent. *See, supra*, at 12, n. 1. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '295 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused TV Products. *See In re Bill of Lading*, 681 F.3d at 1336. Even so, Defendant induces and contributes to the infringement of its customers. *See, supra*, at 19-20, n. 2. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. *See, e.g.*, Ex. C & D. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused TV Products.

68.   Defendant had knowledge of the '295 Patent at least as early as the service of Blue Spike's complaint against Defendant in the Eastern District of Texas, filed on January 30, 2017. *See* Case No. 6:17-cv-00060, Dkt. No. 1; *MyMedicalRecords*, 1 F.Supp.3d at 1025. That complaint also notified Defendant that the Accused TV Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. *See, supra*, at 19-20, n. 2. Thus, Defendant is liable for infringement of one or more

GARTEISER HONEA – TRIAL ATTORNEYS

33

claims of the '295 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '295 Patent under 35 U.S.C. § 271.

69. Defendant's acts of infringement of the '295 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '295 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

70. On information and belief, the infringement of the '295 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '295 Patent, including but not limited to at least one or more of the following:

　　a. The filing of Blue Spike's complaint against Defendant in the Eastern District of Texas on January 30, 2017 (Case No. 6:17-cv-00060, Dkt. No. 1).

　　b. In the course of its due diligence and freedom to operate analysis.

　　c. And due diligence in relation to its prior litigation with Blue Spike.

On information and belief, Defendant has had at least had constructive notice of the '295 Patent by operation of law.

## COUNT 6:
## INFRINGEMENT OF U.S. PATENT 7,159,116

71. Blue Spike incorporates by reference the allegations in the paragraphs above.

GARTEISER HONEA – TRIAL ATTORNEYS

72.   The '116 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

73.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '116 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused TV Products, in violation of 35 U.S.C. § 271.

74.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '116 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '116 Patent. Specifically, Defendant imports the Accused TV Products into the United States, operates a website that offers for sale the Accused TV Products (*see*, *e.g.*, Ex. A & B), has partnered with resellers to offer for sale and sell the Accused TV Products in the United States (*see*, *e.g.*, Ex. C & D), generates revenue from sales of the Accused TV Products to U.S. customers via said channels (*see id.*); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Ex. F).

75.   The Accused TV Products infringe claims of the '116 Patent, such as Claim 14 which teaches:

35

GARTEISER HONEA – TRIAL ATTORNEYS

A device for conducting a trusted transaction between at least two parties who have agreed to transact, comprising:

means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component;

a steganographic cipher for generating said unique identification information, wherein the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal; and

a means for verifying an agreement to transact between the parties.

Defendant's Accused TV Products include certain Smart TVs that allow playback of Netflix and other streaming services. Netflix uses a digital rights management system called PlayReady, which is a method for authenticating the transmission of information between two entities by using unique device IDs and cryptographic keys (*conducting a trusted transactions between at least two parties [by using a] means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties [and] a steganographic cipher for generating said unique identification information … governed by … a predetermined key*). *See* Ex. L at 4 ("PlayReady secures content by encrypting data files. … In order to decrypt these data files, a digital key is required.").

76. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the

36

GARTEISER HONEA – TRIAL ATTORNEYS

'116 Patent in the State of California, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '116 Patent. Such products include, without limitation, one or more of the Accused TV Products. The infringing features or components in such products have no substantial non-infringing uses and are for use in systems that infringe the '116 Patent. *See, supra,* at 12, n. 1. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused TV Products. *See In re Bill of Lading,* 681 F.3d at 1336. Even so, Defendant induces and contributes to the infringement of its customers. *See, supra,* at 19-20, n. 2. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. *See, e.g.,* Ex. C & D. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused TV Products.

77.   Defendant had knowledge of the '116 Patent at least as early as the service of Blue Spike's complaint against Defendant in the Eastern District of Texas, filed on January 30, 2017. *See* Case No. 6:17-cv-00060, Dkt. No. 1; *MyMedicalRecords,* 1

GARTEISER HONEA – TRIAL ATTORNEYS

F.Supp.3d at 1025. That complaint also notified Defendant that the Accused TV Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '116 Patent under 35 U.S.C. § 271.

78.    Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '116 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

79.    On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following:

    a. The filing of Blue Spike's complaint against Defendant in the Eastern District of Texas on January 30, 2017 (Case No. 6:17-cv-00060, Dkt. No. 1).

    b. In the course of its due diligence and freedom to operate analysis.

    c. And due diligence in relation to its prior litigation with Blue Spike.

On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law.

<div align="center">

**COUNT 7:**

**INFRINGEMENT OF U.S. PATENT 8,538,011**

</div>

80. Blue Spike incorporates by reference the allegations in the paragraphs above.

81. The '011 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

82. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '011 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused TV Products, in violation of 35 U.S.C. § 271.

83. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '011 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '011 Patent. Specifically, Defendant imports the Accused TV Products into the United States, operates a website that offers for sale the Accused TV Products (*see*, *e.g.*, Ex. A & B), has partnered with resellers to offer for sale and sell the Accused TV Products in the United States (*see*, *e.g.*, Ex. C & D), generates revenue from sales of the Accused TV Products to U.S.

GARTEISER HONEA – TRIAL ATTORNEYS

customers via said channels (*see id.*); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Ex. F).

84.    The Accused TV Products infringe claims of the '011 Patent, such as Claim 36 which teaches:

> A device for conducting trusted transactions between at least two parties, comprising:
> > a steganographic cipher;
> > a controller for receiving input data or outputting output data; and
> > at least one input/output connection,
> > wherein the device has a device identification code stored in the device;
> > a steganographically ciphered software application;
> > wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization;
> > wherein said device is configured to steganographically cipher both value-added information and at least one value-added component associated with said value-added information;
> > wherein said steganographic cipher receives said output data, steganographically ciphers said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection.

Defendant's Accused TV Products include certain smart TVs that allow playback of Netflix and other streaming services. Netflix uses a digital rights management system called PlayReady is a method for authenticating the transmission of information between two entities by using unique device IDs and cryptographic keys (*conducting trusted transactions between at least two parties [by using] a device*

GARTEISER HONEA – TRIAL ATTORNEYS

*identification code stored in the device ... a steganographically ciphered software application; wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization; wherein said device is configured to steganographically cipher both value-added information and at least one value-added component associated with said value-added information; wherein said steganographic cipher receives said output data, steganographically ciphers said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection*). *See* Ex. L at 4 ("PlayReady secures content by encrypting data files. ... In order to decrypt these data files, a digital key is required.").

85. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '011 Patent in the State of California, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '011 Patent. Such products include, without limitation, one or more of the Accused TV Products. The infringing features or components in such products have no substantial non-infringing uses and are for use in systems that infringe the '011 Patent. *See, supra,* at 12, n. 1. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for

GARTEISER HONEA – TRIAL ATTORNEYS

infringement of the '011 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused TV Products. *See In re Bill of Lading*, 681 F.3d at 1336. Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality (*see*, *e.g.*, Ex. C & D). Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused TV Products.

86.    Defendant had knowledge of the '011 Patent at least as early as the service of Blue Spike's complaint against Defendant in the Eastern District of Texas, filed on January 30, 2017. *See* Case No. 6:17-cv-00060, Dkt. No. 1; *MyMedicalRecords*, 1 F.Supp.3d at 1025. That complaint also notified Defendant that the Accused TV Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Thus, Defendant is liable for infringement of one or more claims of the '011 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '011 Patent under 35 U.S.C. § 271.

87.    Defendant's acts of infringement of the '011 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages

42

GARTEISER HONEA – TRIAL ATTORNEYS

sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '011 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

88. On information and belief, the infringement of the '011 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '011 Patent, including but not limited to at least one or more of the following:

a. The filing of Blue Spike's complaint against Defendant in the Eastern District of Texas on January 30, 2017 (Case No. 6:17-cv-00060, Dkt. No. 1).

b. In the course of its due diligence and freedom to operate analysis.

c. And due diligence in relation to its prior litigation with Blue Spike.

On information and belief, Defendant has had at least had constructive notice of the '011 Patent by operation of law.

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a) enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)    enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's direct infringement of, contributory infringement of, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)    enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)    issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)    enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)    award Blue Spike all other relief that the Court may deem just and proper.

GARTEISER HONEA – TRIAL ATTORNEYS

44

# DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  California Bar No. 231821
  rgarteiser@ghiplaw.com
Christopher A. Honea
  California Bar No. 232473
  chonea@ghiplaw.com
Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
**GARTEISER HONEA PC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

*Counsel for Blue Spike LLC*

GARTEISER HONEA – TRIAL ATTORNEYS

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

/s/ Randall T. Garteiser
Randall T. Garteiser

GARTEISER HONEA – TRIAL ATTORNEYS

# EXHIBIT F

1  ADRIAN M. PRUETZ – State Bar No. 118215
   apruetz@glaserweil.com
2  REX HWANG – State Bar No. 221079
   rhwang@glaserweil.com
3  STEVEN P. BASILEO – State Bar No. 157780
   sbasileo@glaserweil.com
4  DESMOND JUI – State Bar No. 262200
   djui@glaserweil.com
5  GUY M. RODGERS – State Bar No. 303229
   grodgers@glaserweil.com
6  GLASER WEIL FINK HOWARD
     AVCHEN & SHAPIRO LLP
7  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
8  Telephone:  (310) 553-3000
   Facsimile:  (310) 556-2920
9
   Attorneys for Defendant VIZIO, Inc.
10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                  SOUTHERN DIVISION

| | |
|---|---|
| 14  Blue Spike, LLC, | CASE NO.: 8:17-cv-1172-DOC-KES |
| 15                        Plaintiff, | Hon. David O. Carter |
| 16  v. | **DEFENDANT VIZIO, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF BLUE SPIKE, LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |
| 17  VIZIO, Inc., | |
| 18                        Defendant. | |
| 19 | |

*Glaser Weil*

1457488

discovery outweighs its likely benefit.  Additionally, this Request seeks discovery into emails, and email discovery is not proportional to the needs of this case.  Based on the Complaint, this lawsuit appears to relate to applications and instrumentalities developed by third parties.  Thus, VIZIO's documents, and particularly its emails, will not be relevant to any claim or defense in this case.  Accordingly, VIZIO will not agree to produce any emails unless and until Blue Spike explains with specificity what emails are being sought, and why those emails are relevant to this matter and also proportional to the needs of this case.

VIZIO objects to this Request to the extent that it seeks information that is not within VIZIO's possession, custody, or control.

VIZIO further objects to this Request to the extent it seeks disclosure of Third Party Confidential Information.

VIZIO is willing to meet and confer to better understand the scope and relevance of this Request.  VIZIO reserves the right to make further objections to this Request.  It is also noted that based on VIZIO's current understanding of Blue Spike's infringement allegations, Blue Spike's infringement theories are directed to applications and functionalities developed and maintained by third parties.  Thus, documents responsive to this Request are in the possession of third parties, not VIZIO.

**DOCUMENT REQUEST NO. 16:**

Please produce all documents, including correspondence, email or data in electronic form, referring or related to the structure, operation, function or performance of the Accused Product and/or its components, including all source code, user guides, reference manuals, product manuals, product descriptions, technician's guides, installation guides, technical manuals, software manuals, screen shots and datasheets.

**RESPONSE TO DOCUMENT REQUEST NO. 16:**

VIZIO incorporates its General Objections as if fully set forth herein.

VIZIO further objects to this Request to the extent it calls for disclosure of documents protected by a Privilege.

VIZIO further objects to this Request to the extent it requires disclosure of confidential information before a protective order is entered in this case.  VIZIO will agree to produce its confidential documents once the Court enters a protective order in this case.

VIZIO further objects to this Request as vague and ambiguous as to the term "Accused Product."  To date, Blue Spike has failed to specifically identify the products accused of infringement, including the model numbers of those accused products, and that information is needed before VIZIO can reasonably respond to this Request.  Moreover, this lawsuit has nothing to do with vehicle tracking systems. VIZIO will not produce documents relating to vehicle tracking systems.

VIZIO further objects to this Request as to the phrase "data in electronic form." It is uncertain what that data would include, aside from emails, and VIZIO will not produce those types of "documents or things" absent further clarification.

VIZIO further objects to this Request to the extent it seeks information not relevant to any claim or defense or proportional to the needs of the case.  This particular Request is objectionable because the proposed discovery is not important in resolving the issues in this action, and the burden or expense of the proposed discovery outweighs its likely benefit.  For example, this Request seeks information about the structure and function of VIZIO's televisions as a whole.  But that is well beyond the scope of this lawsuit.  Additionally, this Request seeks discovery into emails, and email discovery is not proportional to the needs of this case.  Based on the Complaint, this lawsuit appears to relate to applications and instrumentalities developed by third parties.  Thus, VIZIO's documents, and particularly its emails, will not be relevant to any claim or defense in this case.  Accordingly, VIZIO will not agree to produce any emails unless and until Blue Spike explains with specificity what emails are being sought, and why those emails are relevant to this matter and

Glaser Weil

1  also proportional to the needs of this case.

2  VIZIO objects to this Request to the extent that it seeks information that is not

3  within VIZIO's possession, custody, or control.

4  VIZIO further objects to this Request to the extent it seeks disclosure of Third

5  Party Confidential Information.

6  VIZIO is willing to meet and confer to better understand the scope and

7  relevance of this Request. VIZIO reserves the right to make further objections to this

8  Request. It is also noted that based on VIZIO's current understanding of Blue Spike's

9  infringement allegations, Blue Spike's infringement theories are directed to

10  applications and functionalities developed and maintained by third parties. Thus,

11  documents responsive to this Request are likely in the possession of third parties, not

12  VIZIO.

13  **DOCUMENT REQUEST NO. 17:**

14  Please produce all documents, including correspondence, email or data in

15  electronic form, referring or related to any instructions, information or directions

16  Defendant provides to any of its customers concerning how to use, install or operate

17  the Accused Product.

18  **RESPONSE TO DOCUMENT REQUEST NO. 17:**

19  VIZIO incorporates its General Objections as if fully set forth herein.

20  VIZIO further objects to this Request to the extent it calls for disclosure of

21  documents protected by a Privilege.

22  VIZIO further objects to this Request to the extent it requires disclosure of

23  confidential information before a protective order is entered in this case. VIZIO will

24  agree to produce its confidential documents once the Court enters a protective order

25  in this case.

26  VIZIO further objects to this Request as vague and ambiguous as to the term

27  "Accused Product." To date, Blue Spike has failed to specifically identify the

28  products accused of infringement, including the model numbers of those accused

Glaser Weil

particular Request is objectionable because the proposed discovery is not important in resolving the issues in this action, and the burden or expense of the proposed discovery outweighs its likely benefit.  For example, this Request seeks information about the advantages, benefits, and features of VIZIO's televisions as a whole regardless of whether or not those advantages, benefits, or features are related to the technology of the asserted patents.  But that is well beyond the scope of this lawsuit. Additionally, this Request seeks discovery into emails, and email discovery is not proportional to the needs of this case.  Based on the Complaint, this lawsuit appears to relate to applications and instrumentalities developed by third parties.  Thus, VIZIO's documents, and particularly its emails, will not be relevant to any claim or defense in this case.  Accordingly, VIZIO will not agree to produce any emails unless and until Blue Spike explains with specificity what emails are being sought, and why those emails are relevant to this matter and also proportional to the needs of this case.

VIZIO objects to this Request to the extent that it seeks information that is not within VIZIO's possession, custody, or control.

VIZIO further objects to this Request to the extent it seeks disclosure of Third Party Confidential Information.

VIZIO is willing to meet and confer to better understand the scope and relevance of this Request.  VIZIO reserves the right to make further objections to this Request.  It is also noted that based on VIZIO's current understanding of Blue Spike's infringement allegations, Blue Spike's infringement theories are directed to applications and functionalities developed and maintained by third parties.  Thus, documents responsive to this Request are in the possession of third parties, not VIZIO.

**DOCUMENT REQUEST NO. 22:**

Please produce any documents that Defendant contends is material to the scope, interpretation, validity, infringement or enforceability of the above listed patents or any claim of any of the above listed patents since January 1, 2016.

Glaser Weil

1457488

1    Party Confidential Information.

2        VIZIO is willing to meet and confer to better understand the scope and

3    relevance of this Request.  VIZIO reserves the right to make further objections to this

4    Request.  It is also noted that based on VIZIO's current understanding of Blue Spike's

5    infringement allegations, Blue Spike's infringement theories are directed to

6    applications and functionalities developed and maintained by third parties.  Thus,

7    documents responsive to this Request are likely in the possession of third parties, not

8    VIZIO.

9    **DOCUMENT REQUEST NO. 28:**

10       Source code related to all Vizio's Smart Televisions imported into the U.S.

11   since January 1, 2018.

12   **RESPONSE TO DOCUMENT REQUEST NO. 28:**

13       VIZIO incorporates its General Objections as if fully set forth herein.

14       VIZIO further objects to this Request to the extent it seeks information not

15   relevant to any claim or defense or proportional to the needs of the case.  This

16   particular Request is objectionable because the proposed discovery is not important in

17   resolving the issues in this action, and the burden or expense of the proposed

18   discovery outweighs its likely benefit.  For example, this Request is not reasonably

19   limited to any accused products, the functionality or features that are accused of

20   infringement, or limited to the technology claimed in the asserted patents.

21       VIZIO further objects to this Request to the extent it is vague and ambiguous as

22   to the phrase "Source code related to all Vizio's Smart Televisions."  It is entirely

23   unclear what source code is being requested here.

24       VIZIO further objects to this Request to the extent it requires disclosure of

25   confidential information before a protective order is entered in this case.  VIZIO will

26   agree to produce its confidential documents once the Court enters a protective order

27   in this case.

28       VIZIO objects to this Request to the extent that it seeks information that is not

1457488

Glaser Weil

1   within VIZIO's possession, custody, or control.  Most of the source code in VIZIO's

2   televisions is controlled by various third parties, not VIZIO.

3       VIZIO further objects to this Request to the extent it seeks disclosure of Third

4   Party Confidential Information.

5       VIZIO is willing to meet and confer to better understand the scope and

6   relevance of this Request.  VIZIO reserves the right to make further objections to this

7   Request.  It is also noted that based on VIZIO's current understanding of Blue Spike's

8   infringement allegations, Blue Spike's infringement theories are directed to

9   applications and functionalities developed and maintained by third parties.  Thus,

10  documents responsive to this Request are likely in the possession of third parties, not

11  VIZIO.

12  **DOCUMENT REQUEST NO. 29:**

13      Source code related to Vizio's Tablets streaming of audio and/or video content

14  since January 1, 2018.

15  **RESPONSE TO DOCUMENT REQUEST NO. 29:**

16      VIZIO incorporates its General Objections as if fully set forth herein.

17      VIZIO further objects to this Request to the extent it seeks information not

18  relevant to any claim or defense or proportional to the needs of the case.  This

19  particular Request is objectionable because the proposed discovery is not important in

20  resolving the issues in this action, and the burden or expense of the proposed

21  discovery outweighs its likely benefit.  For example, this Request is not reasonably

22  limited to any accused products, the functionality or features that are accused of

23  infringement, or limited to the technology claimed in the asserted patents.

24      VIZIO further objects to this Request to the extent it is vague and ambiguous as

25  to the phrase "Source code related to all Vizio's Tablets."  It is entirely unclear what

26  source code is being requested here.

27      VIZIO further objects to this Request to the extent it requires disclosure of

28  confidential information before a protective order is entered in this case.  VIZIO will

Glaser Weil

1  agree to produce its confidential documents once the Court enters a protective order

2  in this case.

3      VIZIO objects to this Request to the extent that it seeks information that is not

4  within VIZIO's possession, custody, or control.  Most of the source code in VIZIO's

5  televisions is controlled by various third parties, not VIZIO.

6      VIZIO further objects to this Request to the extent it seeks disclosure of Third

7  Party Confidential Information.

8      VIZIO is willing to meet and confer to better understand the scope and

9  relevance of this Request.  VIZIO reserves the right to make further objections to this

10  Request.  It is also noted that based on VIZIO's current understanding of Blue Spike's

11  infringement allegations, Blue Spike's infringement theories are directed to

12  applications and functionalities developed and maintained by third parties.  Thus,

13  documents responsive to this Request are likely in the possession of third parties, not

14  VIZIO.

15  **DOCUMENT REQUEST NO. 30:**

16      Source code related to Vizio's Smart Televisions and Tablets streaming

17  functionality of audio and/or video content.

18  **RESPONSE TO DOCUMENT REQUEST NO. 30:**

19      VIZIO incorporates its General Objections as if fully set forth herein.

20      VIZIO further objects to this Request to the extent it seeks information not

21  relevant to any claim or defense or proportional to the needs of the case.  This

22  particular Request is objectionable because the proposed discovery is not important in

23  resolving the issues in this action, and the burden or expense of the proposed

24  discovery outweighs its likely benefit.  For example, this Request is not reasonably

25  limited to any accused products, the functionality or features that are accused of

26  infringement, or limited to the technology claimed in the asserted patents.

27      VIZIO further objects to this Request to the extent it is vague and ambiguous as

28  to the phrase "Source code related to all Vizio's Smart Televisions and Tablets."  It is

**Glaser Weil**

1  entirely unclear what source code is being requested here.

2      VIZIO further objects to this Request to the extent it requires disclosure of

3  confidential information before a protective order is entered in this case.  VIZIO will

4  agree to produce its confidential documents once the Court enters a protective order

5  in this case.

6      VIZIO objects to this Request to the extent that it seeks information that is not

7  within VIZIO's possession, custody, or control.  Most of the source code in VIZIO's

8  televisions is controlled by various third parties, not VIZIO.

9      VIZIO further objects to this Request to the extent it seeks disclosure of Third

10  Party Confidential Information.

11      VIZIO is willing to meet and confer to better understand the scope and

12  relevance of this Request.  VIZIO reserves the right to make further objections to this

13  Request.  It is also noted that based on VIZIO's current understanding of Blue Spike's

14  infringement allegations, Blue Spike's infringement theories are directed to

15  applications and functionalities developed and maintained by third parties.  Thus,

16  documents responsive to this Request are likely in the possession of third parties, not

17  VIZIO.

18  **DOCUMENT REQUEST NO. 31:**

19      All notes related to revisions to the source code related to the streaming

20  functionality since January 1, 2016 for Vizio's Smart Televisions and Tablets.

21  **RESPONSE TO DOCUMENT REQUEST NO. 31:**

22      VIZIO incorporates its General Objections as if fully set forth herein.

23      VIZIO further objects to this Request to the extent it seeks information not

24  relevant to any claim or defense or proportional to the needs of the case.  This

25  particular Request is objectionable because the proposed discovery is not important in

26  resolving the issues in this action, and the burden or expense of the proposed

27  discovery outweighs its likely benefit.  For example, this Request is not reasonably

28  limited to any accused products, the functionality or features that are accused of

VIZIO'S OBJECTIONS AND RESPONSES TO BLUE SPIKE'S FIRST SET OF RFPs

1457488

1  infringement, or limited to the technology claimed in the asserted patents.

2      VIZIO further objects to this Request to the extent it is vague and ambiguous as

3  to the phrase "source code related to the streaming functionality since January 1, 2016

4  for Vizio's Smart Televisions and Tablets."  It is entirely unclear what source code is

5  being requested here.

6      VIZIO further objects to this Request to the extent it requires disclosure of

7  confidential information before a protective order is entered in this case.  VIZIO will

8  agree to produce its confidential documents once the Court enters a protective order

9  in this case.

10      VIZIO objects to this Request to the extent that it seeks information that is not

11  within VIZIO's possession, custody, or control.  Most of the source code in VIZIO's

12  televisions is controlled by various third parties, not VIZIO.

13      VIZIO further objects to this Request to the extent it seeks disclosure of Third

14  Party Confidential Information.

15      VIZIO is willing to meet and confer to better understand the scope and

16  relevance of this Request.  VIZIO reserves the right to make further objections to this

17  Request.  It is also noted that based on VIZIO's current understanding of Blue Spike's

18  infringement allegations, Blue Spike's infringement theories are directed to

19  applications and functionalities developed and maintained by third parties.  Thus,

20  documents responsive to this Request are likely in the possession of third parties, not

21  VIZIO.

22  **DOCUMENT REQUEST NO. 32:**

23      Documents explaining the differences in the versions of the source code and/or

24  programming code for Vizio's Smart Televisions and Tablets since January 1, 2016.

25  **RESPONSE TO DOCUMENT REQUEST NO. 32:**

26      VIZIO incorporates its General Objections as if fully set forth herein.

27      VIZIO further objects to this Request to the extent it seeks information not

28  relevant to any claim or defense or proportional to the needs of the case.  This

*Glaser Weil*

40

1457488

particular Request is objectionable because the proposed discovery is not important in resolving the issues in this action, and the burden or expense of the proposed discovery outweighs its likely benefit. For example, this Request is not reasonably limited to any accused products, the functionality or features that are accused of infringement, or limited to the technology claimed in the asserted patents.

VIZIO further objects to this Request to the extent it is vague and ambiguous as to the phrase "Documents explaining the differences in the versions of the source code and/or programming code for Vizio's Smart Televisions and Tablets since January 1, 2016." It is entirely unclear what differences are being discussed here, and if those differences are within the scope of this action.

VIZIO further objects to this Request to the extent it requires disclosure of confidential information before a protective order is entered in this case. VIZIO will agree to produce its confidential documents once the Court enters a protective order in this case.

VIZIO objects to this Request to the extent that it seeks information that is not within VIZIO's possession, custody, or control. Most of the source code in VIZIO's televisions is controlled by various third parties, not VIZIO.

VIZIO further objects to this Request to the extent it seeks disclosure of Third Party Confidential Information.

VIZIO is willing to meet and confer to better understand the scope and relevance of this Request. VIZIO reserves the right to make further objections to this Request. It is also noted that based on VIZIO's current understanding of Blue Spike's infringement allegations, Blue Spike's infringement theories are directed to applications and functionalities developed and maintained by third parties. Thus, documents responsive to this Request are likely in the possession of third parties, not VIZIO.

**DOCUMENT REQUEST NO. 33:**

Documents listing the versions of the source code and/or programming code for

Glaser Weil

1457488

Vizio's Smart Televisions and Tablets since January 1, 2016.

**RESPONSE TO DOCUMENT REQUEST NO. 33:**

VIZIO incorporates its and General Objections as if fully set forth herein.

VIZIO further objects to this Request to the extent it seeks information not relevant to any claim or defense or proportional to the needs of the case.  This particular Request is objectionable because the proposed discovery is not important in resolving the issues in this action, and the burden or expense of the proposed discovery outweighs its likely benefit.  For example, this Request is not reasonably limited to any accused products, the functionality or features that are accused of infringement, or limited to the technology claimed in the asserted patents.

VIZIO further objects to this Request to the extent it is vague and ambiguous as to the phrase "Documents listing the versions of the source code and/or programming code for Vizio's Smart Televisions and Tablets since January 1, 2016."  It is unclear what source code is being referenced here.

VIZIO further objects to this Request to the extent it requires disclosure of confidential information before a protective order is entered in this case.  VIZIO will agree to produce its confidential documents once the Court enters a protective order in this case.

VIZIO objects to this Request to the extent that it seeks information that is not within VIZIO's possession, custody, or control.  Most of the source code in VIZIO's televisions is controlled by various third parties, not VIZIO.

VIZIO further objects to this Request to the extent it seeks disclosure of Third Party Confidential Information.

VIZIO is willing to meet and confer to better understand the scope and relevance of this Request.  VIZIO reserves the right to make further objections to this Request.  It is also noted that based on VIZIO's current understanding of Blue Spike's infringement allegations, Blue Spike's infringement theories are directed to applications and functionalities developed and maintained by third parties.  Thus,

VIZIO'S OBJECTIONS AND RESPONSES TO BLUE SPIKE'S FIRST SET OF RFPs

1457488

Glaser Weil

1  documents responsive to this Request are likely in the possession of third parties, not

2  VIZIO.

3

4  DATED:  March 26, 2018                    Respectfully submitted,

5                                            GLASER WEIL FINK HOWARD
                                                AVCHEN & SHAPIRO LLP

6

7                                            By: /s/ Rex Hwang
                                             ADRIAN M. PRUETZ

8                                            REX HWANG

9                                            GUY M. RODGERS

10                                           *Attorneys for Defendant VIZIO, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Glaser Weil**

VIZIO'S OBJECTIONS AND RESPONSES TO BLUE SPIKE'S FIRST SET OF RFPs

1457488

# EXHIBIT G

Randall T. Garteiser, Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea, Texas Bar No. 24059967
chonea@ghiplaw.com
Kirk J. Anderson, California Bar No. 289043
kanderson@ghiplaw.com
Ian Ramage, California Bar No. 224881
iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
795 Folsom St, Floor 1, San Francisco, CA  94107-4226
Telephone: (903) 705-7420

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| BLUE SPIKE LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>VIZIO, INC.,<br><br>        Defendant | Case No.: 8:17-cv-1172-DOC-KES<br><br>BLUE SPIKE LLC'S OBJECTIONS AND RESPONSES TO VIZIO INC.'S SECOND SET OF INTERROGATORIES |

Plaintiff, Blue Spike LLC ("Blue Spike"), by and through its counsel, responds and objects to Defendant Vizio, Inc's ("Vizio") First Set of Interrogatories, pursuant to Fed. R. Civ. P. 26 and 33 and Local Court Rule CV-26. Blue Spike has not yet completed its discovery and investigation with respect to many of the issues raised. Therefore, these responses are based on Blue Spike's present knowledge, and are given without prejudice to Blue Spike's right to

BLUE SPIKE LLC'S OBJECTIONS AND RESPONSES TO VIZIO INC.'S SECOND SET OF INTERROGATORIES - 1

**OUTSIDE ATTORNEYS' EYES ONLY – HIGHLY CONFIDENTIAL**

relating to the license, sale, offer to license or offer for sale. To the extent You contend that any effort to license or sell the Patents-in-Suit (or any negotiations thereof) is privileged, please identify and describe the basis for asserting that privilege and identity of all persons and/or entities involved. Your response to this Interrogatory should include any knowledge You have of any efforts to license or sell or otherwise exploit one or more of the Patents-in-Suit, including before, during and after Your acquisition of the Patents-in-Suit.

**RESPONSE TO INTERROGATORY NO. 4:**

Blue Spike incorporates its General Objections and further objects to this Interrogatory as overbroad and unduly burdensome. Blue Spike further objects to the phrase "and describe in detail all efforts to license or sell or otherwise exploit each of the Patents-in-Suit" as overbroad and unduly burdensome.  Blue Spike agrees to address a proportional response to this request at the parties meet and confer.  Blue Spike further objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product privilege, the settlement privilege, and/or any other applicable privilege or protection. Blue Spike additionally objects to this Interrogatory to the extent it seeks information in the possession, custody, and control of third parties. Blue Spike further objects to this Interrogatory to the extent that it seeks expert discovery and is premature under the Federal Rules of Civil Procedure, the Local Rules of U.S. District Court for the Eastern District of Texas, and the schedule set forth by the Court. As this district has held, "the district's local patent rules do not require early disclosure of expert opinions through interrogatory." *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc., et al,* Case No. 2:16-cv- 00052-JRG-RSP, at Dkt. 337, Order (E.D. Texas Aug. 25, 2017) (*citing Promethean Insulation Tech. LLC v. Sealed Air Corp.,* 2015 WL 11027038, at *2

BLUE SPIKE LLC'S OBJECTIONS AND RESPONSES TO VIZIO INC.'S SECOND SET OF INTERROGATORIES - 7

**OUTSIDE ATTORNEYS' EYES ONLY – HIGHLY CONFIDENTIAL**

protection. Blue Spike additionally objects to this Interrogatory to the extent it seeks information in the possession, custody, and control of third parties. Blue Spike further objects to this Interrogatory to the extent that it seeks expert discovery and is premature under the Federal Rules of Civil Procedure, the Local Rules of U.S. District Court for the Eastern District of Texas, and the schedule set forth by the Court. As this district has held, "the district's local patent rules do not require early disclosure of expert opinions through interrogatory." *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc., et al,* Case No. 2:16-cv- 00052-JRG-RSP, at Dkt. 337, Order (E.D. Texas Aug. 25, 2017) (*citing Promethean Insulation Tech. LLC v. Sealed Air Corp.,* 2015 WL 11027038, at *2 (E.D. Tex. Oct. 13, 2015)). As such, Blue Spike expressly reserves the right to supplement its response to this Interrogatory through expert discovery.

Blue Spike has identified some of this information in its initial disclosures to Defendant and will update as more information becomes available.   This interrogatory is almost a page long and will not be responded to unless Vizio agrees to first re-serve it as at least 5 separate interrogatories. Blue Spike has had settlements with no admission of infringement.  As such, there is no marking requirement for any of the patents-in-suit.  Any additional response will require Vizio to re-serve it as five more understandable interrogatories, especially when it comes to the term "Family Tree" as these patents incorporate multiple other patents/applications into a specific patent disclosure. So it's confusingly limited to define a "Family Tree" as defined by Vizio and its overly broad and impossible to complete a family tree if all the patents/applications incorporated by reference are included in a "Family Tree."

**INTERROGATORY NO. 6:**

BLUE SPIKE LLC'S OBJECTIONS AND RESPONSES TO VIZIO INC.'S SECOND SET OF INTERROGATORIES - 15

OUTSIDE ATTORNEYS' EYES ONLY – HIGHLY CONFIDENTIAL

it calls for information protected by the attorney-client privilege, the attorney work-product

privilege, the settlement privilege, and/or any other applicable privilege or protection. Blue Spike

further objects to this Interrogatory to the extent that it seeks expert discovery and is premature

under the Federal Rules of Civil Procedure, the Local Rules of U.S. District Court for the Eastern

District of Texas, and the schedule set forth by the Court. As this district has held, "the district's

local patent rules do not require early disclosure of expert opinions through interrogatory."

*Huawei Technologies Co. Ltd. v. T-Mobile US, Inc., et al,* Case No. 2:16-cv- 00052-JRG-RSP, at

Dkt. 337, Order (E.D. Texas Aug. 25, 2017) (*citing Promethean Insulation Tech. LLC v. Sealed*

*Air Corp.,* 2015 WL 11027038, at *2 (E.D. Tex. Oct. 13, 2015)). As such, Blue Spike expressly

reserves the right to supplement its response to this Interrogatory through expert discovery.


**INTERROGATORY NO. 10:**

Identify and describe in detail the reasons for Your formation, including but not limited to

Your business purposes, Your founders, executives, officers, and/or directors, Your sources of

revenue, Your employees, partners, potential partners, or persons working on Your behalf who

are involved in searching for, performing due diligence on, purchasing, licensing, asserting,

enforcing, and/or licensing any patent, Your financial obligations, investors, and/or

stakeholders, and all mechanisms for avoiding or minimizing liability.

**RESPONSE TO INTERROGATORY NO. 10:**

Blue Spike incorporates its General Objections and further objects to this Interrogatory as

overbroad and unduly burdensome. Blue Spike further objects to the phrase "searching for,

performing due diligence on, purchasing, licensing, asserting, enforcing, and/or licensing any

BLUE SPIKE LLC'S OBJECTIONS AND RESPONSES TO VIZIO INC.'S SECOND SET OF
INTERROGATORIES - 21

**OUTSIDE ATTORNEYS' EYES ONLY – HIGHLY CONFIDENTIAL**

patent" as vague and ambiguous. Blue Spike further objects to this Interrogatory to the extent it calls for information that is not relevant to this litigation and information that is protected by the attorney-client privilege, the attorney work-product privilege, the settlement privilege, and/or any other applicable privilege or protection. Blue Spike additionally objects to this Interrogatory to the extent it seeks information in the possession, custody, and control of third parties. Blue Spike further objects to this Interrogatory to the extent that it seeks expert discovery and is premature under the Federal Rules of Civil Procedure, the Local Rules of U.S. District Court for the Eastern District of Texas, and the schedule set forth by the Court. As this district has held, "the district's local patent rules do not require early disclosure of expert opinions through interrogatory." *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc., et al,* Case No. 2:16-cv-00052-JRG-RSP, at Dkt. 337, Order (E.D. Texas Aug. 25, 2017) (*citing Promethean Insulation Tech. LLC v. Sealed Air Corp.,* 2015 WL 11027038, at *2 (E.D. Tex. Oct. 13, 2015)). As such, Blue Spike expressly reserves the right to supplement its response to this Interrogatory through expert discovery.

Subject to and without waiving its general and specific objections, Blue Spike responds as follows:

Founder of Blue Spike LLC, Scott Moskowitz, filed his very first patents relating to digital watermarking in 1995, at the time little more than an academic curiosity with maybe a handful of practitioners who understood what it meant and the applications it could create. Today Blue Spike stands astride an estate of more than a dozen patents related to digital watermarking, it is marketing software that animates the patented innovations, and it is leading industrial discussions on the development of digital watermarking standards for protecting recorded music.

BLUE SPIKE LLC'S OBJECTIONS AND RESPONSES TO VIZIO INC.'S SECOND SET OF INTERROGATORIES - 22

**OUTSIDE ATTORNEYS' EYES ONLY – HIGHLY CONFIDENTIAL**

rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
Kirk J. Anderson
   California Bar No. 289043
   kanderson@ghiplaw.com
Ian Ramage
   California Bar No. 224881
   iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
   119 W. Ferguson Street
   Tyler, Texas 75702
   Telephone: (903) 705-7420
   Facsimile: (888) 908-4400

*Counsel for Blue Spike LLC*

**Certificate of Service**

The undersigned certifies that the foregoing document was served electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

/s/ Randall Garteiser

BLUE SPIKE LLC'S OBJECTIONS AND RESPONSES TO VIZIO INC.'S SECOND SET OF
INTERROGATORIES - 24

**OUTSIDE ATTORNEYS' EYES ONLY – HIGHLY CONFIDENTIAL**

# EXHIBIT H

RANDALL T. GARTEISER – SBN 231821
rgarteiser@ghiplaw.com
CHRISTOPHER A. HONEA – SBN 232473
chonea@ghiplaw.com
KIRK J. ANDERSON – State Bar No. 289043
kanderson@ghiplaw.com
GARTEISER HONEA, P.C.
119 W. Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

*Attorneys for Plaintiff Blue Spike, LLC*

ADRIAN M. PRUETZ – State Bar No. 118215
apruetz@glaserweil.com
REX HWANG – State Bar No. 221079
rhwang@glaserweil.com
GUY M. RODGERS – State Bar No. 303229
grodgers@glaserweil.com
GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

*Attorneys for Defendant VIZIO, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| Blue Spike, LLC,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>VIZIO, Inc.,<br><br>　　　　　　　Defendant. | CASE NO.: 8:17-cv-1172-DOC-KES<br><br>Hon. David O. Carter<br><br>**JOINT RULE 26(f) REPORT**<br><br>DATE:  January 16, 2018<br>TIME:  8:30 a.m.<br>COURTROOM:  9D |

1435973

1    Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and the Order

2    Setting Scheduling Conference (ECF No. 28), Plaintiff Blue Spike, LLC ("Blue

3    Spike") and Defendant VIZIO, Inc. ("VIZIO") (individually "Party" and collectively

4    "Parties") jointly submit this Joint Rule 26(f) Report.  Counsel for the Parties met and

5    conferred telephonically on December 15, 2017.  Blue Spike was represented by its

6    lead counsel Randall Garteiser.  VIZIO was represented by its co-lead counsel Rex

7    Hwang and also his colleague Guy Rodgers.

8    **A.    Short Factual Summary of the Case and of Claims and Defenses**

9        **1.    Blue Spike's Statement**

10    Blue Spike's principle inventor is Scott Moskowitz, who is still involved with

11    the company today. He is an IEEE fellow. Like Microsoft's founder, he does not have

12    a degree in computer programming.  Starting in the 1990s Blue Spike's cutting edge

13    technology lead to the United States Patent and Trademark Office issuing Blue Spike

14    over 110 patents with Scott Moskowiz listed as an inventor on all of them.  His vision

15    and foresight is legendary to companies like Apple, IBM, Toshiba, Samsung, Shazam,

16    Acer, Dell, Nielsen, Kudelski and Panasonic.  In 1990s, Blue Spike went through the

17    difficult task of trying to compete with foreign companies subsidized by governments

18    that allowed them to compete in the U.S. market place with anticompetitive pricing.

19    At the time, there was not enough money in the budget to compete and also finance

20    stopping all its patent infringers.  At the time, Vizio was not even known in the U.S.

21    Today, these patents are what remain of original U.S. investors' money and

22    faith that they had the best technology and a brilliant person that they trusted their

23    money with.  Also, Blue Spike is not an NPE as Vizio seems to paint it with regards

24    to watermarking technology, and its other products and services offered at

25    www.bluepike.com.

26    This patent infringement litigation involves 3 families of patents: Address

27    Space Layout Randomization ("ASLR"), Secure Servers and Trusted Transactions.

28    Vizio's accused functionality in its accused products is explained in detail in the

operative complaint.

## **The Blue Spike ASLR Patents.**

The ASLR patent family relates to keeping a computer safe from unauthorized copying, unauthorized use, or unintended use of a software application, collectively "copy protecting." The infringing ASLR technology has a core kernel that is publicly available. So unless Vizio claims it made modifications to it, there is no source code for Vizio to produce with respect to ASLR. ASLR not only protects software on the machine it ensures that applications are not hacked into to perform tasks without permission from the owner.

## **The Blue Spike Secure Servers Patents.**

The Secure Server patents relate to patented methods to exchange digital information with a serve in a secure manner. The accused functionality is the source code related to accepting and sending secure digital information from or to a server.

## **The Blue Spike Trusted Transaction Patents.**

Equally valuable with on-line persons attempting to conduct business transactions on-line but not knowing if the other party or computer can be trusted, Blue Spike has created and patented methods to conduct trusted transactions. Vizio's accused products contain functionality that allows for certain transactions to occur on-line involving the transfer of information. Vizio's source code to the operating of these transactions is relevant and responsive discovery in this litigation.

### 2.      **VIZIO's Statement**

Blue Spike alleges that VIZIO infringes seven patents, which can be categorized into three groups: U.S. Patent Nos. 5,745,569, and 8,930,719 (collectively "ASLR Patents"); U.S. Patent Nos. 7,475,246, 8,171,561, and 8,739,295 (collectively "Secure Server Patents"); and U.S. Patent Nos. 7,159,116 and 8,538,011 (collectively "Trusted Transaction Patents") (all patents collectively the "Patents-in-Suit").

Blue Spike is believed to be a non-practicing entity that has brought approximately 30 actions across the country asserting the same or a subset of the

Patents-in-Suit.  Those cases have implicated an extremely broad range of products, including, but not limited to, televisions, tablet computers, personal computers, routers, watermarking software, virtual currency, smartphones, telephone servers, streaming media players, and digital rewards programs.  Blue Spike has essentially taken the position that any product involving security measures infringes its patents.

As detailed in VIZIO's Answer to Blue Spike's First Amended Complaint, ECF No. 32, VIZIO asserts that the Patents-in-Suit are invalid and/or not-infringed by any accused VIZIO products.  VIZIO further asserts that Blue Spike's claims for relief are barred in whole or in part by the doctrine of prosecution history estoppel and/or the equitable doctrines of waiver, implied waiver, acquiescence, equitable estoppel, promissory estoppel, patent misuse, unfair competition, unclean hands and/or other equitable remedies.  Blue Spike is also limited in its right to seek damages for alleged infringement pursuant to 35 U.S.C. §§ 286, 287, and/or 288, and is not entitled to enhanced damaged under 35 U.S.C. § 284.  VIZIO further asserts that Blue Spike's right to seek damages is limited due to a failure to provide notice of alleged infringement of any of the Patents-in-Suit.  Blue Spike's claims are also barred in whole or in part and Blue Spike is limited in its right to seek damages under the doctrine of patent exhaustion, due to license(s) to any of the Patents-in-Suit to third party manufacturers of components contained within the accused products, and/or due to an express release of its rights to sue for patent infringement.  Blue Spike's claims are further barred in whole or in part because VIZIO is not liable for the acts of others over whom it has no control.  Blue Spike's claims are further barred in whole or in part because Blue Spike has no standing to bring a lawsuit on one or more of the Patents-in-Suit.  VIZIO also asserted that Blue Spike's claims as to the ASLR Patents are barred under the two dismissal rules based on its two prior voluntary dismissals under Federal Rule of Civil Procedure 41(a)(1)(A)(i), but this Court denied VIZIO's motion to dismiss these claims.  VIZIO filed a writ petition on this issue in the Court of Appeals for the Federal Circuit and a decision is pending.

1435973

**B.     A Short Synopsis of the Principal Issues in the Case**

**1.     Blue Spike's Statement**

Blue Spike is concerned about Vizio's zealous advocacy causing unnecessary delays with discovery. For example, Blue Spike has requested examination of the source code for the accused Vizio products.  Pursuant to Rule 1, Blue Spike wants to streamline discovery.  Fed. R. Civ. P. 1.  If the source code indicates a flaw with the publicly available information supporting Blue Spike's allegation of Vizio's patent infringement, Blue Spike wants to know at the earliest possible point to reduce costs and mitigate Vizio's allegations that this case is exceptional under Section 285.

But even though Vizio took part in a zealous round of pleading motions, including a Writ for interlocutory relief, Vizio's counsel has already stated that it "does not have enough information in the Complaint to know how Vizio's products infringe such that it cannot produce the source code for the accused products."  Blue Spike disagrees. But believes this is a sign of discovery disputes to come.

After forcing Blue Spike's hand to file in this district, now Vizio is requesting that Blue Spike agree to adopt patent rules from E.D. Texas.  This appears to be nothing more than a pretext to delay production of its source code.  But Vizio already knows the method of infringement from the Amended Complaint that was vigorously vetted by Vizio.[1]

This again is a sign of the problems to come with Vizio, an infringer that doesn't want to proceed with getting to the merits but instead wants to create every obstacle possible to getting to the merits. Blue Spike believes, like the problems of delay it is encountering with getting a protective order agreed to with Vizio in this case, Vizio is simply trying to create an obstacle to justify not producing documents.

---

[1] Vizio's unusual Writ is not even case dispositive as it impacts just two of the seven patents infringed in this lawsuit.  But it highlights the need to have a discovery referee where loser pays, as Vizio has already embarked on a litigation spending campaign with no accountability for its disregard for Rule 1 – a just and speedy resolution of the dispute on the merits.

4

1435973

Vizio will no doubt argue Blue Spike's "infringement contentions" are not sufficient to inform it. After a year of arguing over pleading motions with Vizio, Blue Spike needs inspection of the source code to prove or disprove its allegations of patent infringement.

Blue Spike is requesting a discovery referee be assigned to this case with a loser pay provision in place. Tellingly, Vizo likes to paint Blue Spike in a negative light as some NPE that has asserted over 30 lawsuits. But Vizio knows that Blue Spike has licensees that did not need to be sued, unlike Vizio, whose licensing practices appears to be that of a serial infringer, with reckless regard to the patent rights of others.

### 2. **VIZIO's Statement**

The principal legal issues in this Case include at least the following:

- The proper construction of the claims of the Patents-in-Suit;
- Whether the Patents-in-Suit are invalid and/or unenforceable;
- Whether the accused products infringe the Patents-in-Suit;
- Whether VIZIO is liable for willful infringement;
- Whether Blue Spike's claims for relief are barred in whole or in part by any equitable remedies;
- Whether any alleged damages are limited under 35 U.S.C. §§ 286, 287, and 288;
- Whether Blue Spike should be granted any injunctive relief; and
- Whether this is an exceptional case under 35 U.S.C. § 285.

Blue Spike's misrepresentations in its statement above also need to be addressed. First, Blue Spike has not served any discovery requests yet, so it is uncertain how VIZIO has caused unnecessary delays with discovery. Second, VIZIO is not requesting that this Court adopt patent rules from the Eastern District of Texas. Third, the parties have not even begun discussions about a protective order in this case, other than generally agreeing that one is needed, so it is again uncertain how

1435973

Blue Spike is purportedly encountering problems getting a protective order agreed to. Finally, Blue Spike's accusation that VIZIO is a "serial infringer, with reckless regard to the patent rights of others" is simply unfounded.

**C.      A Statement of Whether Parties Are Likely to Be Added and Whether the Pleadings Are Likely to Be Amended**

### 1.      Blue Spike's Statement

Blue Spike seeks leave from the Court to amend its operative complaint, to reduce, streamline the asserted claims and patents asserted in the litigation after the Court has a hearing on summary judgment and claim construction..

### 2.      VIZIO's Statement

VIZIO is presently unaware of the need to move to add other parties or claims or file amended pleadings, but reserves the right to do so should discovery later reveal that VIZIO has any claims, defenses, or counterclaims against Blue Spike or any other entities related to the substance of this lawsuit.

Given the large number of patents asserted in this case, VIZIO further proposes that Blue Spike be ordered to limit the total number of asserted claims to three claims per patent group, for a total of nine claims total.

**D.      A Statement as to Issues Which any Party Believes May Be Determined by Motion and a Listing of Then-Contemplated Law and Motion Matters**

### 1.      Blue Spike's Statement

(1).    Motions To Compel Documents, including in-house technical papers on the streaming capability and interactivity with third party providers like Android and Microsoft.

(2).    Motions To Compel Depositions under Rule 30(b)(6).

(3).    Motion To Compel Inspection of Source Code, still no production has been made available as of the filing of this document.

(4).    Motion for summary judgment of no inequitable conduct.

1435973

(5).     Motion for summary judgment of no patent claim invalidity.

**2.     VIZIO's Statement**

VIZIO believes that its defenses of noninfringement and/or invalidity are likely to be determined by a motion for summary judgment.  In addition, certain other asserted defenses, such as limitations on damages, may also be determined by a motion for summary judgment.

**E.     A Statement of What Settlement Discussions Have Occurred (Specifically Excluding any Statement of the Terms Discussed) and What Settlement Procedure Is Recommended, pursuant to Local Rules 16-15 through 16-15.9**

No settlement discussions have occurred between the parties to date.

**1.     Blue Spike's Statement**

Blue Spike wants to hold Vizio accountable for its patent infringement and litigation conduct to date.  Blue Spike is not interested in mediation until after summary judgment and claim construction hearing.  At which time, Blue Spike is not opposed to appearing before a neutral selected from the Court's Mediation Panel, as long as Mr. Scott Moskowitz does not have to attend in person.  He has health issues that do not allow him to fly to California and has not been in the state of California in over 10 years.

**2.     VIZIO's Statement**

Pursuant to Local Rule 16-15.4, VIZIO proposes selecting ADR Procedure No. 2 (appearing before a neutral selected from the Court's Mediation Panel).

**F.     A Discovery Plan, Which Should Set Forth Discovery Phases, the Order of Discovery, and Any Limitations on Discovery**

**1.  Blue Spike's Statement**

The Federal Rules of Civil Procedure adequately handle discovery in this patent infringement by Vizio's TVs.

1435973

**A. Location of Vizio Depositions and Source Code Inspection.**

All depositions and source code inspections for Vizio should occur in this District, where Vizio wanted to litigate this dispute – here in C.D. Cal. They also should be scheduled to allow multiple depositions to occur consecutive to reduce travel costs for Blue Spike.

**B. Source code production deadline of February 1, 2018.**

Blue Spike requests that Vizio make its source code available no later than February 1, 2018. This will help level the disparity in economic backing of the parties. There exists no reason for Vizio to delay production of the accused functionality source code in a case where the names of the patents tell it what functionality is relevant, and it's the source code that is relevant to disproving any allegation of infringement. Without the source code, Vizio would be relying on hearsay to support any allegation of non-infringment.

A discovery order directed at the production of source code, will also preempt misguided zealous advocacy by Vizio's counsel. If there exists an order from this Court instructing Vizio make its source code available by a specified date, this reduces tension between Vizio and its counsel. If Vizio does not stipulate to this source code inspection deadline, Blue Spike requests that this fact be used against Vizio in future motion practice where Vizio attempts to claim that Blue Spike ran up the costs of this litigation that is heavily dependent upon source code to prove or disprove infringement in this software driven case.

**C. Submission Deadline for Proposed Protective Orders to the Court.**

Blue Spike requests that the parties be ordered to provide a joint proposed protective order, or in the alternative, competing protective orders before the CMC in this case.

Blue Spike proposes that fact discovery be completed by November 26, 2018.

1435973

**D. Production of Documents in the Form Kept in Normal Course of Business.**

Blue Spike disagrees that with Vizio's specific but yet vague request that "all documents shall be produced either as a full-text searchable PDFs with accompanying document-level full text or TIFF images with accompanying document-level full text, unless the document cannot be reasonably processed or otherwise would lose its context or meaning."

First, Blue Spike will produce the documents in PDFs instead of tiffs if that is how the documents already exist.

Second, Blue Spike does not agree to incur additional costs to process documents into TIFF images with accompanying document-level full text, as it is expensive and would require third party vendors not necessary in this very focused litigation, nor is it with the keeping of Rule 1.

Blue Spike will produce documents in the manner that they are kept, including Spreadsheets and video and audio files. If document information including starting and ending production numbers is not available, Blue Spike should not be forced to incur additional costs to provide such information to Vizio, pursuant to Rule 1.

**E. Time Frame Covered by a Party's Privilege Log.**

Unlike Vizio, Blue Spike wants full disclosure of all documents related to Blue Spike in the possession, custody and control of Vizio, including emails exchange between Vizio and its counsel, including metadata, exchanged and work product produced between the filing of this lawsuit and the end of case styled *Blue Spike, LLC v. Archos, Inc.*, Case No. 16-cv-1142 (E.D. Tex.).

Blue Spike proposes that the parties log privileged and/or work product documents in a privilege log in accordance with Federal Rules of Civil Procedure 26(b)(5)(A)(ii). This would include Vizio listing on its privilege log any privileged and/or work product documents created by any party before the filing of this case and the dismissal of the case styled as *Blue Spike, LLC v. Archos, Inc.*, Case No. 16-cv-

9

1142 (E.D. Tex.), as well as during that prior litigation and before it. These documents are relevant to proving or disproving Vizio's willful infringement.

Vizio's failure to log such communications or work product should at a minimum preclude Vizio from later attempting to waive privilege to challenge an allegation of willful infringement. Or alternatively, serve as a basis for an instruction from the Court that Vizio never had any such communications with an expert about it not infringing or the patents being invalid, since no such communications were never logged by Vizio. Adopting Vizio's proposal supports litigation by surprise with no accountability to this Court or the other party.

**F. Deadline to Disclose Experts.**

Blue Spike proposes that all affirmative experts be disclosed by April 1, 2018, and all rebuttal experts be disclosed by May 1, 2018. The parties should not have more than 6 experts.

**2. <u>VIZIO's Statement</u>**

VIZIO proposes that discovery may be conducted on all matters related to issues raised by the pleadings in this case, including Blue Spike's First Amended Complaint and VIZIO's Answer and Affirmative Defenses.

VIZIO proposes that discovery, including fact and expert discovery, should be completed as set forth in the chart below in Section H.

VIZIO does not believe discovery should be conducted in phases or otherwise limited, other than any limitations set forth in the Federal Rules of Civil Procedure or the Local Rules of this Court.

VIZIO proposes that a general protective order be issued in this case. VIZIO will work in good faith with Blue Spike to submit a protective order for the Court to consider.

VIZIO proposes that, except for spreadsheets and video and audio files, all documents shall be produced either as a full-text searchable PDFs with accompanying document-level full text or TIFF images with accompanying document-level full text,

unless the document cannot be reasonably processed or otherwise would lose its context or meaning. Spreadsheets and video and audio files shall be produced in native format. Document information including starting and ending production numbers shall be provided. VIZIO further proposes that discovery of ESI should not require any other metadata absent the Parties' prior agreement.

VIZIO proposes that the parties log privileged and/or work-product documents and produce privilege logs in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii). VIZIO further proposes that privileged and/or work product documents created by any party after the filing of the complaint in the case styled as *Blue Spike, LLC v. Archos, Inc.*, Case No. 16-cv-1142 (E.D. Tex.), do not need to be logged.

VIZIO cannot agree to Blue Spike's other discovery demands.

**G.    A Statement of Whether Trial Will Be Jury or to the Court and a Realistic Estimated Length of Trial**

The parties both request a jury trial, and agree that trial is anticipated to span seven days.

**H.    A Statement of any Other Issues Affecting the Status or Management of the Case; and Proposed, Specific Dates as follows:**

|  | Blue Spike's Proposed Dates | VIZIO's Proposed Dates |
|---|---|---|
| **Source code production** | February 1, 2018 | No date needed. |
| **Disclosure of burden of proof experts** | July 30, 2018 | July 30, 2018 |
| **Disclosure of rebuttal experts** | August 27, 2018 | August 27, 2018 |

1435973

| | | |
|---|---|---|
| **Fact Discovery cut-off** | November 1, 2018 | July 23, 2018 |
| **Expert Discovery cut-off** | December 1, 2018 | September 12, 2018 |
| **Final motion cut-off [~6-8 weeks after discovery cut-off]** | March 1, 2019 | September 24, 2018 |
| **Oppositions to MSJs** | Two weeks after filing date. | Parties to follow the Local Rules. |
| **Final Pretrial Conference [~4-6 weeks after the motion cut-off date]** | April 14, 2019 | October 29, 2018 |
| **Trial [a Tuesday, average 4-day, 10 hours/side]** | May 13, 2019 | November 13, 2018 |

**Blue Spike's Additional Proposal:**

Blue Spike believes that claim construction in this case can be done in connection with briefing for summary judgment motions. Vizio's attempt to create and expensive and elaborate briefing schedule for claim construction is not in keeping with Rule 1, and not even practiced by districts that have patent local rules.

If this Court believes claim construction briefing is necessary outside of the context of MSJs, Blue Spike would like to request the opportunity to address this issue at the CMC. Blue Spike proceeded to file in this district due to the Court's litigation prowess with handling disputes without unnecessary filings and hearings that only lead to increase costs and fees, which is consistent with Rule 1. If Vizio wanted a structured claim construction briefing schedule and a separate claim construction hearing from the MSJ hearing, Vizio should have not opposed venue in

12

1  United States District Court for the Eastern District of Texas.

2  **VIZIO's Additional Proposal:**

3      In addition to the above dates, VIZIO further proposes the following claim

4  construction related deadlines to facilitate timely and efficient resolution of the issues

5  in this case:

6

| Event | Proposed Date |
|-------|---------------|
| Exchange of Proposed Terms for Claim Construction | March 5, 2018 |
| Exchange of Preliminary Claim Constructions and Extrinsic Evidence | April 9, 2018 |
| Joint Claim Construction and Prehearing Statement | April 30, 2018 |
| Simultaneous Opening Claim Construction Briefs | May 21, 2018 |
| Simultaneous Response Claim Construction Briefs | June 11, 2018 |
| Claim Construction Hearing | July 9, 2018 (or as soon thereafter as convenient for the Court) |

21  DATED:  January 2, 2017          Respectfully submitted,

22                                   GARTEISER HONEA, P.C.

23                                   By: /s/ Randall T. Garteiser
24                                   Randall T. Garteiser
                                     Christopher A. Honea
25                                   Kirk J. Anderson

26
27                                   *Attorneys for Plaintiff BLUE SPIKE,*
                                     *LLC*
28

1435973

1

2  DATED:  January 2, 2017                    Respectfully submitted,

3
                                             GLASER WEIL FINK HOWARD
4                                              AVCHEN & SHAPIRO LLP

5
                                             By:  /s/ Rex Hwang
6                                            ADRIAN M. PRUETZ
                                             REX HWANG
7                                            GUY M. RODGERS

8
                                             Attorneys for Defendant VIZIO, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1435973

## **FILER ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2), the filer hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

<u>/s/ Randall Garteiser</u>

1435973

# EXHIBIT I

Randall T. Garteiser, Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea, Texas Bar No. 24059967
chonea@ghiplaw.com
Kirk J. Anderson, California Bar No. 289043
kanderson@ghiplaw.com
Ian Ramage, California Bar No. 224881
iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
795 Folsom St, Floor 1, San Francisco, CA 94107-4226
Telephone: (888) 908-4400

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| BLUE SPIKE LLC, | Case No.: 8:17-cv-1172-DOC-KES |
| Plaintiff, | |
| vs. | **BLUE SPIKE LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VIZIO, INC.** |
| VIZIO, INC., | |
| Defendant | |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Blue Spike LLC ("Blue Spike") requests that Defendant Vizio, Inc. ("Vizio") produce for inspection and copying at the offices of Garteiser Honea, 795 Folsom St, Floor 1, San Francisco, CA 94107-4226 the following documents in accordance with Rule 34 of the Federal Rules of Civil Procedure and the definitions and instructions set forth herein, within 30 days after service of this request.

## DEFINITIONS AND INSTRUCTIONS

A. "Blue Spike" or "Plaintiffs" means the named plaintiff Blue Spike LLC and their officers, directors, employees, agents and representatives.

BLUE SPIKE LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VIZIO, INC. - 1

B. "Vizio" or "Defendant" means the named Defendant Vizio, Inc. and any business entities, agents, attorneys, representatives, employees and all other persons acting or purporting to act on behalf of, or who are subject to the direction or control of, Central Puget Sound Regional Transit Authority.

C. "Document" is used in the broadest sense consistent with the definition set forth in Fed. R. Civ. P. 34(a). The term "document" includes, without limitation, physical objects and things, such as research and development samples, prototype devices, production samples and the like, as well as hard copies and electronic copies of computer production software, computer files and electronic mail (email). A draft, translation or non-identical copy is a separate document within the meaning of this term.

D. The "'569 patent" means U.S. Patent No. 5,745,569, titled "Method for Stega-Cipher Protection of Computer Code"

E. The "'719 patent" means U.S. Patent No. 8,930,719, titled "Data Protection Method and Device".

F. The "'246 patent" means U.S. Patent No. 7,475,246, titled "Secure Personal Content Server".

G. The "'561 patent" means U.S. Patent No. 8,171,561, titled "Secure Personal Content Server".

H. The "'295 patent" means U.S. Patent No. 8,739,295, titled "Secure Personal Content Server".

BLUE SPIKE LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VIZIO, INC. - 2

I. The "'116 patent" means U.S. Patent No. 7,159,116, titled "Systems, Methods and Devices for Trusted Transactions".

J. The "'011 patent" means U.S. Patent No. 8,538,011, titled "Systems, Methods and Devices for Trusted Transactions".

K. The term "Accused Product(s)" means Vizio's Smart Televisions and Tablets that are capable of streaming secured content such as Netflix, YouTube, Google Play, HBO Go, Fox Now, and other such services.

L. Plaintiffs specifically requests that Defendant search all computers, hard drives, data storage and/or other archiving systems that might reasonably be expected to contain any of the documents, email and/or data requested in the following document requests.

M. If no responsive documents exist for any particular requests, please specifically state that no responsive documents exist.

N. For any responsive documents withheld or not produced on the basis that the document is privileged, confidential or otherwise protected from disclosure, please provide a description of each document (including the date, name and employer of the author of the document, all recipients of the document, type of document and general content of the document) sufficient to allow Plaintiffs to make an independent determination with respect to the claim of privilege or protection from disclosure.

O. For any responsive document that is no longer available or in existence, please provide a description of the document or documents, an explanation for why the document is no longer in existence and any information known to Defendant that would aid Plaintiffs in locating and/or obtaining the requested documents from another source.

BLUE SPIKE LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VIZIO, INC. - 3

P. The obligation to produce the documents requested herein is continuing within the terms of Fed. R. Civ. P. 26(e).

Q. If Defendant finds the meaning of any term in these requests unclear, Defendant shall assume a reasonable meaning, state what the assumed meaning is and respond to the requests according to the assumed meaning.

## DOCUMENT REQUESTS

1. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to Blue Spike.

2. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to the '569 Patent.

3. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to the '719 Patent.

4. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to the '246 Patent.

5. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to the '561 Patent.

6. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to the '295 Patent.

7. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to the '116 Patent.

BLUE SPIKE LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VIZIO, INC. - 4

8. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to the '011 Patent.

9. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to any patent owned by Plaintiff.

10. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to the subject matter of the above listed since January 1, 2016.

11. Please produce all documents, including any correspondence, email or data in electronic form, mentioning or referring to when Defendant first became aware of the existence of any of the above listed patents or its alleged infringement thereof, or any of Plaintiffs' patents.

12. Please produce all user manuals for the Accused Product since January 1, 2016.

13. Please produce all training materials referring or relating to the Accused Product since January 1, 2016.

14. Please produce all documents, including correspondence, email or data in electronic form, referring or related to the conception, research, design, development and commercialization of the Accused Product, including development meeting notes or correspondence, status reports, committee meeting minutes, testing reports, simulations, developers' notes and notebooks, project schedules, meeting presentations, algorithms, schematics, screen shots, drawings, prototypes, samples and specifications.

15. Please produce all documents, including correspondence, email or data in electronic form, referring or related to the conception, research, design, development and commercialization of the Accused Product and any other vehicle tracking system used or

BLUE SPIKE LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VIZIO, INC. - 5

created by Defendant that provides notifications to users regarding the location, estimated time of arrival and/or delay of vehicles, including development meeting notes or correspondence, status reports, committee meeting minutes, testing reports, simulations, developers' notes and notebooks,

project schedules, meeting presentations, algorithms, schematics, screen shots, drawings, prototypes, samples and specifications.

16. Please produce all documents, including correspondence, email or data in electronic form, referring or related to the structure, operation, function or performance of the Accused Product and/or its components, including all source code, user guides, reference manuals, product manuals, product descriptions, technician's guides, installation guides, technical manuals, software manuals, screen shots and datasheets.

17. Please produce all documents, including correspondence, email or data in electronic form, referring or related to any instructions, information or directions Defendant provides to any of its customers concerning how to use, install or operate the Accused Product.

18. Please produce all documents, including correspondence, email or data in electronic form, referring or related to any instructions, information or directions Defendant provides to any of its customers concerning how to use, install or operate any other vehicle tracking system used or created by Defendant that also provides notifications to users regarding the location, estimated time of arrival and/or delay of vehicles.

19. Please produce samples of all promotional items, marketing material or advertisements referring to the Accused Product since January 1, 2016.

20. Please produce samples of all promotional items, marketing material or advertisements referring to any other vehicle tracking system used or created by Defendant that provides notifications to users regarding the location, estimated time of arrival and/or delay since January 1, 2016.

21. Please produce all documents, including correspondence, email or data in electronic form, referring or related to any advantages, benefits or features of the Accused Product since January 1, 2016.

22. Please produce any documents that Defendant contends is material to the scope, interpretation, validity, infringement or enforceability of the above listed patents or any claim of any of the above listed patents since January 1, 2016.

23. Please produce any alleged prior art to the above listed patents.

24. Please produce all documents that contain, refer or relate to any oral or written opinion received by Defendant concerning the validity, invalidity, enforceability, unenforceability, infringement, noninfringement, patentability, scope or interpretation of above listed patents or any claim of the above listed patents since January 1, 2016.

25. Please produce all documents and things not previously produced which Defendant intends to rely upon in its defense or in support of its counterclaim at trial.

26. Source code related to all Vizio's Smart Televisions imported into the U.S. since January 1, 2018.

27. Source code related to Vizio's Tablets streaming of audio and/or video content since January 1, 2018.

BLUE SPIKE LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VIZIO, INC. - 7

28. Source code related to all Vizio's Smart Televisions imported into the U.S. since January 1, 2018.

29. Source code related to Vizio's Tablets streaming of audio and/or video content since January 1, 2018.

30. Source code related to Vizio's Smart Televisions and Tablets streaming functionality of audio and/or video content.

31. All notes related to revisions to the source code related to the streaming functionality since January 1, 2016 for Vizio's Smart Televisions and Tablets.

32. Documents explaining the differences in the versions of the source code and/or programming code for Vizio's Smart Televisions and Tablets since January 1, 2016.

33. Documents listing the versions of the source code and/or programming code for Vizio's Smart Televisions and Tablets since January 1, 2016.


February 23, 2018                                    Respectfully served,


                                      */s/ Randall Garteiser*
                                      Randall T. Garteiser
                                          Texas Bar No. 24038912
                                          rgarteiser@ghiplaw.com
                                      Christopher A. Honea
                                          Texas Bar No. 24059967
                                          chonea@ghiplaw.com
                                      Kirk J. Anderson
                                          California Bar No. 289043
                                          kanderson@ghiplaw.com
                                      Ian Ramage

BLUE SPIKE LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VIZIO, INC. - 8

California Bar No. 224881
iramage@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

*Counsel for Blue Spike LLC*

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

_/s/ Randall Garteiser_

BLUE SPIKE LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, VIZIO, INC. - 9

# EXHIBIT J

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NICHIA CORPORATION, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| VIZIO, INC., | § | 2:16-cv-001453-JRG |
| | § | LEAD CASE |
| VIZIO, INC., | § | 2:16-cv-00246-JRG |
| LOWE'S HOME CENTERS, LLC, ET AL. | § | 2:16-cv-00613-JRG |
| FEIT ELECTRIC COMPANY, INC., | § | 2:16-cv-00616-JRG |
| FEIT ELECTRIC COMPANY, INC., | § | 2:16-cv-001454-JRG |
| LOWE'S HOME CENTERS, LLC, ET AL. | § | 2:16-cv-001455-JRG |
| | § | |
| *Defendants*. | § | |

## <u>ORDER GRANTING DEFENDANTS' MOTIONS FOR IMPROPER VENUE</u>

Before the Court are each of the Defendants' Motions to Dismiss or Transfer for Improper Venue (Feit Electric Company's ("Feit") Motion to Dismiss or Transfer for Improper Venue (Dkt. No. 42); Vizio, Inc.'s ("Vizio") Motion to Dismiss or Transfer for Improper Venue (Dkt. No. 65); and Lowe's Home Centers, LLC ("LHC") and L G Sourcing, Inc.'s ("L G Sourcing") Motion to Dismiss or Transfer for Improper Venue (Dkt. No. 99)). In addition, the Court ordered *sua sponte* "additional briefing on [the Motions] addressing *In re Micron*[, 875 F.3d 1091 (Fed. Cir. 2017),] and the propriety or impropriety of venue in this District and the propriety or impropriety of venue in any requested transferee districts." (Dkt. No. 191). Having received and considered the briefing and all relevant authorities, the Court is of the opinion that the Motions should be **GRANTED**.

I.    **BACKGROUND**

   a.  **VIZIO**

On March 21, 2016, Nichia filed a complaint in this Court (Case No. 2:16-cv-246), alleging

that *VIZIO* infringes one U.S. patent directed to the structure of light emitting diodes ("LEDs")

(Dkt. No. 1) ("*VIZIO I*"). In its complaint, Nichia asserted that venue in this district was proper

under 28 U.S.C. §§ 1391 and 1400(b). VIZIO answered on August 23, 2016. (2:16-cv-615, Dkt.

No. 10). In its answer, VIZIO stated that

> For purposes of this action only, VIZIO admits that venue is proper in the Eastern
> District of Texas. VIZIO responds, however, that if interpretation of venue under
> 28 U.S.C. §§ 1391(c) and/or 1400(b) is altered, by the Supreme Court or otherwise,
> VIZIO reserves its right to contest whether venue is proper. VIZIO denies that this
> judicial district is the most convenient venue for this case.

(*Id*. at ¶ 8).

On December 27, 2016, Nichia filed a second complaint against VIZIO, alleging VIZIO's

infringement of a different U.S. patent ("*VIZIO II*"). (2:16-cv-1453, Dkt. No. 1). On February 21,

2017, Nichia filed an Amended Complaint, asserting an additional patent. (Dkt. No. 9). On April

6, 2017, VIZIO filed its Answer. In this answer, unlike its first, VIZIO denied that venue is proper

in the Eastern District of Texas.   (Dkt. No. 16).   On April 28, 2017, the Court issued a

Consolidation Order, consolidating *VIZIO II* with cases filed by Nichia against Feit and Lowe's.

(Dkt. No. 18). VIZIO did not object to consolidation. On May 15, 2017, at the request of TCL (a

Consolidated Defendant), the Court issued another Consolidation Order, consolidating all of the

Nichia cases filed against VIZIO, Feit, Lowe's, TCL and Meridian, (Dkt. No. 24). Again, VIZIO

did not object to consolidation.

On May 22, 2017, the Supreme Court issued its decision in *TC Heartland LLC v. Kraft

Foods Grp. Brands LLC*, 137 S.Ct. 1514 (2017). The Court conducted a scheduling conference

on May 31, 2017, and counsel for VIZIO appeared. (Dkt. Minute Entry 5/31/17).  Also on May 31, 2017, two of the Consolidated Defendants, Feit and Meridian, filed motions to dismiss on improper venue grounds. ((Dkt. No. 42); Case No. 16-cv-615 (Dkt. 114)).  Two days later, another consolidated defendant, TCL, also filed a motion challenging venue. (Dkt. 48).  VIZIO filed its respective instant motion two weeks later—on June 14, 2017. (Dkt. No. 65). Thus, VIZIO presented the defense for the first time 14 months after the filing of the complaint in *VIZIO I* and six months after the filing of the complaint in *VIZIO II*.

### b. Feit

On June 13, 2016, Nichia filed a Complaint, Case No. 2:16-cv-616 ("*Feit I*"), accusing Feit Electric of infringing U.S. Patent No. 8,532,250 (the "'250 patent").  Feit Electric filed a Motion to Dismiss *Feit I* pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*Feit I*, Dkt No. 45).  Notably, the motion did not raise improper venue as a defense.

On December 27, 2016, Nichia filed a second complaint against Feit Electric, alleging infringement of U.S. Patent No. 9,490,411 ("the '411 Patent"), Case No. 2:16-cv-001454 ("*Feit II*").  On February 21, 2017, Nichia filed an Amended Complaint that asserted an additional patent.  (Dkt. No. 7).  In its Answer to the Amended Complaint, Feit Electric did not assert improper venue, stating that "Feit Electric does not contest venue but further adds that this venue is not the most convenient venue for this case." (*Feit II*, Dkt. 13 at ¶ 7).

This Court consolidated *Feit II* and other cases involving the '411 and '071 Patents for all pretrial issues (except venue) into Lead Case No. 2:16-cv-1453.  (Dkt. No. 18).  This Court later consolidated *Feit I* into Lead Case No. 2:16-cv-1453.  (Dkt. No. 24).  On May 31, 2017, Feit Electric filed its motion challenging venue as improper under § 1400(b) and *TC Heartland* in both *Feit I* and *Feit II* (Dkt. No. 42).

### c. **Lowe's**

On June 13, 2016, Nichia filed a Complaint accusing Lowe's Companies, Inc. ("Lowe's Companies") and L G Sourcing of infringing U.S. Patent No. 8,530,250 ("the '250 Patent") (*Nichia Corp. v. Lowe's Cos.*, No. 2:16-cv-00613, Dkt. No. 1). Nichia did not serve the Summons and Complaint on Lowe's Companies and L G Sourcing until August 30, 2016. (2:16-cv-00615, Dkt. Nos. 18, 19). This Court consolidated Case No. 2:16-cv-00613 for pretrial purposes into Lead Case No. 2:16-cv-00615. (*Id.*, Dkt. No. 25.)

On November 3, 2016, Lowe's Companies and L G Sourcing filed their Answers to the Complaint denying that venue was proper under 28 U.S.C. §§ 1391 and 1400(b). (*Id.*, Dkt. No. 61-62 at ¶ 9). On November 29, 2016, Nichia filed an Amended Complaint adding LHC as a defendant with L G Sourcing and Lowe's Companies. (*Id.*, Dkt. No. 78). On December 13, 2016, Lowe's Companies, L G Sourcing, and LHC filed Answers to the Amended Complaint again denying that venue was proper under 28 U.S.C. §§ 1391 and 1400. (*Id.*, Dkt. No. 95-97 at ¶ 10). On December 14, 2016, the Court granted a joint motion filed by the parties to voluntarily dismiss Lowe's Companies. (*Id.*, Dkt. No. 98). Pursuant to a joint motion, on December 22, 2016, this Court stayed Nichia's cases involving the '250 Patent against all defendants pending resolution of an appeal before the Federal Circuit on the proper construction and validity of the '250 patent. (*Id.*, Dkt. 108).

Five days after the '250 Patent cases were stayed, on December 27, 2016, Nichia filed new Complaints in this Court against defendants LHC and L G Sourcing, accusing LHC and L G Sourcing of infringing U.S. Patent No. 9,490,411 (the "'411 Patent")—a child of the '250 Patent. (*See e.g.*, 2:16-CV-01455, Dkt. No. 1 ("Complaint")). On February 21, 2017, Nichia followed this with an Amended Complaint also alleging infringing of U.S. Patent No. 9,537,071 (the "'071

4

Patent"), which is another child of the '250 Patent (*Id.*, Dkt. No. 8). On April 21, 2017, LHC and L G Sourcing filed an Answer to the Amended Complaint, again denying that venue was proper under 28 U.S.C. §§ 1391 and 1400. (2:16-CV-01455, Dkt. 13, ¶ 9, and Dkt. 14, ¶ 9).

On May 15, 2017, the Court consolidated all cases related to the '250, '411 and '071 Patents into lead Case No. 2:16-cv-01453. (2:16-cv-1455, Dkt. No. 18). On May 31, 2017, the Court held a Scheduling Conference for the consolidated case, and on June 15, 2017 the Court entered a Docket Control Order and Discovery Order. (2:16-cv-01453, Dkt. 67 and 68). Lowe's filed its Motion to Transfer to the Western District of North Carolina or in the Alternative to Dismiss on July 26, 2017 (2:16-cv-1453, Dkt. No. 99).

The Lowe's Defendants admit that venue is proper in this District as to LHC. Recognizing this, L G Sourcing has requested the Court transfer both Lowe's Defendants to the Western District of North Carolina or, in the alternative, dismiss L G Sourcing alone for improper venue (*Id.* at 20).

### d. *In re Micron*

On November 15, 2017, the Federal Circuit issued its opinion in *In re Micron* where it held that, for purposes of Rule 12 waiver, the defense of improper venue pursuant to 28 U.S.C. § 1400(a) "was not available until the Supreme Court decided *TC Heartland* because, before then, it would have been improper, given controlling precedent, for the district court to dismiss or to transfer for lack of venue." 875 F.3d at 1096.

This Court had, only hours before *In re Micron* issued, issued its own opinion on the issue of Rule 12 waiver, reaching a different conclusion and denying one of the instant Motions on that ground. (*See* Dkt. No. 146 at 3 (holding "that the *TC Heartland* decision does not constitute an intervening change in law such that would permit an exception to the doctrine of waiver," and denying Feit's Motion to Transfer for Improper Venue (Dkt. No. 46))). Following the issuance of

*In re Micron*, this Court *sua sponte* vacated its prior order, reopened the previously denied motion, and ordered "additional briefing . . . addressing *In re Micron* and the propriety or impropriety of venue in this District and the propriety or impropriety of venue in any requested transferee districts." (Dkt. No. 191).

## II.    DISCUSSION

In response to each of the Motions to Dismiss or Transfer before the Court, Nichia's arguments are premised solely on waiver.  However, each of the Defendants has submitted evidence that venue is improper as to them (except for LHC).  Given that the Defendants have submitted evidence in support of their respective positions that venue is not proper within this district, and since Nichia has not disputed the propriety of venue in its response to the Defendants' Motions, the Court will deem the facts and positions submitted by the Defendants as true, since Nichia did not contravene these facts and positions.[1]  Indeed, even though the Court specifically ordered the Parties to address "the propriety or impropriety of venue in any requested transferee districts," Nichia did not put forward any facts or argument specifically addressing this issue.[2] Accordingly, unless the Defendants' venue challenge is waived, as Nichia argues, then Defendants must necessarily prevail.

---

[1] *See, e.g., Ragland v. Rock-Tenn Co.*, 955 F. Supp. 1009, 1011 n.1 (N.D. Ill. 1997) ("the mere denial of a particular fact without specific references to the "affidavits, parts of the record, and other supporting materials" is insufficient, and, where a properly supported factual assertion is met with such a naked denial, the fact may be deemed admitted." (citing *Flaherty v. Gas Research Inst*., 31 F.3d 451, 453 (7th Cir.1994); *United States v. 2121 Celeste Rd. SW*, 189 F. Supp. 3d 1208, 1217 (D.N.M. 2016)  ("The United States does not dispute this additional factual assertion in its Reply, therefore this fact is deemed admitted."); *see also* Local Rule CV-7(d) ("Briefing shall contain a concise statement of the reasons in opposition to the motion and a citation of authorities upon which the party relies.").

[2] (*See, e.g.*, Dkt. No. 214 at 1 ("This Court asked the parties to address three issues in supplemental briefing: the import of *In re Micron*, the propriety of this venue, and the propriety of a transferee venue.  (Dkt. 191.)  Nichia does not contest Feit Electric's position that this venue is not proper.")).

### a. Waiver after *In re Micron*

Nichia urges a narrow reading of *In re Micron* because "every defendant in every patent case in which venue was predicated on Federal Circuit precedent had a non-frivolous argument that venue was improper" as of "September 12, 2016, when TC Heartland filed a petition for certiorari seeking review of a Federal Circuit decision upholding a venue ruling in the District of Delaware." (Dkt. No. 108 at 2–3). According to Nichia, this is the moment when the *TC Heartland* defense became "available."

Nichia goes further, arguing that the "Defendants' venue motions are *not* governed by *Micron*." (*Id*. at 6). Noting that a venue objection is "a privilege" that may be lost "by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct," (citing *Neirbo v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939)), Nichia properly categorizes these waiver concepts as "rule-based waiver" or "waiver-by-conduct." (Dkt. No. 208 at 6). Nichia urges that *In re Micron* addressed only the rule-based waiver of Rule 12(h)(1)(A). Rule 12(h)(1)(A) provides that the failure to raise a venue objection in an initial motion to dismiss results in a waiver if the venue defense was "available" at the time of the motion. As Nichia notes, this is "the only place the word 'available' appears in Rule 12." (Dkt. No. 208 at 6).

Nichia contends that *In re Micron* does not apply to other aspects of a rule-based waiver of Rule 12, specifically Rule 12(h)(1)(B)(ii). "That is, a defense is not waived by failure to include it in a motion if it was not available [under Rule 12(h)(1)(A)]; but defendants must include in their answers, on pain of waiver, all defenses for which they have a good-faith basis, and a defense is waived if it is not included in a responsive pleading [under Rule 12(h)(1)(B)(ii)]." (*Id*. at 7). Nichia contends that this result is compelled by the ability of parties to submit defenses based on

7

good-faith arguments for changing the law, or adopting new rules, whether they were previously available or not under the "liberal Rule 11(b) standard." (*Id*. at 8).

It is notable that in *In re Cutsforth, Inc.*, issued the same day as the Circuit's decision in *In re Micron*, the Federal Circuit applied *In re Micron* to a separate mandamus petition's facts. No. 2017-135, 2017 WL 5907556 (Fed. Cir. Nov. 15, 2017). In *In re Cutsforth*, the Circuit noted that "Defendants did not initially dispute the propriety of venue; to the contrary, their several answers to Cutsforth's complaint admitted the complaint's allegation of venue." 2017 WL 5907556 at *1. "After the Supreme Court issued its decision in *TC Heartland* [], defendants moved for leave to amend their answers to assert a defense of improper venue and to transfer the case under 28 U.S.C. § 1406(a). They argued that the requirements of 28 U.S.C. § 1400(b) were not satisfied as now understood in light of *TC Heartland*. They also argued that *TC Heartland* was an intervening change of law such that their failure to make a venue objection earlier was not a waiver of the objection under Federal Rule of Civil Procedure 12(g)(2) and (h)(1)(A)." *Id*. In short, the defendants' posture in *In re Cutsforth* closely mirrors the issues presented by the Defendants in this case.

The District Court in *In re Cutsforth* held that *TC Heartland* constituted an intervening change in law, held that they did not waive their venue objection under Federal Rule of Civil Procedure 12(g)(2) and (h)(1)(A), and ordered the case transferred. *Id*. In doing so, however, the District Court noted that "the waste of judicial resources after five years of litigation, and the burden that must now be imposed on a district unfamiliar with this case," and "will lead to additional cost and delay and unquestionably prejudices Cutsforth." *Id*. However, the District Court found such prejudice was not relevant to the improper venue consideration. *Id*.

The Federal Circuit, on mandamus review, first confirmed its holding in *In re Micron*, "that the Supreme Court's decision in *TC Heartland* effected a relevant change of law and, more particularly, that failure to present the venue objection earlier did not come within the waiver rule of Federal Rule of Civil Procedure 12(g)(2) and (h)(1)(A)." *Id*. at 2. However, it further explained "that Rule 12(h)(1) is not the only non-merits basis on which a defendant might lose a venue defense" and that "[i]n light of *In re Micron*, the district court in [*Cutsforth*] clearly erred in not considering non-Rule 12 bases for waiver raised by [the Plaintiff]." *Id*. Accordingly, the Circuit found it appropriate for the trial court to reconsider its decision in light of *In re Micron*. *Id*.

Further, this reading of the Circuit's understanding of the scope of *In re Micron* is bolstered by its recent opinion in *In re Fluidmaster, Inc.*, No. 18-109, (Fed. Cir. January 17, 2018). In *In re Fluidmaster*, the Federal Circuit again addressed this issue, noting that "[t]he district court in this case applied a different waiver rule, Rule 12(h)(1)(B)(ii), which concerns defenses that the defendant 'fail[ed] to . . . include . . . in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.' As with Rule 12(h)(1)(A), the court sees no reason why this waiver rule should apply here when the law at the time barred the district court from adopting the venue objection." *Id*., slip op. at 2 (citing *In re Micron*, 875 F.3d at 1097).

In short, the Federal Circuit has held that, contrary to Nichia's argument, *all* of the rule-based waiver arguments, including, notably, Nichia's waiver-by-prior-admission-under-Rule-12(h)(1)(B)(ii) argument, are excepted under the intervening change of law which *TC Heartland* constituted. Notably, however, the Federal Circuit *requires* district courts to inquire into the full scope of possible non-Rule 12 based waiver, such as the prejudice due to the advanced stage of the proceedings which the Circuit noted as to Cutsforth in *In re Cutsforth*, and a failure to do so is error. *Id*.

9

Accordingly, the Court holds that, in accordance with the Federal Circuit's precedent established by *In re Micron* and demonstrated through *In re Cutsforth* and *In re Fluidmaster*, the Defendants have not waived their improper venue defenses under Rule 12 as a result of *TC Heartland*'s intervening change of law.

Further, in accordance with *In re Micron* and its application in *In re Cutsforth*, the Court has taken seriously its obligation to inquire into the full scope of possible non-Rule 12 based waiver to ensure the timeliness and adequacy of venue objections pursuant to 28 U.S.C. § 1406(b), thereby avoiding gamesmanship and improper "circumvent[ion]" of rights granted by statute or Rule. *See In re Micron*, 875 F.3d at 1101 (quoting *Dietz v. Bouldin, Inc.*, ─── U.S. ───, 136 S.Ct. 1885, 1892 (2016). Having examined the present record, the posture and timeliness of the venue objections, and the circumstances of this case at the time of the objections' filing, including the proximity to trial,[3] the Court finds that Nichia has not presented sufficient evidence to support a finding of non-Rule 12 based waiver, as Nichia overwhelmingly basis its arguments on the "conduct" of the various Defendants in admitting proper venue prior to *TC Heartland* and their "conduct" <u>prior to</u> the *TC Heartland* decision. *In re Micron*'s caution regarding gamesmanship relates to <u>post</u>-*TC Heartland* conduct. Defendants may not keep an improper venue defense up their sleeve to spring on a plaintiff (and a trial court) once they perceive that a case is turning against them.

## III.   CONCLUSION

Based on the above, the Court finds that venue is improper as to: (1) Feit, (2) VIZIO, and (3) L G Sourcing.[4]   The Court also holds that none of the Defendants have waived their objections to improper venue, either by Rule or another non-Rule basis. Accordingly, each of the Defendants'

---

[3] *In re Micron*, 875 F.3d at 1102 ("But we have denied mandamus, finding no clear abuse of discretion, in several cases involving venue objections based on *TC Heartland* that were presented close to trial.").

[4] *See supra* at 6.

Motions to Dismiss or Transfer, (Dkt. Nos. 42, 65, and 99), are hereby **GRANTED**. Finding that, here, dismissal of the cases, as opposed to transfer, is appropriate in service to the interests of justice,[5] the Court hereby:

(a) **ORDERS ALL CASES** currently consolidated in LEAD CASE 2:16-cv-1453 **UNCONSOLIDATED**;

(b) **DISMISSES WITHOUT PREJUDICE** the following cases:

    a. Case Nos. 2:16-cv-1453, 2:16-cv-246; 2:16-cv-616, and 2:16-cv-1454;

(c) **DISMISSES WITHOUT PREJUDICE** L G Sourcing from Case Nos. 2:16-cv-613 and 2:16-cv-1455;

(d) **DENIES AS MOOT** the following Motions:

    a. Dkt. No. 82 (Motion for Letters Rogatory re: Feit)

    b. Dkt. No.89 (Motion to Transfer for Convenience by VIZIO)

    c. Dkt. No. 130 (Motion to Compel re: Feit)

    d. Dkt. No. 134 (Motion for Protective Order by Feit)

    e. Dkt. No. 153 (Motion for Letters Rogatory re: VIZIO)

    f. Dkt. No. 155 (Motion to File First Amended Answer by Feit)

    g. Dkt. No. 161 (Motion to Compel re: VIZIO)

    h. Dkt. No. 163 (Motion to File First Amended Answer by VIZIO)

    i. Dkt. No. 164 (Motion to Dismiss by Feit).

Additionally, the Court has previously appointed Mr. David Keyzer as technical advisor in the above-captioned action, with his costs to be assessed equally between Plaintiff and Defendants

---

[5] A successful Motion to Dismiss or Transfer for Improper Venue does not compel the Court to transfer a defendant to their preferred forum. To the contrary, dismissal is appropriate in cases, such as this one, where severing a case essentially scatters cases across the country rather than allowing the plaintiff to determine whether another venue might be more appropriate and efficient in which to pursue all or most of the defendants.

and timely paid as billed. The Court has received Mr. Keyzer's invoice for services through January 16, 2018, in the amount of $ 4,266, and hereby **ORDERS** payment to be promptly made to Mr. Keyzer within ten (10) days of this Order as follows:

Plaintiff: $ 2,133.00

Defendants: $ 2,133

TOTAL: $ 4,266

Finally, the Plaintiff and the remaining defendant, LHC, are **ORDERED** to promptly meet and confer and inform the Court of any agreements narrowing the scope of the case, proposed modifications to the Docket Control Order, or other resulting efficiencies arising from this Order by Joint Letter delivered within ten (10) days of this Order.

**So Ordered this**
**Feb 1, 2018**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

12

# EXHIBIT K

1    RANDALL T. GARTEISER – SBN 231821
     rgarteiser@ghiplaw.com
2    CHRISTOPHER A. HONEA – SBN 232473
     chonea@ghiplaw.com
3    IAN N. RAMAGE – SBN224881
     iramage@ghiplaw.com
4    GARTEISER HONEA, P.C.
     119 W. Ferguson St.
5    Tyler, Texas 75702
     Tel/Fax: (888) 908-4400
6

7    *Attorneys for Plaintiff Blue Spike, LLC*

8    ADRIAN M. PRUETZ – State Bar No. 118215
     apruetz@glaserweil.com
9    REX HWANG – State Bar No. 221079
     rhwang@glaserweil.com
10   GLASER WEIL FINK HOWARD
       AVCHEN & SHAPIRO LLP
11   10250 Constellation Boulevard, 19th Floor
     Los Angeles, California 90067
12   Telephone:  (310) 553-3000
     Facsimile:  (310) 556-2920
13

14   *Attorneys for Defendant VIZIO, Inc.*
     [Additional counsel on signature page]

15              UNITED STATES DISTRICT COURT
16            CENTRAL DISTRICT OF CALIFORNIA
                    SOUTHERN DIVISION

17
     Blue Spike, LLC,                    CASE NO.: 8:17-cv-1172-DOC-KES
18
                     Plaintiff,          Hon. David O. Carter
19
     v.                                  **JOINT STIPULATION
20                                       PURSUANT TO L.R. 37-2
     VIZIO, Inc.,                        REGARDING DEFENDANT'S
21                                       REFUSAL TO PRODUCE
                     Defendant.          DOCUMENTS FOR INSPECTION**
22
                                         DISCOVERY MATTER
23                                       Hearing Date:  May 22, 2018
                                         Time: 10:00 A.M.
24                                       Location: Santa Ana, 6D

25                                       **Disc. Cut-Off:** Nov. 1, 2018
                                         **Final Pre-Trial:** Apr. 15, 2019
26                                       **Trial:** Apr. 30, 2019

27                                       **CONFIDENTIAL – FILED
                                         CONDITIONALLY UNDER SEAL**
28

                                         i
1487662

# TABLE OF CONTENTS

JOINT DISCOVERY SUBMISSION ...................................................................... 1

INTRODUCTION ................................................................................................... 1

    A.    Blue Spike's Introductory Statement ............................................ 1

    B.    VIZIO's Introductory Statement .................................................. 2

PLAINTIFF BLUE SPIKE'S POSITION ............................................................... 5

    I.    NATURE OF THE DISPUTE ...................................................... 5

    II.    THE REQUESTED SOURCE CODE IS ESSENTIAL TO
DEFENDANT'S CONTENTIONS AND FOR THE
DEVELOPMENT OF PLAINTIFF'S CASE. ............................... 8

        A.    VIZIO Has Disingenuously Evaded Blue Spike's Requests.... 10

        *B.*    VIZIO's Lack of Good Faith Effort and Uncooperative
Strategy Has Been Noted in This Case and by Other Courts... 14

    III.    CONCLUSION TO PLAINTIFF BLUE SPIKE'S POSITION ........ 16

DEFENDANT VIZIO'S POSITION ...................................................................... 17

    IV.    CASE BACKGROUND ............................................................ 17

    V.    DISCOVERY IN DISPUTE ...................................................... 17

        A.    DOCUMENT REQUEST NO. 16: ......................................... 17

        B.    RESPONSE TO DOCUMENT REQUEST NO. 16: ............. 18

    VI.    COURTS CAREFULLY SCRUTINIZE SOURCE CODE
REQUESTS .............................................................................. 19

    VII.    VIZIO DOES NOT HAVE THE RELEVANT SOURCE CODE ..... 20

    VIII.    BLUE SPIKE HAS FAILED TO SHOW THAT ANY OTHER
SOURCE CODE IS RELEVANT OR NECESSARY ...................... 21

    IX.    VIZIO HAS REPEATEDLY ADVISED BLUE SPIKE THAT
THE RELEVANT SOURCE CODE IS THIRD PARTY SOURCE
CODE ....................................................................................... 22

    X.    BLUE SPIKE'S ASSERTIONS THAT VIZIO HAS ACTED
IMPROPERLY ARE UNFOUNDED ........................................... 22

    XI.    CONCLUSION TO VIZIO'S POSITION ................................... 25

ii

1487662

**JOINT DISCOVERY SUBMISSION**

Pursuant to Rule 37(a) of the Federal Rules, and Local Rule 37.2, Plaintiff Blue Spike LLC ("Blue Spike"), and Defendant VIZIO Inc. ("VIZIO"), submit this Joint Submission regarding Blue Spike's Motion to Compel production of Defendant's source code for inspection. *See* F. R. Civ. P. 37(a); C.D. Cal., L.R. 37-2.

**INTRODUCTION**

**A. Blue Spike's Introductory Statement.**

~~In accordance with~~Under L.R. 37-1, the parties ~~have~~ met and conferred on April 20, 2018.[1] ~~While~~ Since the beginning of this case, Blue Spike has ~~made good faith attempts to produce the information requested by VIZIO, the Defendant has made no such attempts to provide Blue Spike with the one piece of information that would drastically simplify, and narrow, this case (both in terms of complications that will arise from the patent infringement counts themselves, and for the Court in terms of time and resources invested),~~ requested VIZIO's source code for the ~~accused products.~~ Accused Products.[2] VIZIO avoided the subject, saying in its Rule 26 statement, a source code production deadline was not necessary. Then, in April 2018, after months for trying to meet and confer, VIZIO finally indicated it was taken the position that it would not produce its source code for its Accused Products until Blue Spike better identified the accused products.  Blue Spike now moves to compel production of the source code for the accused products.

Specifically, Blue Spike requests an Order from the Court for VIZIO to produce

---

[1] VIZIO had attorneys Steve Basileo and Thomas Burke participate on the meet and confer with attorneys Chris Honea and Randall Garteiser for Blue Spike.

[2] Blue Spike's Request for Production Defines "Accused Products" to mean Vizio's Smart Televisions and Tablets cable of streaming secured content such as Netflix, YouTube, GooglePlay, HBO Go, Fox Now and other such services." Ex. 7, 3 (pdf p.4). In its initial disclosures Blue Spike further limited this request to include only VIZIO's Smart Televisions and Tablet running an Android Operating System 4.0 or higher. Blue Spike's infringement position is consistently stated also in Blue Spike's Operative Complaint that VIZIO attacked at the pleading stage on various grounds.

1

1  documents, including source code, responsive to Blue Spike's Requests for Production
2  ~~16.~~ Nos. 16 and 22-33. *See* Request for Production, Ex. ~~6.~~ 7.

3  ~~Blue Spike brought this patent infringement lawsuit against VIZIO more than~~
4  ~~one year ago in the United States District Court for the Eastern District of Texas. *See*~~
5  ~~Dkt. 1, Case 6:17-cv-00060 (filed Jan. 30, 2017). During that period, Blue Spike~~
6  ~~cooperated with VIZIO in good faith to resolve the initial default judgment entered~~
7  ~~against the Defendant for failure to respond. Plaintiff was also patient with VIZIO's~~
8  ~~concerns in the wake of *TC Heartland* and ultimately worked with VIZIO to bring the~~
9  ~~action here in the Central District of California—a venue that VIZIO preferred. *See*~~
10 ~~Blue Spike's Opp., Dkt. 21, at 6 (Plaintiff's Claim has now been in this District for~~
11 ~~nearly 10 months).~~

12 ~~Once VIZIO had gained this concession from Blue Spike and was in its~~
13 ~~preferred venue, Defendant continued its efforts to forestall this case by filing yet~~
14 ~~another motion to dismiss. *See* Dkt. 17. This litigation tactic was ruled to be against~~
15 ~~the spirit of good faith and cooperation that is required by this Court. *See* Order, Dkt.~~
16 ~~29; Fed. Cir., Order, Case 18-116. It is a trend that has continued as~~ VIZIO seems
17 committed to ~~its~~a strategy of working against a meaningful trial on the merits. ~~For~~
18 ~~example, while~~[3] During the Rule 16 and Rule 26 Conference joint submission, Blue
19 Spike proposed a date of February 1, 2018, for the production of source code in
20 possession of VIZIO~~, the Defendant's counter was~~. VIZIO countered with "[n]o date
21 needed." *See* Rule 26(f) Report, ~~Dkt. 33, Ex. 8, at 11. Such~~Ex. 9, at 11. VIZIO's
22 response did not clarify it was not going to provide any source code. *Id*. Moreover,
23 such a response is less than constructive and ~~adds no productive value to the~~does
24 nothing to move this case towards resolution ~~of this case~~. *Id*.

25 ~~The source code production issue has consistently come up since Blue Spike and~~
26

27 _____
28 [3] *See* Order, Dkt. 29; Fed. Cir. 2018, Order Denying VIZIO's Writ of Mandamus, Case 18-116.

1487662

1    VIZIO have started the discovery phase of this case. Blue Spike continued its request

2    for the inspection of VIZIO's Accused Product source code. As an example used in the

3    Complaint, VIZIO's smart television remote has a button that allows access to Netflix

4    for instant streaming of content. *See* Complaint, Dkt. 1. The parties have exchanged

5    interrogatories and requests for production starting in early February. *See* Request

6    for Production, Ex. 67; *see generally*, Declaration of Randall Garteiser DeclarationIn

7    Support of Blue Spike's Motion to Compel. Throughout this process, Blue Spike has

8    attempted to gain cooperation with VIZIO in the production of the essential source

9    code. Blue Spike has also supplied VIZIO with the production ofproduced voluminous

10   amounts of information requested by Defendant. Although not everything is to

11   VIZIO's liking in Blue Spike's production, that is to be expected in an adversarial

12   process. And Blue Spike continues to address these concerns along the wayVIZIO in

13   response to its over 100 document requests. However, VIZIO refuses production of

14   any of its source code essential to this case. The unconstructive proposal "[n]o date

15   needed" for the production of this information reflects Defendant's general attitude on

16   the issue of good faith efforts to constructively resolve this case. *See* Rule 26(f) Report,

17   Dkt. 33, for its Accused Products, which is essential to this case as VIZIO also asserts

18   a counterclaim of non-infringement. *See* Ex. 8, 9, at 11. 3 (pdf p.7).

19          While Blue Spike has requested source code within VIZIO's control through

20   the discovery process, it has also reminded VIZIO of this important issue through

21   other correspondence with Defendant. *See, e.g.*, Ex's. 1 (email dated Feb. 23, 2018); 2

22   (email dated Mar. 26, 2018); 3 (email dated Apr. 19, 2018). Not only has this

23   correspondence clarified the need for the source code at issue in this complaint, but it

24   reflects that Blue Spike has also attempted to alleviate VIZIO's alleged issues with

25   Blue Spike's request. *See* Ex. 1. And admittedly, it does indicate a sense of frustration

26   by Blue Spike with VIZIO's continued lack of cooperation. *See* Ex. 3.

27          In February, Counsel for Blue Spike elaborated on the source code needed, and

28   noted ways that the pressure of document production could be alleviated if the scope

3

1487662

1  of this case could be limited through an initial "start with the source code review." *See*
2  Ex. 1. Moreover, Blue Spike reiterated that VIZIO's continued position "that it is not
3  going to make its entire source code for the accused products" or "even make the
4  source code related to the streaming functionality available" was untenable and had
5  held up progress in the case for months. *Id.* Corresponding documentation and
6  requests were attached to this email to provide VIZIO with further guidance on its
7  alleged issues with Blue Spike's request. *Id.*

8       More to this point, in March, correspondence between the parties underscores
9  VIZIO's strategy of again ignoring Plaintiff's repeated requests for initial source code
10  review entirely while, at the same time, requiring that Blue Spike go above and
11  beyond in clarifying responses that it has already given in good faith. *See* Ex. 2. Indeed,
12  VIZIO's lack of cooperation, or constructive responses as to how a meet and confer
13  would address Plaintiff's issues, was a serious hindrance to scheduling a meet and
14  confer. *Id.* Yet even as Plaintiff worked with VIZIO, and made concessions to
15  supplement its responses (this in spite of zero concessions on behalf of VIZIO, *see* Ex.
16  2, VIZIO Counsel's Mar. 22 reply to Blue Spike Counsel Mar. 8 correspondence),
17  VIZIO falls into a pattern of causing the obstacles to a resolution of this case. It does
18  this while, at the same time, holding the obvious difficulties with formal compliance
19  due to this non-cooperative strategy against the intended target of this tactic. *Id.* This
20  even in the aftermath of two decisions in the present case that found VIZIO's use of
21  such a strategy impermissible (*see* Order, Dkt. 29; Fed. Cir. Order, Case 18-116), and
22  in spite of the "multiple documented times Blue Spike has attempted to meet and
23  confer" (*see e.g.* Ex. 3).

24       In April, Blue Spike had to, once more, reassert its request for source code
25  inspection, which it reiterated had been instrumental in holding up the process for an
26  attempted "meet and confer with Vizio for about 3 weeks." *See* Ex. 3. Blue Spike also
27  repeated the importance of time in this case, as the "short discovery window" (ending
28  on the 1st of Nov. 2018) made VIZIO's continued refusal to meet and confer, and its

4

1487662

1    continuous strategy in failing to "provide a reason for its denial of financial
2    information related to the accused products and its source code" a dangerous tactic.
3    This tactic has left Blue Spike in the position of being prejudiced in the assertion of its
4    property rights absent the assistance of this Court in the resolution of this issue.

5        In sum, while Blue Spike has given a good faith attempt to provide information
6    to, and collect essential information from VIZIO, , VIZIO has not reciprocated.
7    Respectfully, Blue Spike requests an order from the Court requiring production of
8    documents, including source code, responsive to Blue Spike's Request for Production,
9    Nos. 16 and 22-33.  *See* Dkt. 7.

10       **B. VIZIO's Introductory Statement.**

11       Blue Spike falsely accuses VIZIO of discovery misconduct, when Blue Spike is
12   the only party to blame.  After refusing to meet and confer about its own discovery
13   deficiencies (such as its failure to provide any written responses to VIZIO's requests
14   for production of documents, failure to provide timely or intelligible responses to
15   VIZIO's Interrogatories, and failure to produce electronic documents that can be
16   opened and/or accessed, among others), Blue Spike brought the instant Motion in
17   violation of the parties' express agreement (at Blue Spike's request) to defer motion
18   practice while Blue Spike counsel attempted to get up to speed on this case following
19   the withdrawal of the Garteiser Honea attorney previously handling this matter.
20   Blue Spike's true goal in this Motion is not to obtain source code, as is evidenced by its
21   complete failure to even try and obtain relevant source code from any third parties,
22   but solely to win the race to the courthouse so it can cast aspersions on VIZIO before
23   VIZIO can file its own motion to compel.

24       Consistent with this goal, Blue Spike's Motion is a lengthy and irrelevant
25   diatribe regarding VIZIO's supposed transgressions, designed to obscure the
26   following dispositive facts:

27       • VIZIO does *not* manufacture the products at issue in this case.
28       • VIZIO does *not* have relevant source code – *i.e.*, source code relating to

the allegedly infringing features of the Accused Products.

- VIZIO has repeatedly advised Blue Spike that relevant source code is in the possession of *third parties*.

Because VIZIO has no source code that relates to the allegedly infringing functionality, the only relief Blue Spike can obtain with this motion is to force VIZIO to produce *irrelevant* source code unrelated to the accused functionality of the Accused Products, or this case. However, nowhere in its Motion does Blue Spike even attempt to explain what exact source code it is seeking, how such unidentified source code could be relevant, why it needs such source code, or how its purported need for production of such source code outweighs the risks and burdens associated with its production.

Blue Spike merely asserts, without explanation, that it needs to inspect all of VIZIO's source code "in order to respond to the non-infringement and invalidity claims that VIZIO has asserted" and "to fairly develop its claims past the plausible (yet publicly available) level that Plaintiff has already demonstrated." Nowhere does Blue Spike actually explain how source code *unrelated to the accused functionality* could possibly be relevant or necessary to either task, or to this case.

These omissions are fatal to Blue Spike's Motion. To state the obvious, proprietary source code is commercially sensitive, and courts carefully scrutinize source code requests. Thus, a party (such as Blue Spike) that seeks to inspect computer source code must prove that the source code in question is relevant to issues in dispute, *and* that the need for production outweighs not just the burdens but the *risks* associated with its production. *Drone Tech., Inc. v. Parrot S.A.*, 838 F.3d 1283 (Fed. Cir. 2016) (vacating an order requiring production of source code when Plaintiff failed to show relevance and necessity). Blue Spike does not even attempt to meet its burden.

Instead, Blue Spike's Motion is a harassing litigation tactic, rife with baseless and nonsensical accusations regarding VIZIO's purported discovery misconduct. For

example, Blue Spike suggests that VIZIO acted improperly by moving to transfer or dismiss Blue Spike's case filed in the Eastern District of Texas.  But under the U.S. Supreme Court's decision in *TC Heartland*, the Eastern District of Texas is not a proper forum for this dispute.  *See, e.g.*, Basileo Decl., Ex. J (including Order from *Nichia v. VIZIO*, No. 16-cv-1453, Dkt. 220 (E.D. Tex. Feb. 2, 2018), granting VIZIO's motion to dismiss for improper venue).

Blue Spike also complains that VIZIO did not produce documents in response to *informal* document requests Blue Spike made early in this case, but VIZIO has no obligation to do so.  Blue Spike also notes that VIZIO will not agree to forgo the use of any third-party source code at trial or in a summary judgment motion.  Yet, VIZIO has no obligation to agree to such a proposal, and indeed, this third-party source code is the best available evidence for infringement and noninfringement issues.  Blue Spike further contends that it is now facing time pressure with regard to discovery, but any purported time pressure was caused by Blue Spike's own decision to wait until the *11th week of the discovery period* to serve its first set of formal discovery demands, as well as its decision to conduct no third-party discovery in this lawsuit.

Blue Spike also argues that VIZIO delayed meeting and conferring with respect to the document demand at issue here.  Yet, the record shows that the opposite is true. After receiving VIZIO's timely written responses, Blue Spike sent VIZIO a meet and confer request that failed to comply with Local Rule 37-2.  VIZIO nonetheless proposed multiple meet and confer dates, but Blue Spike counsel ignored these proposals, later claiming they were "distracted" by another case in which they are not representing any of the parties:

> My apologies Steve, I was distracted the last few days by the billion dollar Virnetix[sic] case against Apple. They found infringement and the last few days are involved with willfulness, which seems like a sure thing from your fellow members of the bar here in Texas.

*See* Declaration of Steve Basileo ("Basileo Decl."), Ex. A at 1.  It is not VIZIO's fault if this case is a low priority for Blue Spike's counsel.

1    In sum, Blue Spike's Motion is bereft of evidence or argument addressing the

2    applicable standard, procedurally improper, and filed for an improper purpose.   Blue

3    Spike's Motion should be denied in its entirety, and VIZIO should be awarded its fees

4    and costs.

5    **PLAINTIFF'[²] BLUE SPIKE'S POSITION**

6    ## I.    NATURE OF THE DISPUTE.

7    Blue Spike has requested that VIZIO timely produce its ~~available~~ source code

8    since the very early stages of this case. *See, e.g.,* Randall Garteiser Declaration ~~¶¶ 1,~~

9    ~~3-5, 7~~; Joint Rule 26(f) Report, ~~Dkt. 33,~~ Ex. ~~8,~~ 9, at 4. Blue Spike has been very clear

10   that this source code inspection would benefit this case immensely in terms of

11   reducing the time and effort the Court will need to put into this action. It will also

12   simplify the patent infringement claims themselves—including any ambiguities that

13   VIZIO sees in the patent infringement counts brought against it. *See ~~Rule 26(f)~~*

14   ~~Report, Dkt. 33,~~, *e.g.,* Ex. ~~8,~~ 9, at 4; *see also,* Fed. R. Civ. P. 1.

15   Instead of simply providing the limited, narrowly tailored, discovery

16   requested—*i.e.,* source code for the Accused Products—VIZIO has entrenched this

17   case in over a year's worth of pleading motion practice. *See, e.g.,* Initial Disclosures, Ex.

18   ~~7~~8 (~~clearly~~ limiting Accused Products to a certain subset of VIZIO smart televisions,

19   and tablets that employ ~~Andriod~~Android 4.0 operating system, and <u>higher.  This is</u>

20   not indicative of the vast production for an ambiguously large group of products—as

21   the Defendant continues to assert). <u>Furthermore, it is not Blue Spike's fault that</u>

22   <u>practically all of VIZIO's imports infringe.  VIZIO is known infringer that practices</u>

23   <u>what's been called efficient infringement.  A practice whereby a company waits to see</u>

24   <u>if a patent holder will risk litigation to enforce its intellectual property rights.  Most,</u>

25   <u>if not all, of VIZIO's TV and tablet products have the ability stream secure content,</u>

26   <u>and that forms the basis of infringement for five (5) of the asserted patents.</u>

27   <u>In good faith,</u>Blue Spike has revised and updated its Complaint throughout this

28   process ~~in good faith~~<u>thinking</u> that eventually its claims would have a fair and full

8

opportunity to be heard.  Blue Spike used the most accurate and publicly available information that it has been able to obtain. to revise its Interrogatory Response No. 1, whereby Blue Spike provided VIZIO with detailed infringement charts for the very narrow set of claims being asserted.  Ex. 15. To date, it has done this without VIZIO's cooperation in delivering the nonpublic information within its control. Moreover, it has done this in spite of VIZIO's continuous efforts to halt all progress in this case. VIZIO's current approach is to delay discovery until the discovery deadline runs out. Blue Spike remains committed to resolving this case on the merits.  This requires inspection of VIZIO's source code, and thus this current motion.

The Blue Spike's Complaint accurately underscores the accused products in this case, within the control of VIZIO, accused of infringement. *See* Complaint, Dkt. 1. It also accurately indicates where the source code for these VIZIO products can be located—this along with many discussions, and formal discovery requests, that also address VIZIO's alleged confusion. *See generally*, Randall Garteiser Declaration. Yet Defendant refuses to even attempt production of any source code, or related information, within the reasonable scope of what has been asked for by Blue Spike. While Blue Spike has made all reasonable efforts to provide VIZIO with good faith responses, and information, in the discovery process, VIZIO refuses to cooperate with Blue Spike's most fundamental request entirely.

Admittedly, Blue Spike will need the source code utilized in the VIZIO controlled products at issue in this case to develop its complaint beyond the information that is now publicly available to it.[4] *See* Fed. R. Civ. P 26(b)(1) (the

---

[4] VIZIO appears to be using Blue Spike's infringement contentions as a pretext not to cooperate with Plaintiff's discovery request. These claims are, as is customary prior to production of nonpublic information, demonstrated through publicly available information in claim charts developed by experts. Here, VIZIO is requiring a more particularized form of pleading than is required by the law in order for it to make a good faith effort at producing the needed source code that is at issue in this case. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (finding that where a cognizable theory or sufficient facts are presented, Rule 8 requirement is met); *McAfee Enters., Inc. v. Yamaha Corp. of America*, 2:16-2562, 2016 WL 6920675 at *2 ( C.D. Cal. June 24, 2016) ("The patent holder is not required to provide every

information requested is nonprivileged, is highly relevant to Blue Spike's claim or VIZIO's noninfringement defenses, and sits squarely within scope of discovery). This would be true of all such plaintiffs in the same position as Blue Spike. Moreover, the need for VIZIO to produce the requested source code is even more pronounced in a case that has been seen in two separate Districts, and has been needlessly stalled by multiple pleading motions brought by VIZIO for more than a year. In terms of expediting this claim so that a full-trial on the merits can finally convene, time is of the essence now more than ever.

Blue Spike's request of a discovery referee, with a loser pay provision in place, to oversee the discovery process is indicative of Plaintiff's desire to work with VIZIO in good faith, and to bring this case to a just and speedy resolution. *See* Rule 26(f) Report, ~~Dkt. 33,~~ Ex. ~~8,~~ 9, at 4–5, n. 1. Moreover, prior to the parties' meet and confer held on April 20, 2018, a Protection Order that should have resolved VIZIO's purported issue with disclosure of confidential information, including the source code (*see* ~~VIZIO Obj.,~~ Ex. 13, at 24; Ex. ~~5,~~ 6, at 5)~~,~~ was in place. *See* Protective Order, ~~Dkt~~Ex. ~~44.~~ 14. Yet VIZIO again refused to cooperate with Blue Spike's request when the parties met on April 20, 2018, without any further explanation or constructive resolutions to producing the essential discovery information. *See* Randall Garteiser Declaration~~, at ¶ 2.~~.

Blue Spike has taken steps to ensure that its discovery collaboration with VIZIO is both fair and efficient. However, in order for this to occur VIZIO must at least make a reasonable attempt to produce source code for the Accused Products. This is central to the claims in Blue Spike's Complaint, and VIZIO's refusal will only continue to inhibit any meaningful ability for this action to move forward. *See* Fed. R.

detail of its claim within the initial pleading. [citation omitted]. Rather, the complaint must merely provide a defendant with fair notice and a basis for asserting the claim. [citation omitted]."); *Soteria Encryption, LLC v. Lenovo United States, Inc.*, 16-7958, 2017 WL 3449058, at *1 (C.D. Cal. Feb. 27, 2017).

1487662

1  Civ. P. 26(b)(1). Blue Spike's ability to develop its claim to the particularized level that

2  VIZIO now insists Blue Spike must, as well as VIZIO's non-infringement contentions

3  themselves~~4~~,5 require that VIZIO cooperate in good faith with Plaintiff to produce the

4  source code that is at issue in this action.6

5      VIZIO acts in opposition to any and all such attempts.

6
7  **II.    THE REQUESTED SOURCE CODE IS ESSENTIAL TO DEFENDANT'S CONTENTIONS AND FOR THE DEVELOPMENT OF PLAINTIFF'S CASE.**
8

9      Blue Spike will need to inspect the source code that is at issue in this case in

10 order to respond to the non-infringement and invalidity claims that VIZIO has

11 asserted it will raise in this case. *See* Rule 26(f) Report, ~~Dkt. 33,~~ Ex. ~~8,~~ 9, at 7 (§ D. 2.).

12 Moreover, Blue Spike will also need to see such nonpublic information in order to

13 fairly develop its claims past the plausible (yet publicly available) level that Plaintiff

14 has already demonstrated in this claim. *Id.* at 4.

15      These are concerns VIZIO shares, at least as to its self-interested position that

16 instead of cooperating with Plaintiff it will, yet again, move to dismiss Blue Spike's

17 Complaint. *See, e.g., Id.* at 7; *see also* VIZIO Letter, Apr. 17, 2018, Ex. ~~4.~~ 5. The

18 Defendant's letter, for example, outlines VIZIO's issues with Blue Spike's use of

19 publicly available information to plead a plausible Complaint. *See* Ex. ~~4.~~ 5. Yet the

20 _____

21 5 The Court cannot rely on simply VIZIO's self-interested proclamation that it has not infringed, and Blue Spike must have this information to fairly defend against such
22 contentions. *See Wi-Lan*, 1:15-cv-00788, Dkt. 204.

23 6 Despite VIZIO's allegations that Blue Spike is requesting way too much source code, the amount produced is almost always limited by the parties reaching agreements.
24 For example, for purposes of infringement analysis and damages calculations VIZIO accused products made in 2016 until present operate the same way as the source code
25 provided to Blue Spike for inspection. Another example, the source code for VIZIO's accused products running Android 4.0.0 and higher have the same functionality. And
26 VIZIO can agree via stipulation that the source code for the remote and to stream is the same for a model of accused products regardless of the TV or tablet screen size.
27 So VIZIO's argument about proportionality is moot. The decision as too how much or how little to produce is in the hands of VIZIO via stipulations as to the various
28 versions of the source code.

1487662

1  particularized——and generally unrequired prior to discovery production and trial—
2  —standard that VIZIO  insists upon before it will cooperate with Blue Spike is the
3  very reason that the Defendant must produce the requested nonpublic information.[7]
4  *Id*. Without it, it is understood that Plaintiff would be prejudiced in the development
5  of its Complaint to such a particularized level in the first place. *See Wi-Lan Inc. v.*
6  *VIZIO, Inc.*, 1:15-cv-00788, Dkt. 204 (D. Del. Apr. 13, 2018); Fed. R. Civ. P. 26(b)(1).

7      This is understandable due to the current absence of the nonpublic information
8  held by VIZIO, which Blue Spike continues to request. VIZIO will need to produce
9  this information to resolve the Catch-22 that it currently has created for the Plaintiff.
10  On the one hand, it requests a deeper level of information than that required by Rule 8.
11  *See, supra*, fn3. On the other, it refuses to provide Blue Spike with the information
12  needed for Plaintiff to comply. VIZIO also asserts that it will move to dismiss, yet
13  again, without providing Blue Spike the information essential to ~~defending~~defend
14  against such non-infringement contentions. *See* Rule 26(f) Report, ~~Dkt. 33, Ex. 8, at 7~~
15  ~~(§ D. 2.).~~ Ex. 9, at 7 (§ D. 2.); *Baron Servs., Inc. v. Media Weather Innovations LLC*, 717
16  F.3d 907, 913, n. 9 (Fed. Cir. 2013) ("The opportunity for the reasonable chance to
17  disprove [defendant]'s position on noninfringement was relevant and essential to
18  [plaintiff]'s opposition of [defendant]'s motion for summary judgment.") (alterations
19  added).

20      Not only has Blue Spike supplied VIZIO with a discovery request that is very
21  clearly narrowed to a specific subset of VIZIO products (*see, e.g.*, Initial Disclosures,
22  Ex. 8), but it has repeatedly explained to VIZIO the relevance of the code to this
23  case—where initial source code production for the Accused Products within
24  Defendants control is a central issue to the infringement contentions. *See Baron*, 717
25  F.3d at 913, n. 9 (holding that finding non-infringement without requiring defendant

26
27  [7] So as to not be confused, VIZIO continues to argue Blue Spike's operative complaint
28  is not sufficient in April of 2018, after VIZIO waived that right by filing an Answer
    months ago.

to produce source code was an abuse of discretion) (plaintiffs burden under Rule 26(b)(1) is only "to show that the source code is relevant and likely to lead to admissible evidence" and under "the agreed protective order, [where defendant] can require that only [plaintiff's] attorney's have access to the code. There is no basis to further withhold discovery of the source code.") (alterations added).

Instead of producing the source code at issue in this Complaint, VIZIO dodges its obligation in this case by asserting that, because there are potential third-party source code discovery issues, VIZIO has no obligation to produce the source code under its control. *See, supra*, at 4, 5; *infra*, at 16-17. This on the bare bones assertion that the source code in VIZIO Accused Products does not infringe, and that third parties (and not VIZIO itself) have sole control over the source code at issue (though the Accused Products are VIZIO name-brand). *Id*. While VIZIO might like Blue Spike to focus on third-party products and not the VIZIO Accused Products in this case, the well-known axiom that Plaintiff is the master of its complaint surely applies. And in this instance, Blue Spike is asking VIZIO to produce source code that is relevant to its products, and not third-party products. Blue Spike is going to start with VIZIO's source code, determine if third party discovery is warranted, and then, only if necessary, bother third parties about VIZIO's infringement. It's VIZIO's Smart Televisions and Tablet, that are the Accused Products, not a third parties.

## A. VIZIO Has Disingenuously Evaded Blue Spike's Requests.

### i. *Email Correspondence.*

Furthermore, Blue Spike reminded VIZIO of its obligation to produce source code through consistent and frequent correspondence with VIZIO that spans from the early stages of Defendant's discovery obligations, until the present. *See, e.g.*, Ex. 1 (email dated Feb. 23, 2018); Ex. 2 (email dated Mar. 26, 2018); Ex. 3 (email dated Apr. 3, 2018); Ex. 4 (email dated Apr. 19, 2018). Not only has this correspondence clarified the need for the source code at issue in this complaint, but it reflects that Blue Spike has also attempted to alleviate VIZIO's alleged issues with Blue Spike's request. *See*,

13

1487662

1   *e.g.*, Ex. 1. And admittedly, it does indicate a sense of frustration by Blue Spike with

2   VIZIO's continued lack of cooperation. *-See, e.g.*, Ex. 4.

3       In February, Counsel for Blue Spike elaborated on the source code needed, and

4   noted ways that the pressure of document production could be alleviated if the scope

5   of this case could be limited through an initial "start with the source code review." *See*

6   Ex. 1. Blue Spike "explained that it is the source code related to streaming audio

7   and/or video" in the VIZIO Accused Products. *Id*. Moreover, Blue Spike reiterated

8   that VIZIO's continued position "that it is not going to make its entire source code for

9   the accused products" or "even make the source code related to the streaming

10  functionality available" was untenable and had held up progress in the case for months.

11  *Id*. Plaintiff also requested a "meet and confer no later than March 6, 2018 with

12  respect to inspection of source code" to as to "relieve the pressure of document

13  production on VIZIO." *Id*. "However, it appears that Vizio is not going to make its

14  source code available without motion practice as it has not indicated any dates for

15  such review since the Rule 26 conference. As such, Blue Spike must proceed with its

16  document requests in tandem with the review of the source code." *Id*. (showing

17  attached requests for production).

18      In March, Blue Spike noted that it had "asked for a date to meet and confer on

19  Vizio not providing a date for source code inspection." *See* Ex. 2 (noting that VIZIO's

20  correspondence indicated "a transparent attempt to spin" its refusal to meet and

21  confer, and offering meet and confer times "anytime today, tomorrow or Thursday" of

22  that week). The correspondence also noted VIZIO's "disingenuous" evasion of Blue

23  Spike's requests, and that Plaintiff would have to "move first," if needed, to address

24  VIZIO's failure with this Court. *Id*. (Mar. 8, 2018). Correspondencebetween the

25  parties underscores VIZIO's strategy of again ignoring Blue Spike's repeated requests

26  for -an initial source code review entirely while, at the same time, requiring that Blue

27  Spike go above and beyond in clarifying responses that it had already given in good

28  faith. *Id*. (Mar. 22, 2018) Indeed, VIZIO's lack of cooperation, or constructive

14

1   responses as to how a meet and confer would address Blue Spike's issues, was a serious

2   hindrance to scheduling a meet and confer. *Id.* Yet even as –Blue Spike worked with

3   VIZIO, and made concessions to supplement its responses (this in spite of zero

4   concessions on behalf of VIZIO, *see* Ex. 2, VIZIO Counsel's Mar. 22 reply to Blue

5   Spike Counsel Mar. 8 correspondence), VIZIO continues to make obstacles to a

6   resolution of this case. [8]

7          In early April, Blue Spike again made efforts "to meet and confer about Vizio's

8   source code review and lack of production." *See* Ex. 3. Blue Spike noted that it had

9   "mentioned we wanted to meet and confer about 3 times on the source code and you've

10  ignored our requests. So in another effort to meet and confer, please let us know a date

11  this week that works for Vizio." *Id.* (noting Blue Spike's times and accommodation it

12  could make to meet). The correspondence noted that "[t]he call pertains to a future

13  date for source code inspection, Vizio's lack of production." *Id.*

14         In late April, Blue Spike had to, once more, reassert its request for source code

15  inspection, which it reiterated had been instrumental in holding up the process for an

16  attempted "meet and confer with Vizio for about 3 weeks." *See* Ex. 4. Blue Spike also

17  repeated the importance of time in this case, as the "short discovery window" (ending

18  on the 1st of Nov. 2018) made VIZIO's continued refusal to meet and confer, and its

19  continuous strategy in failing to "provide a reason for its denial of financial

20  information related to the accused products and its source code" a dangerous tactic.

21  This tactic has left Blue Spike in the position of being prejudiced in the assertion of its

22  property rights absent the assistance of this Court in the resolution of this issue.

23         *ii.*   ***Formal Discovery Correspondence.***

24         Blue Spike served VIZIO with its First Request for Production of Documents

25

26  _____
    [8] This even in the aftermath of two decisions in the present case that found VIZIO's
27  use of such a strategy impermissible (*see* Order, Dkt. 29; Fed. Cir. Order, Case 18–116),
    and in spite of the "multiple documented times Blue Spike has attempted to meet and
28  confer" (*see, e.g.*, Ex. 4).

1487662

on February 23, 2018. *See* Ex. 7, at ¶¶ 16, 22-33. In its Request, Blue Spike clarified the need for the source code at issue in VIZIO's Accused Products, and narrowed the Request to a very specific subset of VIZIO name-branded televisions and tablets. *Id*. Furthermore, Plaintiff narrowed the Accused Products to those "capable of streaming secured content such as Netflix, Youtube, Google Play, HBO Go, Fox Now, and other such services." *See id.*; *see also*, First Interrogatories, Ex. 11, at 7-8 (further clarifying the VIZIO Accused Products by allowing Defendant to narrow its focus through the memory systems, and operating systems, employed by such products); 30(b)(6) Noticed Deposition, Ex. 12, at 1, 5 (further clarifying that the source code at issue is that which is "implementing the patented inventions. The deponent needs to be able to access the root tree for this deposition on a laptop consistent with the save [sic.] guards of the Protective Order.").

As a first point, VIZIO pivots from its initial issue with the production of source code. *See* Objections to Request, Ex. 13, at 24; *see also*, Objection to Interrogatories, Ex. 6, at 5. In March, VIZIO's response to Blue Spike's request for source code production stated that "VIZIO will agree to produce its confidential documents once the Court enters a protective order in this case." *See* Obj. to Request, Ex. 13, at 24. Now a protective order has been entered in this case. *See* Protective Order, Ex. 14, at 3, § 2.8, ensuring that source code be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE"). This protective order was in place prior to Blue Spike and VIZIO's meet and confer, where the Defendant again was again non-responsive to Blue Spike's requests. Moreover, VIZIO can require that only Blue Spike attorneys have access to this code. *See Baron*, 717 F.3d at 913, n. 9. With this protection in place, "[t]here is no basis to further withhold discovery of the source code." *Id*.

Additionally, VIZIO disingenuously represented the clear scope of what Blue

Spike had asked for in its Objections. *See* Obj. to Request, Ex. 13, at 24.[9] As an example, it denies that Blue Spike's source code request is relevant "to any claim or defense or proportional needs of the case," while at the same time asserting that it will raise a non-infringement contention. *See* Rule 26(f) Report, Ex. 9, at 7 (§ D. 2.). Certainly, Blue Spike will need the requested production in order to fairly defend itself. *See Baron*, 717 F.3d at 913, n. 9. Moreover, VIZIO well knows that the source code at issue is that in the Accused VIZIO name-branded Products, as Blue Spike has made that abundantly clear from the initial filing of its Complaint, and throughout the discovery process. *See, supra*, at 12. The disingenuous lack of cooperation with Blue Spike's Requests can be seen throughout VIZIO's Objections to Plaintiff's most fundamental Requests that are at issue in this Motion to Compel. *See, e.g.*, Ex. 13, at Obj. to No.'s 16, 22-33.

### B. VIZIO's Lack of Good Faith Effort and Uncooperative Strategy Has Been Noted in This Case and by Other Courts.

Already in this case, two separate courts, consisting of not less than four separate judges, have found in favor of Blue Spike when VIZIO's litigation tactics (which involved an abuse of the parties' good faith efforts through the dismissal process) have been reviewed. Both this Court and the Federal Circuit found that, in

---

[9] For example, in its Objection VIZIO states that "VIZIO will not produce those types of 'documents or things,'" where Blue Spike made no such requests. *See* Ex. 13, at 23 (where VIZIO quotes Blue Spike's request verbatim, and it is absent of any such request for "documents and things."). Defendant then feigns a lack of understanding to what "data in electronic form" means in Blue Spike's Request. *Id*. at 24. As VIZIO places Blue Spike's Document Request just prior to this cherry-picked term, it clearly refers to "documents, correspondence, email or *data in electronic form*, referring or related to the structure, operation, function or performance of the Accused Product and/or its components, including all source code, user guides, reference manual, product manuals, product descriptions, technician's guides, installation guides, technical manuals, software manuals, screen shots, and datasheets." *Id*. at 23 (emphasis added). Thus, VIZIO surely understands the context of the term.

working to forestall Blue Spike's patent infringement claims after Plaintiff moved the action to VIZIO's preferred District, Defendant did not act in good faith or with clean hands. *See* Order, Dkt. 29; Fed. Cir., Order, Case 18-116.

This is not the first, or last, time a Federal Court has found misconduct in VIZIO's litigation strategy. In fact, just this month the District Court of Delaware found VIZIO's litigation tactics in discovery "would be unfairly prejudicial to Plaintiff and disrupt the Court's management of the case." *See Wi-Lan ~~Inc. v. VIZIO, Inc.~~*, 1:15-cv-00788, Dkt. ~~204 (D. Del. Apr. 13, 2018).~~ 204. Chief Judge Leonard P. Stark found that "Plaintiff has the right to obtain the factual basis for each of Vizio's affirmative defenses beyond the bare assertions ~~in~~of them in Vizio's responsive pleading." *Id.* The Judge also found the interrogatories "necessary to advance the orderly pretrial development of the case." *Id.*

In Judge Stark's Order, as here, production by VIZIO of the requested source code is necessary to advance the pretrial development of this case. *Id.* Moreover, VIZIO intends to use absence of this non-public information in Blue Spike's Complaint as the basis for affirmative, and other defenses. *See* Ex. 9, at 7. Without allowing Blue Spike or this Court to inspect the source code by producing it, these defenses will be nothing more than bare assertions. *See Wi-Lan*, 1:15-cv-00788, Dkt. 204. This is an indefensible position by VIZIO. *See Baron*, 717 F.3d at 913, n. 9.

Thus, for one, if VIZIO does "believe[ ] that its defenses of non-infringement and/or invalidity are likely to be determined by a motion for summary judgment," then Blue Spike and this Court will need the source code in order to understand, beyond assertions, that there is a factual basis for Defendant's defenses. *See* Rule 26(f) Report, ~~Dkt. 33,~~ Ex. ~~8,~~ 9, at 7 (§ D. 2.) (alteration added). For two, if VIZIO actually does want Blue Spike to prepare for, and potentially streamline, this case by clarifying its infringement contentions deeper than the plausibility standard required by Rule 8, then Blue Spike will need to see the source code: because it is a central item of information needed to do that in this case. Lastly, dismissing infringement counts (as

18

1487662

1  the source code sometimes calls for in cases such as these) would, again, need
2  cooperation by VIZIO with Blue Spike's request, as the source code may "indicate a
3  flaw with the publicly available information supporting Blue Spike's allegation of
4  Vizio's patent infringement." *See* Rule 26(f) Report, ~~Dkt. 33,~~ Ex. ~~8,~~ 9, at 4.

5        In short, it seems that VIZIO has tied Blue Spike's hands. Essentially, VIZIO
6  requires an unreasonable level of specificity in order to make a good faith attempt to
7  provide Blue Spike with the very information required to comply with such a request.
8  VIZIO then, again, ties Blue Spike's hands by asserting that it will file
9  non-infringement defenses against Plaintiff that rely upon the nonpublic information
10 requested by Blue Spike. *Id.* at 7 (§ D. 2.). With nothing more than Defendant's
11 contention, absent the source code to support this defense, Defendant's defense that
12 noninfringement applies to the present case leaves Plaintiff prejudiced. *See Wi-Lan,*
13 1:15-cv-00788, Dkt. 204; *Baron,* 717 F.3d at 913, n. 9. VIZIO then asserts that Blue
14 Spike, and not the Catch-22 it has created, is the underlying reason for delay.  This is
15 illogical.

16       With the discovery deadline fast approaching, Blue Spike is left with no choice
17 but to file the current motion after meeting and conferring with counsel on April 20,
18 ~~2018, for about an hour.~~ 2018. VIZIO took the repeated position that it didn't
19 understand Blue Spike's infringement contentions—contentions which have been in
20 Defendant's possession for over two months. As has been an issue since the beginning
21 of this process, VIZIO also made no good faith attempts to provide any of the
22 requested source code~~. Though~~; though Blue Spike has made it clear from the very
23 beginning of discovery requests that an initial good faith effort as to some of the
24 source code would have been sufficient to help move the process forward. *See* Ex. 1.
25 VIZIO's alleged lack of understanding coincides precisely with Blue Spike's renewed
26 request for a date to inspect VIZIO's accused product source code.~~1~~10

27 _____

28 [10] VIZIO also attempted through attorney argument to say that third parties had the source code not VIZIO.  But VIZIO would not stipulate to not using any source code

1487662

### III.   CONCLUSION TO PLAINTIFF~~'S~~ BLUE SPIKE'S POSITION.

Production of the source code requested by Blue Spike, and withheld by VIZIO, is essential to Blue Spike's development of this case. *See* Fed. R. Civ. P. 26(b)(1). Defendant is protected from prejudice by a protection order outlining the care of confidential information, Blue Spike's efforts to set-up a discovery process with a neutral referee and loser pay provision, and Blue Spike's transparent efforts to work with Defendant in the production of discovery at issue in this proceeding.

Pursuant to Federal Rule 37(a), and Local Rule 37, Plaintiff requests for the Court to issue an ~~Oder~~Order to Compel Defendant to produce ~~the~~ source code ~~at issue in this Complaint~~for the Accused Products as Blue Spike requested in its Requests for Production ~~16.~~ Nos. 16, 22-33.   Defendant is welcome to make available a representative Accused Product's source code, e.g. a 2016 VIZIO Smart TV, whereby Blue Spike will stipulate that the other Accused Products stream, protect against hackers and have a similar remote control. Without an order from this Court compelling production, VIZIO has already demonstrated it will continue to practice "efficient infringement" forcing an independent inventor, who's debt from a failed start-up are these patent rights, in patent's that he created, to bring forward this litigation just to obtain a reasonable royalty.

to show non-infringement.  As such, even if third parties possess some source code, the Smart TVs produced by VIZIO are the accused products for this case and that source code is necessary to show how this hardware works with the operating system of VIZIO to run particular steaming applications, among others, from third parties.

20

1487662

## DEFENDANT VIZIO'S POSITION[11]

### IV.   ~~I.~~ CASE BACKGROUND

Blue Spike alleges that VIZIO infringes seven patents, which can be categorized into three groups: U.S. Patent Nos. 5,745,569, and 8,930,719 (collectively "ASLR Patents"); U.S. Patent Nos. 7,475,246, 8,171,561, and 8,739,295 (collectively "Secure Server Patents"); and U.S. Patent Nos. 7,159,116 and 8,538,011 (collectively "Trusted Transactions Patents") (all patents collectively the "patents-in-suit").

Blue Spike does not contend that the patents-in-suit read on the Accused Devices (*i.e.*, TVs and tablets) in their entirety.  Instead, as Blue Spike concedes, the patents-in suit concern very limited aspects of the Accused Products.  According to Blue Spike, the Secure Server Patents and the Trusted Transactions Patents relate to the use of Microsoft's PlayReady functionality in certain VIZIO TVs and home theater displays, and the ASLR Patents relate to the alleged use of data protection based on memory shuffling in certain VIZIO remote control tablets.  Basileo Decl., Ex. D at 5-6; *id.*, Ex. E, at 7-10.

### V.   ~~II.~~ DISCOVERY IN DISPUTE

At issue in this Motion is Blue Spike's Document Request No. 16, set forth below along with VIZIO's Response.

#### A. DOCUMENT REQUEST NO. 16:

Please produce all documents, including correspondence, email or data in electronic form, referring or related to the structure, operation, function or performance of the Accused Product and/or its components, including all source code, user guides, reference manuals, product manuals, product descriptions, technician's

---

[11] The draft joint stipulation that Blue Spike sent to VIZIO, *see* Basileo Decl., Ex. B, failed to include an initial introductory statement section from each party, or a verbatim statement of the relevant Request and Response.  *See* Local Rule 37-2.1. VIZIO asked Blue Spike to revise the joint stipulation to conform to the Local Rules, but Blue Spike refused, stating, "We thought the intro complies as is.  But you are welcome to separate it into section."  *Id.*, Ex. C.

1487662

guides, installation guides, technical manuals, software manuals, screen shots and datasheets.

**B. <u>RESPONSE TO DOCUMENT REQUEST NO. 16:</u>**

VIZIO incorporates its General Objections as if fully set forth herein.

VIZIO further objects to this Request to the extent it calls for disclosure of documents protected by a Privilege.

VIZIO further objects to this Request to the extent it requires disclosure of confidential information before a protective order is entered in this case. VIZIO will agree to produce its confidential documents once the Court enters a protective order in this case.

VIZIO further objects to this Request as vague and ambiguous as to the term "Accused Product." To date, Blue Spike has failed to specifically identify the products accused of infringement, including the model numbers of those accused products, and that information is needed before VIZIO can reasonably respond to this Request. Moreover, this lawsuit has nothing to do with vehicle tracking systems. VIZIO will not produce documents relating to vehicle tracking systems.

VIZIO further objects to this Request as to the phrase "data in electronic form." It is uncertain what that data would include, aside from emails, and VIZIO will not produce those types of "documents or things" absent further clarification.

VIZIO further objects to this Request to the extent it seeks information not relevant to any claim or defense or proportional to the needs of the case. This particular Request is objectionable because the proposed discovery is not important in resolving the issues in this action, and the burden or expense of the proposed discovery outweighs its likely benefit. For example, this Request seeks information about the structure and function of VIZIO's televisions as a whole. But that is well beyond the scope of this lawsuit. Additionally, this Request seeks discovery into emails, and email discovery is not proportional to the needs of this case. Based on the

Complaint, this lawsuit appears to relate to applications and instrumentalities developed by third parties. Thus, VIZIO's documents, and particularly its emails, will not be relevant to any claim or defense in this case. Accordingly, VIZIO will not agree to produce any emails unless and until Blue Spike explains with specificity what emails are being sought, and why those emails are relevant to this matter and also proportional to the needs of this case.

VIZIO objects to this Request to the extent that it seeks information that is not within VIZIO's possession, custody, or control.

VIZIO further objects to this Request to the extent it seeks disclosure of Third Party Confidential Information.

VIZIO is willing to meet and confer to better understand the scope and relevance of this Request.  VIZIO reserves the right to make further objections to this Request.  It is also noted that based on VIZIO's current understanding of Blue Spike's infringement allegations, Blue Spike's infringement theories are directed to applications and functionalities developed and maintained by third parties.  Thus, documents responsive to this Request are likely in the possession of third parties, not VIZIO.

## VI.   ~~III.~~ COURTS CAREFULLY SCRUTINIZE SOURCE CODE REQUESTS

Proprietary source code is commercially sensitive, and thus courts carefully scrutinize source code requests. *Drone Tech.*, 838 F.3d at 1299-30.  Thus, a party (such as Blue Spike) seeking source code must prove that the source code in question is relevant to issues in dispute, *and* that the need for production outweighs the risks and burdens associated with its production.  *Id.* at 1300 (vacating an order requiring production of source code because moving party "failed to show its relevance or establish any need for the code as it relates to the operation of the accused products"). Mere speculation will not suffice. *In re Apple and AT & TM Antitrust Litig.*, 2010 WL 1240295, at *3 (N.D. Cal. Mar. 26, 2010) ("Based on the above, plaintiffs have not met

1487662

their burden and have not established that the additional source code sought is relevant and necessary.  Plaintiffs only speculate that the additional source code may be relevant.  At this juncture, some (if not all) of plaintiffs' assertions appear to be based on mere 'belief.'") (citations omitted).

Courts also recognize that requests (such as the one at issue here) that seek *all* source code regardless of its relevance are overbroad, and only source code that relates to the accused functionality should be made available for inspection.  *See, e.g.*, *Uniloc USA, Inc. v. Apple, Inc.*, 2018 WL 2002979, at *2-3 (N.D. Cal. Apr. 30, 2018) (denying request to inspect all iPhone operating system software as overbroad, citing "the requirement under the Federal Rules that discovery be relevant and proportional"); *Rensselaer Polytechnic Inst. v. Apple Inc.*, 2014 WL 1871866, at *4-5 (N.D.N.Y. May 8, 2014) (limiting production to source code relating to accused functionality); *Nazomi Comm's, Inc. v. Samsung Telecomms., Inc.*, 2012 WL 1980807, at *3 (N.D. Cal. June 1, 2007) (limiting production to source code relating to accused functionality, and denying plaintiff's request for a "complete copy of the source code compiled onto each [defendant] device" so as to help plaintiff "fully understand the operation of [defendant's] products and to determine whether relevant source code is in the exclusive possession of one or more third parties.").

## VII.    ~~IV.~~ VIZIO DOES NOT HAVE THE RELEVANT SOURCE CODE

As discussed above, the accused functionality in this case falls into two categories: 1) Microsoft's PlayReady functionality in certain VIZIO TVs, and 2) the alleged use of data protection based on memory shuffling in certain VIZIO remote control tablets.  VIZIO does not possess the source code relating to either of these accused functionalities.

As explained in the Declaration of Eric Loes, VIZIO's Senior Director of Software Engineering, VIZIO does not manufacture the TVs or home theater displays that it sells.  Declaration of Eric Loes ("Loes Decl."), ¶ 3. ████████████

1487662

1 ███████████████████████████████████████████████

2 ██████████.  These TVs currently include system-on-a-chip processors ("SoCs") from

3 different third-party manufacturers.  *Id.*  VIZIO does not possess the source code

4 relating to Microsoft's PlayReady functionality in VIZIO's TVs.  *Id.* at ¶ 4.[6][12]

5        In addition, VIZIO does not manufacture the Android-based remote control

6 tablets that shipped with certain models of its TVs and home theater displays.  *Id.* at ¶

7 6.  Those remote control tablets were manufactured by a third party manufacturer.  *Id.*

8 at ¶ 6.  VIZIO does not possess the source code relating to data protection through

9 memory shuffling on VIZIO's Android-based remote control tablets.  *Id.* at ¶ 7.

10       In sum, VIZIO does not have the relevant source code, and Blue Spike's motion

11 should be  denied on this basis.

12

13 **VIII.**   ~~V.~~ **BLUE SPIKE HAS FAILED TO SHOW THAT ANY OTHER**
     **SOURCE CODE IS RELEVANT OR NECESSARY**

14       As discussed above, a party (such as Blue Spike) that seeks the production of

15 computer source code must prove that the source code in question is relevant to issues

16 in dispute, and that the need for production outweighs the risks and burdens

17 associated with its production.  *Drone Tech.*, 838 F.3d at 1300-1301.  However,

18 nowhere in its Motion does Blue Spike even attempt to explain precisely what source

19 code it is seeking, how such unidentified source code could be relevant, why it needs

20 such source code for this litigation, or how its purported need for production of such

21 source code outweighs the risks and burdens associated with its production.  Blue

22 Spike merely asserts, without explanation, that it needs to inspect all of VIZIO's

23 source code "in order to respond to the non-infringement and invalidity claims that

24

25 ──────────────────

26 [12] ███████████████████████████████████████████████

27 ███████████████████████████████████████████████

28 ████████

1487662

VIZIO has asserted" and "to fairly develop its claims past the plausible (yet publicly available) level that Plaintiff has already demonstrated." *But source code unrelated to the accused functionality is not relevant or necessary to either task*. For that reason it is not discoverable. *See, e.g., Rensselaer Polytechnic Inst.*, 2014 WL 1871866 (limiting production to source code relating to accused functionality).

## IX. ~~VI.~~ VIZIO HAS REPEATEDLY ADVISED BLUE SPIKE THAT THE RELEVANT SOURCE CODE IS THIRD PARTY SOURCE CODE

VIZIO has made no secret of the fact that the source code relevant to this dispute is third party source code. For example, in its March 26, 2018, Response to the request at issue here, VIZIO advised Blue Spike that it should seek source code from third parties.

> It is also noted that based on VIZIO's current understanding of Blue Spike's infringement allegations, Blue Spike's infringement theories are directed to applications and functionalities developed and maintained by third parties. Thus, documents responsive to this Request are likely in the possession of *third parties*, not VIZIO.

Basileo Decl., Ex. F at 25 (emphasis added). In an April 10, 2018, email regarding meet and confer times, VIZIO counsel reiterated this warning:

> Additionally, we reiterate that, based on our current understanding, the source code you are really seeking is in the possession of *third parties*, but we can discuss that on our phone call as well.

*Id.*, Ex. A at 3 (emphasis added). And during the April 20, 2018, meet and confer teleconference VIZIO counsel again advised Blue Spike that Blue Spike should seek such source code from third parties. *Id.*, ¶ 13.

## X. ~~VII.~~ BLUE SPIKE'S ASSERTIONS THAT VIZIO HAS ACTED IMPROPERLY ARE UNFOUNDED

Blue Spike's Motion is replete with baseless accusations regarding VIZIO's purported discovery misconduct. For example, Blue Spike complains that VIZIO did not agree to litigate this dispute in the Eastern District of Texas. But there is nothing improper about VIZIO's refusal to litigate this action in an improper forum. *TC*

26

1487662

*Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514, 1520-21 (2017) (venue in a patent case is improper if the Defendant is neither incorporated nor maintains a regular and established place of business in the forum).

Blue Spike also complains that VIZIO did not produce its source code when counsel for Blue Spike "asked for it" early in this case.  But this complaint is equally baseless.  Among other things, VIZIO had no obligation to respond to Blue Spike's counsel's informal requests.  And while Blue Spike appears to be operating under the false assumption that this case is actually pending in the Eastern District of Texas (which has different initial disclosure obligations), *see*, *e.g.*, Basileo Decl., Ex. G at 7, 15, 21, and 22 (citing the Local Rules of the Eastern District of Texas), this is simply not the case.  Moreover, no production of source code could have taken place in the absence of a protective order, which was only recently approved by this Court.  Finally, as set forth above, VIZIO does not have the source code relating to the accused functionalities.

As for Blue Spike's complaint that it is now facing time pressure with regard to discovery, Blue Spike has no one to blame but itself.  The parties conducted their Rule 26(f) initial conference on December 15, 2017.  Basileo Decl., Ex. H at 1.  Blue Spike could have served formal discovery at any time thereafter.   But Blue Spike inexplicably waited until February 23, 2018, to serve its first set of formal document demands.  Basileo Decl., Ex. I.  And Blue Spike has not bothered to conduct any third party discovery to date, despite VIZIO repeatedly informing Blue Spike that third parties are likely in possession of this source code.  Any time crunch Blue Spike may purportedly be facing, such as pursuing international discovery, is Blue Spike's own fault.

Similarly unavailing is Blue Spike's contention that VIZIO has avoided meeting and conferring with Blue Spike.  The document request response at issue in this Motion was served in a timely manner on March 26, 2018.  *Id.*, Ex. F.  Blue Spike did nothing for eight days, then sent a meet and confer request that did not contain any of

the information required by Local Rule 37.  *Id.*, Ex. A at 8.  VIZIO requested that Blue Spike provide a proper meet and confer letter.  *Id.* at 4–6.  Even though Blue Spike ignored this request, over the next few days VIZIO proposed *multiple* dates and times for a meet and confer call.  *Id.* at 2("The dates and times you propose do not work for us.  We are available to meet and confer Thursday or Friday of this week."); *id.* at 1 ("How about 2 p.m. Los Angeles time on Thursday?"); *id.* ("I have not heard back from you regarding the time I proposed, and now that time slot no longer works for us. How about 10:30 tomorrow morning?").  Blue Spike ignored all of these proposals. When Blue Spike finally responded, it claimed it was distracted by another matter that it deemed more important:

> My apologies Steve, I was distracted the last few days by the billion dollar Virnetix case against Apple. They found infringement and the last few days are involved with willfulness, which seems like a sure thing from your fellow members of the bar here in Texas.

*Id.*, Ex. A at 1.

On this record, Blue Spike cannot credibly assert that VIZIO has delayed the meet and confer process.  The opposite is true.

If anything, it is Blue Spike (not VIZIO) that is guilty of discovery misconduct. For example, after Blue Spike repeatedly resisted VIZIO's efforts to meet and confer with regard to all pending issues (*e.g.*, Blue Spike's failure to provide any written responses to VIZIO's requests for production of documents, failure to provide timely or intelligible responses to VIZIO's Interrogatories, the production of electronic documents that cannot be opened or otherwise accessed, etc.), the parties finally met and conferred on April 20, 2018.  Prior to the meet and confer teleconference Blue Spike expressed its desire to engage in iterative discussions with VIZIO, purportedly in the hope of *avoiding* motion practice:

> Let's plan to talk on Thursday as the concern is that Vizio has not made any of its code available and I don't understand the legal basis for doing so.  Then, if we need another call next week, we can follow up.

1487662

I feel like we need to communicate more as Vizio has issues it has raised of Blue Spike so we would like to address those as well in the hopes of *avoiding motion practice* where the Court is unhappy at everyone due to our inability to work out our concerns first without his intervention.

*Id.*, Ex. A at 2 (emphasis added).

And during the April 20, 2018, meet and confer teleconference, Blue Spike counsel (citing his need to get up to speed on the case following the withdrawal of the attorney who had been handling this matter for Blue Spike) proposed that the parties schedule another meet and confer teleconference for the following week, and requested that the parties agree to *defer any motion practice* while they continued discussions in an attempt to resolve their disputes. *Id.*, ¶ 12; Ex. C at 1-2. VIZIO agreed. *Id.* In blatant violation of this agreement, Blue Spike served this Motion on April 27, 2018.

VIZIO wrote to Blue Spike noting this violation of the parties' agreement, and requested that Blue Spike withdraw the instant Motion. *Id.*, Ex. C at 1-2. In its response, Blue Spike did not even attempt to deny its wrongdoing. Nor did Blue Spike withdraw its motion, or correct the joint stipulation to comply with the Local Rules. Instead, Blue Spike counsel flippantly responded, "We thought the intro complies as is. But you are welcome to separate it into sections. Be well." *Id.*, Ex. C at 1.

## XI. ~~VIII.~~ CONCLUSION TO VIZIO'S POSITION

As explained to Blue Spike on multiple occasions, VIZIO is not refusing to produce relevant source code. It simply does not have the relevant source code that Blue Spike seeks. Blue Spike's vague request for other source code unrelated to the accused functionality at issue in this case is improper. Equally improper is Blue Spike's insistence on bringing this meritless motion in violation of the parties' agreement to defer motion practice. Blue Spike's Motion should be denied in its entirety, and VIZIO should be awarded its fees and costs incurred in connection with this Motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT SUBMISSION BY BLUE SPIKE, LLC AND VIZIO, INC.

| PLAINTIFF BLUE SPIKE LLC | DEFENDANT VIZIO, INC. |
|---|---|
| /s/ Randall T. Garteiser<br>Randall T. Garteiser<br>  California Bar No. 231821<br>  rgarteiser@ghiplaw.com<br>Christopher A. Honea<br>  California Bar No. 232473<br>  chonea@ghiplaw.com<br>Ian N. Ramage<br>  California Bar No. 224881<br>  iramage@ghiplaw.com<br><br>**GARTEISER HONEA LLP**<br><br>888.908.4400 (phone / fax)<br><br>Primary Address to be Served:<br>119 W Ferguson,<br>Tyler, TX 75702<br><br>Secondary Address:<br>795 Folsom St, Floor 1,<br>San Francisco, CA 94107-4226.<br><br>*Attorneys for Plaintiff Blue Spike, LLC* | /s/ Rex Hwang<br>ADRIAN PRUETZ<br>  State Bar No. 118215<br>  apruetz@glaserweil.com<br>REX HWANG<br>  State Bar No. 221079<br>  rhwang@glaserweil.com<br>STEVEN P. BASILEO<br>  State Bar No. 157780<br>  sbasileo@glaserweil.com<br>DESMOND JUI<br>  State Bar No. 262200<br>  djui@glaserweil.com<br>GUY M. RODGERS<br>  State Bar No. 303229<br>  grodgers@glaserweil.com<br><br>**GLASER WEIL FINK<br>HOWARD AVCHEN &<br>SHAPIRO LLP**<br><br>10250 Constellation Blvd, 19th Fl.<br>Los Angeles, California 90067<br>Telephone: (310) 553-3000<br>Facsimile: (310) 556-2920<br><br>*Attorneys for Defendant VIZIO, Inc.* |

1487662

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION

1487662