**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:17-cv-01172-DOC-KESx                                         Date: July 3, 2018

Title:  BLUE SPIKE, LLC v. VIZIO, INC.

PRESENT:

<u>THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE</u>

| <u>Jazmin Dorado</u> | <u>Not Present</u> |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**          **ORDER Re Discovery Motions**
                                                                            **(Dkts. 51, 52)**

Plaintiff Blue Spike, LLC ("Blue Spike") and defendant Vizio, Inc. ("Vizio") each filed discovery motions that the parties argued on June 26, 2018.  (Dkts. 51, 52.)  Blue Spike's motion concerns the production of source code in this patent litigation.  (Dkt. 52 ["Pl's JS"].)  Vizio's motion relates to (1) Blue Spike's failure to provide written responses to Vizio's requests for production ("RFPs"), (2) Blue Spike's failure to produce readable documents, and (3) Blue Spike's failure to adequately respond to Vizio's Interrogatory No. 1 seeking the bases of Blue Spike's infringement contentions.  (Dkt. 51 ["Dft's JS"].)

Having considered the parties' briefing and argument, the Court rules as follows.

**I.    FACTUAL BACKGROUND.**

    **A.    <u>The Patents</u>.**

Seven patents are at issue in this action:  U.S. Patent No. 7,159,116, titled "Systems, Methods and Devices for Trusted Transactions" ("the '116 Patent"), U.S. Patent No. 8,538,011, titled "Systems, Methods and Devices for Trusted Transactions" ("the '011 Patent"), U.S. Patent No. 7,475,246, titled "Secure Personal Content Server" ("the '246 Patent"), U.S. Patent No. 8,171,561, titled "Secure Personal Content Server" ("the '561 Patent"), U.S. Patent No. 8,739,295, titled "Secure Personal Content Server" ("the '295 Patent"), U.S. Patent No. 8,930,719, titled "Data Protection Method and Device" ("the '719 Patent"), and U.S. Patent No. 5,745,569, titled "Method for Stega-Cipher Protection of Computer Code" ("the '569 Patent").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES                                                                     Date: July 3, 2018
                                                                                                                        Page 2

The parties break down these patents into three categories: (1) the "ASLR[1] Patents" (the '569 and '719 Patents), (2) the "Secure Server Patents" (the '246, '561, and '295 Patents), and (3) the "Trusted Transaction Patents" (the '116 and '011 Patents). Blue Spike alleges that Vizio infringes 34 claims of the patents in total. (Dkt. 51-5 at 265-66.)

**B.     The Technologies.**

Each of the patents-in-suit relate to software used to improve digital security and/or facilitate digital transactions. Blue Spike's operative First Amended Complaint (the "FAC) summarizes the relevant technologies as follows:

- ASLR "is a security technique that protects software by shuffling it in computer memory. Prior to implementing ASLR, modern-day operating systems often loaded software into predictable memory locations. That predictability allowed attackers to pinpoint specific po[r]tions of software and manipulate them in unintended ways. In response to this grave threat, many operating systems now utilize ASLR to reduce predictability by shuffling software to random memory locations." (FAC ¶ 17.)

- "Secure Server patented technique creates a secure environment for the disclosure of digital content, whereby a local content server system (LCS)[2] is provided with rules and procedures for accepting and transmitting content data." (Id. ¶ 21.)

- "Trusted Transaction patented technique provides an integrated multivalent system for enhancing trust across a variety of data transactional categories." (Id. ¶ 22.)

**C.     The Accused Products and Alleged Infringment.**

  1.     FAC's Definition of the Accused Products.

The FAC defines the allegedly infringing products (the "Accused Products") as follows:

- "The Accused Products are comprised of [1] Accused [ASLR] Products and [2] the Accused TV Products …." (Id. ¶ 14.) The Accused ASLR Products relate (naturally) to the ASLR Patents. (See id. ¶ 15.) The Accused TV Products relate to the Secure Server Patents and the Trusted Transaction Patents. (See id. ¶ 20.)

/ / /

---

[1] ASLR stands for "address space layout randomization." (FAC ¶ 17.)
[2] The patents-in-suit define a Local Content Server as "[a] device or software application which can securely store a collection of value-added digital content. The LCS has a unique ID." (See Dkt. 30-3 at 19; Dkt. 30-4 at 20.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES                                                      Date: July 3, 2018
                                                                                                                             Page 3

- "The Accused ASLR Products comprise all of [Vizio's] tablets employing the Android 4.0 OS or later, including, but not limited, to its 7" and 10" series of tablets, as well as its Smartcast™ Tablet Remote that comes with its P-series and M-series televisions." (Id. ¶ 15.)

- "The Accused TV Products include Vizio smart televisions, which utilize features or components capable of streaming secured content such as Netflix, YouTube, Google Play, HBO Go, Fox Now, and other such services." (Id. ¶ 19.)

        2.         <u>The Infringing Functions</u>.

The FAC's allegations concerning the "Accused ASLR Products," i.e., Vizio's tablets, focus on the use of the Android operating system ("OS"). Specifically, Blue Spike alleges that the "Accused ASLR products utilize a version of Android OS that employs ASLR, a security technique that protects software by shuffling it in computer memory …." (See id. ¶ 30.)

Blue Spike's claims concerning the "Accused TV Products" differ based on whether Blue Spike alleges they infringe (1) the Secure Server Patents, or (2) the Trusted Transaction Patents.

With respect to the Secure Server Patents, Blue Spike alleges that the "Accused TV Products include features or components which allow playback, upon request and proper authorization, of secured content via Netflix and other streaming services." (Id. ¶ 48.)

With respect to the Trusted Transaction Patents, Blue Spike alleges that the "Accused TV Products include certain Smart TVs that allow playback of Netflix and other streaming services. Netflix uses a digital rights management system called [Microsoft] Playready, which is a method for authenticating the transmission of information between two entities using unique device IDs and cryptographic keys." (Id. ¶ 75.)

        3.         <u>Blue Spike RFPs' Definition of the Accused Products</u>.

Separately from the FAC, Blue Spike's RFPs define the Accused Products as "Vizio's Smart Televisions and Tablets that are capable of streaming secured content such as Netflix, YouTube, GooglePlay, HBO Go, Fox Now and other such services." (Dkt. 52-10 at 4.)

        4.         <u>Vizio's Position Concerning the Accused Products.</u>

In its discovery briefing, Vizio disputes that the "patents-in-suit read on the Accused Devices (i.e., TVs and tablets) in their entirety." (Pl's JS at 20.) Vizio argues that the "patents-in suit concern very limited aspects of the Accused Products." (Id.) Vizio cites the FAC for the proposition that "[1] the Secure Server Patents and the Trusted Transactions Patents relate to the use of Microsoft's PlayReady functionality in certain [Vizio] TVs and home theater displays, and [2] the ASLR Patents relate to the alleged use of data protection based on memory shuffling in certain [Vizio] remote control tablets." (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES                                                       Date: July 3, 2018
                                                                                                                                                                                                   Page 4

## II.     BLUE SPIKE'S DISCOVERY MOTION—SOURCE CODE.

On June 5, 2018, Blue Spike filed its joint discovery stipulation seeking discovery of source code relating to the Accused Products. (Dkt. 52.) Blue Spike filed no supplemental brief.

### A.     **<u>Disputed RFPs</u>.**

Blue Spike's joint stipulation is ambiguous as which RFPs are at-issue. Blue Spike states that it seeks "an Order from the Court for [Vizio] to produce documents, including source code, responsive to Blue Spike's <u>Requests for Production Nos. 16 and 22-33</u>." (Pl's JS at 4 (emphasis added).) Vizio asserts "<u>Document Requests No. 16 and 28-33</u> are … at issue here." (<u>Id.</u> at 21 (emphasis added).) Vizio thus omits RFPs Nos. 22 through 27. (<u>Id.</u>)

At argument, Blue Spike's counsel confirmed that Vizio's statement of the disputed RFPs was correct. Accordingly, the following RFPs (the "Source Code RFPs") are at issue:

- <u>Blue Spike's RFP No. 16</u>: Please produce all documents, including correspondence, email or data in electronic form, referring or related to the structure, operation, function or performance of the Accused Product and/or its components, including all source code, user guides, reference manuals, product manuals, product descriptions, technician's guides, installation guides, technical manuals, software manuals, screen shots and datasheets.

- <u>Blue Spike's RFP No. 28</u>: Source code related to all Vizio's Smart Televisions imported into the U.S. since January 1, 2018.

- <u>Blue Spike's RFP No. 29</u>: Source code related to Vizio's Tablets streaming of audio and/or video content since January 1, 2018.

- <u>Blue Spike's RFP No. 30</u>: Source code related to Vizio's Smart Televisions and Tablets [sic] streaming functionality of audio and/or video content.

- <u>Blue Spike's RFP No. 31</u>: All notes related to revisions to the source code related to the streaming functionality since January 1, 2016 for Vizio's Smart Televisions and Tablets.

- <u>Blue Spike's RFP No. 32</u>: Documents explaining the differences in the versions of the source code and/or programming code for Vizio's Smart Televisions and Tablets since January 1, 2016.

- <u>Blue Spike's RFP No. 33</u>: Documents listing the versions of the source code and/or programming code for Vizio's Smart Televisions and Tablets since January 1, 2016.

(<u>Id.</u> at 21-30; Dkt. 52-10 at 7-9 [Blue Spike's RFPs].)

With respect to each of the Source Code RFPs, Vizio served objections, including on relevance and proportionality grounds. Its objections state that "documents responsive to [these Requests] are likely in the possession of third parties, not [Vizio]." (Pl's JS at 21-30.) Vizio's responses do not indicate whether responsive documents are in its custody or control. (See id.)

**B.      Parties' Positions.**

   1.     Blue Spike.

Blue Spike contends that Vizio must produce documents responsive to the Source Code RFPs because Blue Spike "will need the source code utilized in the [Vizio] controlled products at issue in this case to develop its complaint beyond the information that is now publicly available to it," (Id. at 9), and asserts the code is necessary to "respond to the non-infringement and invalidity claims that [Vizio] has asserted …." (Id. at 11.) Blue Spike cites Baron Servs., Inc. v. Media Weather Innovations LLC, 717 F.3d 907, 913, n. 9 (Fed. Cir. 2013), which found source code discoverable where it is "relevant and likely to lead to admissible evidence …." (Pl's JS at 12.) Blue Spike contends that its Source Code RFPs are "very clearly narrowed to a specific subset of [Vizio] products," (Pl's JS at 12 (citing Blue Spike's Initial Disclosures)), and "practically all of [Vizio's] imports infringe." (Id. at 8.)

   2.     Vizio.

In response, Vizio argues: (1) that Blue Spike's Source Code RFPs seek an overbroad swath of source code that is not relevant (id. at 31), and (2) that any source code that is potentially relevant is not in Vizio's possession, but that of third-parties. (Id. at 32.)

Relevance: First, Vizio argues that Blue Spike's demands, which Vizio claims seek "all source code regardless of its relevance," are overbroad. (Id. at 31; see, e.g., id. at 23-24 (citing RFPs Nos. 28 and 29 requesting "[s]ource code related to all Vizio's Smart Televisions" imported after January 1, 2018, and "[s]ource code related to Vizio's Tablets streaming of audio and/or video content since January 1, 2018.").) Vizio argues that "only source code that relates to the accused functionality should be made available for inspection." (Id. at 31.) It cites Drone Tech., Inc. v. Parrot S.A., 838 F.3d 1283 (Fed. Cir. 2016) for the proposition that "a party that seeks to inspect computer source code must prove that the source code in question is relevant to issues in dispute, and that the need for production outweighs not just the burdens but the risks associated with its production." (Pl's JS at 6 (emphasis in original); see id. at 31.) Vizio also relies on cases denying discovery of code unrelated to the accused functionality. (Id. at 31 (citing Uniloc USA, Inc. v. Apple, Inc., No. 18-cv-362, 2018 U.S. Dist. LEXIS 72464, at *9-10 (N.D. Cal. Apr. 30, 2018); Rensselaer Polytechnic Inst. v. Apple Inc., No. 13-cv-633, 2014 U.S. Dist. LEXIS 63413, at *16 (N.D.N.Y. May 8, 2014); Nazomi Comm's, Inc. v. Samsung Telecomms., Inc., No. 10-cv-5545, 2012 U.S. Dist. LEXIS 76468, at *11-12 (N.D. Cal. June 1, 2007)).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES  Date: July 3, 2018
Page 6

Third-Party Possession: Second, Vizio contends that it "does not manufacture the TVs or home theater displays that it sells." (Id. at 32.) Thus, to the extent that any source code is relevant, Vizio contends that code is not in its possession. Vizio breaks down the accused functionality into two categories "1) Microsoft's PlayReady functionality in certain [Vizio] TVs, and 2) the alleged use of data protection based on memory shuffling in certain [Vizio] remote control tablets." (Id.)

With respect to the first category (Microsoft Playready), Vizio argues that its "TVs currently include system-on-a-chip processors ('SoCs') from different third-party manufacturers." (Id. (citing Declaration of Eric Loes ¶ 3).) With respect to the second category (ASLR tablets), Vizio contends that it "does not manufacture the Android-based remote control tablets that shipped with certain models of its TVs and home theater displays" (Id. (citing Declaration of Eric Loes ¶ 6).)

Vizio submits a declaration from Eric Loes, its Senior Director of Software Engineering (the "Loes Declaration"). (Dkt. 52-1.) Mr. Loes declares that Vizio "does not have any … source code in its possession" relating to "Microsoft Readyplay functionality in [Vizio's] TVs and home theater displays." (Id. ¶ 4.) Mr. Loes states that Vizio's TVs include SoCs from other third-party manufacturers, which are listed in a sealed portion of the court record. (Id. ¶ 3 [sealed].) He also declares that Vizio's "Android-based remote control tablets" were "manufactured by a third party manufacturer, Borqs Technologies, Inc.," and Vizio "does not have any … source code in its possession" relating to "data protection through memory shuffling on [Vizio's] Android-based remote control tablets." (Id. ¶¶ 6-7.)

C. **Analysis**.

1. Scope of the Source Code RFPs.

The Court agrees with Vizio that the Source Code RFPs are overbroad and therefore seek irrelevant information. Blue Spike's RFP No. 16, for example, requests "all source code" "referring or related to the structure, operation, function or performance of the Accused Product and/or its components …." (Pl's JS at 21.) As Vizio notes, Blue Spike's claims summarized above do not implicate all functions of the Accused Products. At argument, Blue Spike's counsel conceded that Blue Spike sought only source code related to the at-issue functionalities.

Despite the overbreadth of the Source Code RFPs, Blue Spike did not propose narrowing language in its briefing or at argument. Based on the FAC, the Court finds that—for purposes of this discovery dispute—the accused functionalities can be characterized as "1) Microsoft's PlayReady functionality in certain [Vizio] TVs, and 2) the alleged use of data protection based on memory shuffling in certain [Vizio] remote control tablets." (Pl's JS at 32.) Accordingly, the Court will construe the Source Code RFPs as limited to requesting source code relating to those functionalities.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES                                                                  Date: July 3, 2018
                                                                                                            Page 7

      2.      <u>Possession, Custody, or Control.</u>

Given these limitation, it is Vizio's position that no relevant source code is in its possession, custody, or control. (Pl's JS at 32.) At argument, Vizio's counsel cited the Loes Declaration and reiterated that Vizio could not access the relevant code. While Blue Spike contends that it is "asking [Vizio] to produce source code that is relevant to its products, and not third-party products," (<u>id.</u> at 13), the fact that the relevant functionalities involve software developed by non-parties tends to support Vizio's contention that code is in the control of others.

Based on the Loes Declaration and the argument of Vizio's counsel, the Court credits Vizio's assertion that it does not possess or control source code relating to the relevant functionalities, and therefore cannot produce it.³ Blue Spike will need to pursue third-party discovery to obtain that information. To the extent that Vizio has not already provided to Blue Spike the names of all third-parties Vizio is aware of who may possess relevant source code, the Court expects, consistent with the representations of its counsel at argument, that Vizio will be able to immediately provide that information.

The Court does note that certain of the Source Code RFPs seek information beyond the source code itself. For example, Blue Spike's RFP No. 33 seeks "[d]ocuments listing the versions of the source code and/or programming code" for certain products. (Pl's JS at 29.) At argument, Vizio's counsel represented that it was possible that high-level documents responsive to such RFPs may exist and may have been produced. Vizio's responses to the Source Code RFPs, though, do not state whether such documents have been produced or "are being withheld on the basis of" objections. Fed. R. Civ. Proc. 34(b)(2)(C).

In order to provide Blue Spike clarity with respect to Vizio's responses to the Source Code RFPs, the Court ORDERS as follows:

- Source Code RFPs Nos. 28 through 33 will be deemed amended to seek source code and documents relating only to "Microsoft's PlayReady functionality" in accused Vizio TVs and/or "the alleged use of data protection based on memory shuffling" in accused remote control tablets, as appropriate based on the devices referenced in a given RFP.⁴ The Court will also deem the RFPs amended to seek discovery concerning only the products that Blue Spike identified by model numbers in interrogatory responses submitted with

---

³ The Court notes that the Loes Declaration and Vizio's briefing both state that Vizio does not "<u>possess</u>" the source code relating to the accused functionalities. (<u>See</u> Pl's JS at 32; Dkt. 52-1 [Loes Decl.] ¶¶ 4, 7.) Vizio's briefing does not state that the code is outside of its "<u>custody or control</u>." Vizio, however, objected to the Source Code RFPs on the ground that responsive information was not in its "possession, custody, or control" (Pl's JS at 21-30), and its counsel confirmed at argument that relevant source code was not in Vizio's control or custody.

⁴ At least in connection with this dispute, Source Code RFP No. 16 is so overbroad as to preclude effective amendment. Vizio need not provide a supplemental response to that RFP.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES	Date: July 3, 2018
Page 8

Vizio's motion.  (See Dkt. 51-3 at 62 ['246 Patent]; Dkt. 51-4 at 3 ['561 Patent]; Dkt. 51-4 at 96 ['295 Patent]; Dkt. 51-5 at 3 ['116 Patent]; Dkt. 51-5 at 56 ['011 Patent]; Dkt. 51-5 at 141 ['719 Patent].)

- Vizio shall provide supplemental responses to Source Code RFPs Nos. 28 through 33, as amended, <u>within 15 days of this order</u>.  Its responses should state that responsive source code is not within Vizio's possession, custody, and control.[5]  If other responsive information is in Vizio's possession, custody, or control, Vizio shall indicate that fact and state whether that information (1) has been (or is being) produced, or (2) is being withheld on the basis of a specific objection.  Fed. R. Civ. Proc. 34(b)(2)(C).

- Any information that Vizio states it will produce in response to amended Source Code RFPs Nos. 28 through 33 should be provided to Blue Spike <u>within 15 days of this order</u>.

- If Vizio withholds information on the basis of an objection, then the parties shall conduct a comprehensive meet and confer before raising the issue with the Court.

Blue Spike's motion is otherwise DENIED.

## III.   VIZIO'S DISCOVERY MOTION.

On May 31, 2018, Vizio filed its joint discovery stipulation.  (Dkt. 51.)  It filed a supplemental brief on June 12, 2018.  (Dkt. 54 ["Suppl. Brief"].)

### A.   **Written RFP Responses**.

1.   <u>Background</u>.

Vizio argues that Blue Spike failed to provide any written responses to its first set of RFPs.  (Dft's JS at 37.)  In responding to Vizio's joint stipulation, Blue Spike included written responses as an exhibit to an attorney declaration.  (Suppl. Brief at 4; Dkt. 51-7 at 18-105.)  Vizio disputes that Blue Spike served these responses, or notified Vizio of them, outside of the joint stipulation.  (Suppl. Brief at 4.)  Each response states as follows:

> Responding party has complied and has produced all documents currently in their [sic] possession, custody, and control on February 9, 2018.  Documents that have not been produced in response to this request due to the document's privilege status are listed on the privilege log served on May 24, 2018.  Discovery is

---

[5] If Vizio ultimately determines that source code responsive to the amended Source Code RFPs Nos. 28 through 33 <u>is</u> in its custody or control, then that code is relevant to Blue Spike's claims and should be produced.

Case 8:17-cv-01172-DOC-KES   Document 58   Filed 07/03/18   Page 9 of 14   Page ID #:3995

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES　　　　　　　　　　　　　　　　　　Date: July 3, 2018
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 9

continuing, and the responding party reserves the right to amend this response at a later date to incorporate later discovered facts and/or documents.

Please see Plaintiff's production # BLU000001 – BLU0481288 served February 9, 2019 and privilege log served May 24, 2018.

(Dkt. 51-7 at 18-104.)

Vizio claims in its supplemental brief that this response is inadequate because it does "not indicate whether Blue Spike is producing documents in response to any specific document request, or whether Blue Spike is claiming to have no documents responsive to any specific request." (Suppl. Brief at 5.)

   2.  <u>Analysis</u>.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, a party responding to RFPs is obligated, "for each item or category," to "state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. Proc. 34(b)(2)(B). Here, Blue Spike provides one uniform response to each of Vizio's 145 RFPs. (Dkt. 51-7 at 18-104.) That response cites the Bates range of Blue Spike's entire production. As a result, it is unclear whether, "for each item or category," Blue Spike has produced documents. Blue Spike is therefore ORDERED <u>within 30 days</u> to provide supplemental responses to each of Vizio's RFPs "that state, to the best of [Blue Spike's] knowledge as of the date of the response and after conducting a reasonable search consistent with its discovery obligations, whether relevant documents responsive to <u>each</u> RFP exist or whether they do not exist." <u>Ecojet, Inc. v. Luraco, Inc.</u>, 16-cv-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *12 (C.D. Cal. Oct. 12, 2016) (emphasis added). If Blue Spike has produced no documents in response to a specific RFP, then its responses should state that fact.[6]

**B.** **<u>Readable Documents</u>.**

   1.  <u>Background</u>.

Vizio argues that Blue Spike "should be ordered to re-produce its documents so that they are all readable." (Dft's JS at 38.) It claims that of the 72,000 documents that Blue Spike produced, "approximately 12,000 documents cannot be reviewed, opened, or processed because they are corrupted, damaged, etc." (<u>Id.</u> at 3.) Vizio collects authority for the proposition that Blue Spike

---

[6] Vizio contends that the untimeliness of Blue Spike's responses waived any objections. (Dft's JS at 38.) Blue Spike's current RFP responses do not contain objections except a "General Statement" that Blue Spike objects to disclosure of privileged communications or work product. (Dkt. 51-7 at 18.) It appears that Blue Spike served a privilege log in connection with Vizio's RFPs. (Dft's JS at 6.) Accordingly, the Court will not find a waiver of privilege at this time, but Blue Spike's amended responses should not contain any additional objections.

Case 8:17-cv-01172-DOC-KES   Document 58   Filed 07/03/18   Page 10 of 14   Page ID #:3996

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES                                                    Date: July 3, 2018
                                                                                   Page 10

has an obligation to produce documents in a usable format. (Id. at 39 (citing Finmeccanica S.P.A. v. General Motors Corp., No. 07-cv-8222-SJO-PJWx, 2008 WL 11338889, Lexis Unavailable, at *3 (C.D. Cal. May 30, 2008); Cen Com Inc. v. Numerex Corp., No. 17-cv-560, 2018 U.S. Dist. LEXIS 62000, at *8 (W.D. Wash. Apr. 11, 2018); Lawrence v. VB Project, LLC, No. 14-cv-60289, 2014 U.S. Dist. 128018, at *5-6 (S.D. Fl. Sep. 12, 2014); CP Solns. PTE, Ltd. v. General Elec. Co., No. 06-cv-2150, 2006 U.S. Dist. LEXIS 27053, at *11-12 (D. Conn. Feb. 6, 2006)).)

Blue Spike counters that Vizio's request is "vague and difficult to respond to as it does not identify any particular documents it cannot open." (Dft's JS at 40.) Vizio, in turn, notes that it "provided Blue Spike with a detailed list of the unreadable documents …." (Suppl. Brief at 3.) Vizio submits a meet and confer letter that lists by Bates numbers (1) "108 documents that are password protected," and (2) "119 documents" that were "produced in native format," but the "native files have problems and cannot be opened or processed." (Dkt. 51-3 at 50-51.) Vizio also stated in its meet and confer correspondence:

> At least 11,023 documents cannot be reviewed, opened, or processed because they are corrupted, damaged, etc. Among the 11,023 documents, at least 10,960 documents were designated as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" next to the Bates numbers. This suggests that they have information and can be produced. The Bates range for the 11,023 documents is BLU0075686-BLU0444329.

(Id. at 51.)

2.   Analysis.

At argument, Blue Spike's counsel conceded that certain documents in its production could not be open or read. This is inconsistent with Blue Spike's discovery obligations. See Fed. R. Civ. Proc. 34(a) (RFP may request "any … electronically stored information … in any medium from which information can be obtained either directly, or if necessary, after translation by the responding party into a reasonably usable form …."). Accordingly, the Court orders as follows:

- If it has not already done so, Blue Spike shall provide <u>within 30 days of this order or another period to which the parties agree</u> accessible versions of the 108 password protected documents listed by Bates number in Vizio's February 28, 2018 meet-and-confer correspondence at Dkt. 51-3.

- If it has not already done so, Blue Spike shall provide <u>within 30 days of this order or another period to which the parties agree</u> readable versions of the 119 native documents listed by Bates number in Vizio's February 28, 2018 meet-and-confer correspondence at Dkt. 51-3.

- It is unclear whether the 11,023 additional documents that Vizio cannot access comprise the entirety of the Bates range BLU0075686-BLU0444329 provided in Vizio's meet-and-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES                                Date: July 3, 2018
                                                                                                    Page 11

confer letter. If so, Vizio shall timely confirm that fact. If not, Vizio shall timely provide to Blue Spike a comprehensive list of the Bates ranges containing unreadable documents.[7]

- <u>Within 30 days of receipt of Vizio's statement of the relevant Bates range(s) or another period to which the parties agree</u>, Blue Spike shall either (1) provide readable documents for each of those Bates ranges, or (2) indicate that it is unable to provide readable or accessible documents for specific Bates ranges.

- If Blue Spike is unable to provide readable or accessible documents for any Bates ranges, then Blue Spike shall confirm in writing that it is withdrawing those Bates ranges from its production and that it will not rely on those documents. Blue Spike shall provide this confirmation <u>within 30 days of receipt of Vizio's statement of the relevant Bates range(s) or another period to which the parties agree</u>.

    **C.**     <u>**Vizio's Interrogatory No. 1—Infringement Contentions**</u>.

        1.     <u>Background</u>.

The final issue in Vizio's motion is Blue Spike's response to Vizio's Interrogatory No. 1. (Dft's JS at 6-36.) The interrogatory was served on December 27, 2017, and contains eight subparts, including a "Subpart No. 3" requesting "[a] chart identifying specifically where and how each limitation of each Asserted Claim is found within each Accused Instrumentality …." (Dkt. 51-2 [Basileo Decl.] ¶ 14; Dkt. 51-5 at 269-271.)

Blue Spike's initial response was dated January 5, 2018, yet was apparently served February 16, 2018. (Dkt. 54-1 at 4-11 [dated on p. 10; proof of service on p. 5].) On March 26, 2018, Blue Spike served a supplemental response. (Dkt. 51-5 at 263-267.) That supplemental response asserts objections on the grounds that Interrogatory No. 1 (1) contains "multiple requests," (2) is burdensome, and (3) is premature. (<u>Id.</u> at 265.)

Blue Spike included with its March 2018 supplemental response approximately 550 pages of infringement claims charts purporting to explain its infringement contentions with respect to the '116, '011, '246, '561, '295, and '719 Patents. (Dkt. 51-3 at 61-190 ['246 Patent]; Dkt. 51-4 at 2-93 ['561 Patent]; Dkt. 51-4 at 95-149 ['295 Patent]; Dkt. 51-5 at 2-53 ['116 Patent]; Dkt. 51-5 at 55-138 ['011 Patent]; Dkt. 51-5 at 140-261 ['719 Patent].) It appears that no response was initially provided for the '569 Patent. (Dft's JS at 11.) The claims charts include (1) an abstract of the patent, (2) a brief statement about how the Accused Products allegedly infringe each element of each asserted claim, (3) highlighted screenshots and text from

---

    [7] The Court recognizes Vizio's argument that "any attempt by Blue Spike to shift the burden to [Vizio] to specify exactly which ten thousand documents cannot be accessed should be soundly rejected …." (Dft's JS at 4.) The Court concludes, however, that Vizio's cooperation is necessary given potential differences in technologies available to the parties.

Case 8:17-cv-01172-DOC-KES Document 58 Filed 07/03/18 Page 12 of 14 Page ID #:3998

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES            Date: July 3, 2018
Page 12

various online sources, including, e.g., the Netflix website, the Microsoft website, and third party blogs relating to the claimed limitation, and (4) a statement that "this claim element is infringed literally, or in the alternative, under the doctrine of equivalents." (See, e.g., Dkt. 51-3 at 72.)

Vizio now asserts that Blue Spike's (1) response to Interrogatory No. 1 was untimely, waiving objections, (2) that the response is inadequate because it does not address the '569 Patent, and (3) that the response does not provide sufficient detail in response to each of Interrogatory No. 1's subparts, particularly with respect to Blue Spike's infringement contentions requested in "Subpart No. 3."

        2. <u>Analysis</u>.

            a.     '569 Patent.

As an initial matter, the parties disagree about whether Blue Spike provided a response for the '569 Patent. (Dft's JS at 11.) In a footnote, Blue Spike says that it "produced claim charts for the additional patent …." (Id. at 41, n. 11.) At argument, Vizio disputed that it received such charts. Given this dispute, Blue Spike is ORDERED to serve on Vizio a response to Interrogatory No. 1 for the '569 Patent <u>within 5 days of this order</u>. Alternatively, Blue Spike may voluntarily dismiss its claims relating to that patent.

            b.     Remaining Issues.

The Court STAYS the remainder of Vizio's motion concerning Blue Spike's response to Interrogatory No. 1. At argument, Blue Spike's counsel conceded that Blue Spike's response failed to provide information responsive to each of the interrogatory's subparts. Blue Spike indicated that it intended to serve a supplemental response after reviewing source code. This is consistent with its statement in briefing that it will "supplement its infringement contentions once it review[s] Vizio's source code." (Dft's JS at 41, n. 11.) Accordingly, the parties (and the Court) agree that Blue Spike must provide a supplemental response at a future time.

The Court views it as inefficient to order a supplemental response before Blue Spike has had an opportunity to undertake third-party discovery to obtain the source code that is relevant to its claims (and which Vizio does not possess). Fed. R. Civ. P. 1 (civil rules should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding"). Accordingly, <u>within 30 days of this order</u>, Blue Spike is ordered to submit a status report on its efforts to obtain that discovery. The Court will hold Vizio's motion (as related to Interrogatory No. 1) in abeyance pending receipt of that report. When Blue Spike updates the Court on its efforts to obtain source code from third-parties, the Court will reevaluate its timeline for requiring a supplemental response to Interrogatory No. 1. In that evaluation, the Court will take into consideration whether Blue Spike has taken material steps to obtain information necessary to supplement its response and more specifically define its claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01172-DOC-KES                                                    Date: July 3, 2018
                                                                                                                      Page 13

**IV.    FEES.**

Vizio requests expenses incurred both (1) responding to Blue Spike's motion concerning source code (Pl's JS at 37), and (2) prosecuting its discovery motion. (Dft's JS at 40-41.)

    **A.    <u>Blue Spike's Motion</u>.**

Rule 37 of the Federal Rules of Civil Procedures ("Rule 37") provides:

> If [a discovery] motion is denied, the court … must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Rule 37(a)(5)(B); <u>see</u> also Rule 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court … may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.").

With respect to Blue Spike's motion, the Court concludes that a legitimate dispute existed concerning whether Vizio possessed relevant source code. Further, Vizio has been ordered to provide supplemental written responses. Accordingly, Vizio's request for fees is DENIED.

    **B.    <u>Vizio's Motion</u>.**

Rule 37(a)(5)(A) provides:

> If [a discovery] motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > (iii) other circumstances make an award of expenses unjust.

/ / /

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:17-cv-01172-DOC-KES  Date: July 3, 2018
Page 14

  As set forth above, Vizio obtained material relief through its motion, including (1) Blue Spike's belated service of written RFP responses, (2) an order that Blue Spike produce readable documents or disavow reliance on unreadable Bates ranges, and (3) Blue Spike's concession that its current response to Interrogatory No. 1 is incomplete.  Because the Court has stayed its ruling on Vizio's Interrogatory No. 1, it will not rule on expenses relating to Vizio's motion until it issues a later order.  When Blue Spike files its update concerning third-party discovery efforts, it may submit supplemental briefing explaining why it should not be ordered to pay any of Vizio's expenses.  See Fed. R. Civ. P. 37(a)(5)(A) (Blue Spike must be given the "opportunity to be heard"); Patterson v. Goncalves, No. 14-cv-01311, 2014 U.S. Dist. LEXIS 131894, at *7 (N.D. Cal. Sep. 19, 2014) ("District courts in the Ninth Circuit have held that the requirement to provide the litigant an opportunity to be heard does not necessarily require oral argument, as the opportunity to brief the issue fully satisfies due process requirements.").

                 Initials of Deputy Clerk JD